**Elden M. Rosenthal, OSB No. 72217**
elden@rgdpdx.com
**John T. Devlin, OSB No. 042690**
john@rgdpdx.com
Rosenthal Greene & Devlin, P.C.
121 SW Salmon St., Suite 1090
Portland, OR 97204
Telephone: (503) 228-3015
Fascimile: (503) 228-3269

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| DEREK JOHNSON, personal representative of KELLY CONRAD GREEN II, deceased; KELLY CONRAD GREEN and SANDY PULVER<br><br>Plaintiffs,<br><br>v.<br><br>CORIZON HEALTH, INC., a Tennessee Corporation; LANE COUNTY, an Oregon county; DR. CARL KELDIE, an individual; DR. JOE PASTOR, an individual; BECKY PINNEY, an individual; DR. JUSTIN MONTOYA, an individual; VICKI THOMAS, an individual; KIRSTIN WHITE, an individual; JACOB PLEICH, an individual; SHARON FAGAN, an individual; ROB DOTSON, an individual; GUY BALCOM, an individual; DONALD BURNETTE, an individual; JOHN DOES 1-10,<br><br>Defendants. | Civil Action No. 6:13-cv-01855-TC<br><br><br>**AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 USC § 1983) AND SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR TRIAL BY JURY** |

## INTRODUCTION

1.      Kelly Green, a mentally ill person, was arrested and booked in the Lane

County Jail on an outstanding arrest warrant during the evening of February 11, 2013.

Page 1 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE
CLAIMS

Although Lane County had contracted with Corizon Health, Inc., to provide medical services at the jail, and although Mr. Green was exhibiting symptoms of severe mental illness, Mr. Green was neither medically screened nor examined by Corizon staff.  The next morning, during a court appearance at approximately 10:42 a.m., Mr. Green ran headfirst into a concrete wall, fracturing his neck.  Lane County and Corizon employees treated the injury as minor, failed to perform a reasonable medical examination, failed to consult a physician, and – despite Mr. Green telling defendants that he could not move – failed to transport him to a hospital.  Instead, Mr. Green was taken, without any neck or spine precautions, to a jail cell, where he was left naked, incontinent and not moving.  At approximately 4:30 p.m. someone from the jail finally called for an ambulance to transport Mr. Green to a hospital.  As a direct result of the defendants' misconduct, Mr. Green was rendered a quadriplegic, and subsequently died on December 14, 2013 as a result of complications arising from his injuries.  Plaintiff seeks compensatory and punitive damages.

## JURISDICTION AND VENUE

2.    This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a).  This Court has pendent jurisdiction of the state law negligence claims pursuant to 28 USC § 1367, and diversity jurisdiction pursuant to 28 USC § 1332(c)(2).

## PARTIES

3.    Plaintiff Derek Johnson is the duly appointed personal representative of

Page 2 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Kelly Conrad Green II, deceased (hereinafter: "Kelly Green" or "Mr. Green"). Kelly Conrad Green and Sandy Pulver are the parents of Kelly Green, deceased. At the time of his death, Kelly Green was a citizen and a resident of the State of Washington. At all times pertinent Mr. Green was a pretrial detainee in the Lane County jail.

4.     Corizon Health, Inc. (hereinafter: "Corizon") is a Delaware corporation authorized to do business in the State of Oregon. Its business is providing medical services in jails and prisons nationally, and in the Lane County jail specifically. At all times herein pertinent, Corizon was acting under color of state law.

5.     Lane County is an Oregon county. Lane County operates a jail in Eugene, Oregon, and has contracted with Corizon to provide all necessary medical care to pretrial detainees and persons convicted of crimes held at the Lane County jail.

6.     Based upon information and belief, defendant Keldie, a licensed physician, was the national medical director for Corizon in February of 2013, and at all times pertinent was responsible for the medical policies, customs and procedures utilized by Corizon employees working in the Lane County jail. At all times herein pertinent, defendant Keldie was acting under color of state law. Based upon information and belief, defendant Keldie is a citizen and resident of the State of Tennessee.

7.     Based upon information and belief, defendant Pastor, a licensed physician, was the chief mental health officer for Corizon in February of 2013, and at all times pertinent was responsible for the mental health policies, customs and procedures utilized by Corizon employees working in the Lane County jail. At all times herein pertinent,

Page 3 – Amended Complaint for Violation of Civil Rights and Suppl. State Claims

defendant Pastor was acting under color of state law.  Based upon information and belief, defendant Pastor is a citizen and resident of the State of Tennessee.

8.      Based upon information and belief, defendant Pinney, a registered nurse, was the chief nursing officer for Corizon in February of 2013, and at all times pertinent was responsible for the nursing policies, customs and procedures utilized by Corizon employees working in the Lane County jail.  At all times herein pertinent, defendant Pinney was acting under color of state law.  Based upon information and belief, defendant Pinney is a citizen and resident of the State of Tennessee.

9.      Based upon information and belief, defendant Montoya, a licensed physician, is a Corizon employee who at all times pertinent was the medical director for Lane County Adult Corrections, including the Lane County jail, and is the supervising physician for defendant White.  At all times herein pertinent, defendant Montoya was acting under color of state law.  Based upon information and belief, defendant Montoya is a citizen and resident of the State of Oregon.

10.      Based upon information and belief, defendant Thomas, a registered nurse, is a Corizon employee who at all times pertinent was the Health Services Administrator of the Lane County jail, the on-site person responsible for providing medical services at the jail.  At all times herein pertinent, defendant Thomas was acting under color of state law.  Based upon information and belief, defendant Thomas is a citizen and resident of the State of Oregon.

11.      Based upon information and belief, defendant White, a licensed physician's

Page 4 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

assistant, is a Corizon employee who at all times pertinent was working in the Lane County jail. At all times herein pertinent, defendant White was acting under color of state law. Based upon information and belief, defendant White is a citizen and resident of the State of Oregon.

12.     Based upon information and belief, defendant Fagan, a registered nurse, is a Corizon employee who at all times pertinent was working in the Lane County jail. At all times herein pertinent, defendant Fagan was acting under color of state law. Based upon information and belief, defendant Fagan is a citizen and resident of the State of Oregon.

13.     Based upon information and belief, defendant Pleich, a licensed professional counselor, is a Corizon employee or agent who at all times pertinent was a mental health therapist working in the Lane County jail. At all times herein pertinent, defendant Pleich was acting under color of state law. Based upon information and belief, defendant Pleich is a citizen and resident of the State of Oregon.

14.     Defendants Dotson, Balcom and Burnette are Lane County sheriff's deputies who at all times pertinent were working in the Lane County jail. At all times herein pertinent, defendants Dotson, Balcom and Burnette were acting under color of state law. Based upon information and belief, defendants Dotson, Balcom and Burnette are citizens and residents of the State of Oregon.

15.     John Does 1-10 are Corizon employees and supervisors responsible for the provision of medical services at the Lane County jail on February 11-12, 2013. At all times herein pertinent, defendants John Does 1-10 were acting under color of state law.

Page 5 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

## FACTUAL ALLEGATIONS

16.    Lane County's Eugene jail houses pretrial detainees and persons convicted of crimes.  Lane County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Lane County jail.

17.    Commencing in the spring of 2012, Lane County, by contract, delegated to Corizon its duty to provide medical and mental health care to pretrial detainees and persons convicted of crimes lodged in the Lane County jail.  In exchange for a flat fee, Corizon assumed all responsibility to "deliver quality medical services" to jail inmates, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations."  Corizon also agreed to pay for all inmate medical services that cannot be performed in the jail, including all ambulance and hospital charges.

18.    On February 11, 2013, Kelly Green was arrested on an outstanding warrant and booked in the Lane County jail.  Mr. Green had previously been jailed in Lane County in both December of 2012 and January of 2013.  Employees of both Lane County and Corizon were aware that Mr. Green suffered from severe mental illness, and records maintained by Lane County and Corizon reflected his history of mental illness.

19.    Kelly Green was booked into the Lane County jail during the evening of February 11, 2013.  At the time of his booking, the arresting officer noted that Mr. Green was noted to be making suicidal statements, and to be suffering from paranoid schizophrenia.  The booking documents prepared by a Lane County Sheriff Officer noted that Mr. Green was "very agitated, talking to himself and inanimate objects, and cursing

Page 6 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

continuously." According to Lane County jail records, Mr. Green "barely made it through the booking process."

20.    Mr. Green was held in the jail until his arraignment at approximately 10:42 a.m. on February 12, 2013. At no time prior to his arraignment was he medically screened nor was he assessed by any mental health professional.

21.    Mr. Green was arraigned in a courtroom inside the jail. Before his arraignment, plaintiff had some verbal outbursts and was asked to quiet down. During his arraignment, the arraignment judge told Mr. Green that he would have to remain in jail. The judge decided to hold plaintiff in jail because "[h]e looked like he might ultimately be somebody who would be eligible for mental health court." Mr. Green began to talk to himself while the judge was telling him that he would have to remain in jail, and then ran headfirst approximately 15 feet into a concrete wall. Mr. Green collapsed on the floor, bleeding profusely from his head. (This event will be referred to as "plaintiff's injury" throughout the remainder of this Amended Complaint.)

22.    Corizon medical staff, including defendants White and Fagan, responded to the courtroom. Mr. Green told defendant White that he was paralyzed and could not move. No effort was made to stabilize plaintiff's neck or spine. He was cursorily examined, and bandages were applied. No physician was summoned. No neurological exam was performed. Mr. Green was put in a wheelchair and removed from the courtroom with his feet dragging behind the wheelchair.

23.    Defendant White sutured Kelly Green's head wound in the jail infirmary.

Page 7 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

No physician was summoned.  No neurological exam was performed.  No neck or spine precautions were taken.  While his head was being sutured, plaintiff involuntarily lost control of his bowels.  While in the infirmary, defendant Thomas was advised by defendant Balcom that plaintiff probably would be released from the jail because of the nature of his criminal charges.  Defendant White diagnosed plaintiff with a scalp laceration.  She indicated that she would conduct neurological checks every 1-2 hours and would recommend a "courtesy drop" at the emergency room for further evaluation. Defendant White released Kelly Green from the infirmary with no effort made to arrange for a physician to examine him, with no effort made to diagnose his neck injury, and with no neck or spine precautions.

      24.   At approximately 11:35 a.m. on February 12, 2013, Mr. Green was transferred from the infirmary to a jail cell on a wheelchair by defendants Balcom, Dotson and Burnette.  Despite the obvious facts that Mr. Green was limp, could not control his limbs, had defecated on himself and seemed to have minimal control of any portion of his body, Balcom, Dotson and Burnette roughly removed Kelly Green's clothing and repeatedly manipulated his neck.  During this process, Mr. Green fell to the floor.  He was picked up and put on a jail bunk.  No neck or spine precautions were taken. Mr. Green was left, naked and lying in his own feces on a jail bunk, and a fifteen minute suicide watch was started.  No effort was made to have a psychiatrist examine plaintiff.

      25.   At approximately 11:45 a.m., defendant Burnette reported to Corizon

medical staff that Mr. Green was not moving. Corizon medical staff advised Burnette that as long as plaintiff was breathing there was "no immediate concern." Corizon medical staff did not examine Mr. Green. Plaintiff remained naked, immobile and lying in his own feces.

26.    At approximately 12:17 p.m., defendant Burnette asked Mr. Green if he wanted a blanket. Plaintiff told defendant Burnette that he was "paralyzed fully" and that he needed to have his neck examined. Defendant Burnette responded that he would talk with the medical staff. Kelly Green remained naked, immobile and lying in his own feces.

27.    At approximately 1:35 p.m., while alone in his cell, Kelly Green repeatedly said "help" and asked for a blanket and a pillow. Defendant Burnette responded and asked Mr. Green if anyone from the medical staff had come to speak with him. Kelly Green said that no one from the medical staff had seen him, and asked for a blanket and a doctor. He remained naked, immobile and lying in his own feces.

28.    At approximately 1:40 p.m., defendant Burnette placed a blanket on a sink in Mr. Green's cell and told Mr. Green that he would talk with the medical staff. After defendant Burnette left, Mr. Green responded: "I'm paralyzed, man." Kelly Green remained naked, immobile and lying in his own feces.

29.    At approximately 1:45 p.m., defendant Burnette again reported to Corizon medical staff that Mr. Green was not moving. Corizon medical staff again asked Burnette whether Mr. Green was breathing, and again did not examine him. Kelly Green

Page 9 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

remained naked, immobile and lying in his own feces.

30.    Defendant Pleich, a mental health specialist, did not interview Mr. Green until approximately 2:30 p.m.  During that interview, Kelly Green told Pleich: "I think I'm gonna die because I'm paralyzed fully."  Pleich responded: "I don't believe you're fully paralyzed."  Pleich did not believe Mr. Green was seriously injured, despite the fact that he did not move during his interview, and despite the fact that Pleich was aware he had not moved since his injury.  Pleich did not make any effort to arrange for emergency care for Mr. Green and told him: "If you were actually paralyzed, our medical staff would probably transport you to the hospital."  Kelly Green responded: "I would have appreciated that earlier."  Defendant Pleich eventually placed a blanket over Mr. Green, who remained naked, immobile and lying in his own feces.

31.    At approximately 3:25 p.m., Lane County sheriff's deputy Dan Correll relieved defendant Burnette, who briefed Correll about the events involving Mr. Green. Specifically, defendant Burnette told Correll that Mr. Green had been in the same position for several hours.  At approximately 3:30 p.m., Correll checked on Mr. Green, who told Correll that he was not able to move and asked for a doctor.  Following his discussion with Mr. Green, Correll immediately walked to the medical office and spoke with defendant Fagan.

32.    At approximately 3:36 p.m., defendant Fagan and another Corizon employee examined Mr. Green, who repeatedly told them that he could not move.  No cervical or spine precautions were taken.  No physician was contacted.

Page 10 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

33.    At approximately 3:40 p.m., defendant White examined Mr. Green, who repeatedly told her that he could not move.  Defendant White determined that Kelly Green had suffered a "possible cervical injury."  No cervical or spine precautions were taken.  No physician was contacted.

34.    At approximately 4:33 p.m., someone from the Lane County Jail advised Eugene Fire and EMS that Mr. Green needed to be transported to a hospital.  Eugene Fire and EMS was not told that the situation was an emergency.  Paramedics arrived on the scene at approximately 4:49 p.m.  When they contacted Kelly Green, the paramedics immediately took steps to immobilize his neck and spine, and upgraded the call to an emergency level.  Paramedics removed Kelly Green from the jail on a backboard and in a cervical collar at approximately 5:16 p.m.

35.    Kelly Green was transported to Sacred Heart Hospital and admitted at approximately 5:30 p.m., where he was diagnosed with a fractured neck, a spinal cord injury and resultant quadriplegia.  That evening he underwent nearly three hours of surgery.  Kelly Green survived the surgery as a quadriplegic, and remained a quadriplegic until his death on December 14, 2013.

## FIRST CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Wrongful Death

36.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 35, above.

Page 11 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

37.    Defendants Corizon, and defendants John Does 1-3, were deliberately indifferent to Kelly Green's rights under the Fourteenth Amendment of the U.S. Constitution in that said defendants failed and refused to provide mental health screening to Mr. Green at any time after he was booked into the Lane County jail, and prior to his arraignment.

38.    After Kelly Green's injury, defendants Thomas, White, Fagan, and Pleich were deliberately indifferent to Mr. Green's rights under the Fourteenth Amendment of the U.S. Constitution in that said defendants:

        a.    Failed to provide him with prompt medical attention to his serious medical needs; and

        b.    Failed to provide him with any neck or spine precautions; and

        c.    Failed to promptly transfer him from the Lane County jail to a hospital for diagnosis and treatment.

39.    After Kelly Green's injury, defendants Thomas, White, Fagan, Pleich, Dotson, Balcom and Burnette were deliberately indifferent to his rights under the Fourteenth Amendment of the U.S. Constitution in that said defendants:

        a.    Seriously aggravated his medical condition by moving, dragging and carelessly manipulating Mr. Green's body after he suffered a serious neck fracture;

        b.    Seriously aggravated his medical condition by ignoring his medical plight for almost six hours;

Page 12 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

    c.  Allowed and caused him to lie naked, not moving and in his own feces on a jail bed from approximately 11:30 a.m. until approximately 3:45 p.m.; and

    d.  Failed to provide for Mr. Green to receive a psychiatric examination at any time while in the Lane County jail, even though he exhibited unmistakable symptoms of severe mental illness.

40.    As a direct result of the actions and inactions of defendants as set forth in paragraph 37, above, Kelly Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care. If Kelly Green had been screened by a mental health professional prior to his arraignment, he would have been identified as a suicide risk, and would have been afforded precautions and treatment that would have prevented his injuries. As a direct result of the actions and inactions of defendants as set forth in paragraph 38, above, Kelly Green's medical condition was exacerbated and he was rendered quadriplegic. Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia. Mr. Green's parents have been denied his love, society and companionship. Kelly Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

41.    The actions of defendants Corizon, Thomas, White, Fagan, Pleich, Balcom,

Page 13 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Dotson and Burnette were recklessly indifferent to Kelly Green and his parents' civil rights, and callously disregarded Kelly Green's physical safety, and punitive damages should be awarded in the sum of $20,000,000.

42.     Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Civil Rights Claim – 14th Amendment – 42 USC § 1983**

***Monell* Claims – Wrongful Death**

43.     Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 35, and 37-39, above.

44.     The moving forces that resulted in the deprivation of Kelly Green's and his parents' Fourteenth Amendment rights were the following policies, customs or practices of Lane County and Corizon:

   a.     A policy, custom or practice of not providing mental health screening to obviously mentally ill Lane County inmates at or near the time of booking in Lane County jail;

   b.     A policy, custom or practice of providing insufficient psychiatric medical coverage for inmates of Lane County jail;

   c.     A policy, custom or practice of not using the on-call psychiatrist for consultation even when a new jail admittee is actively suicidal and floridly psychotic;

d.    A policy, custom or practice of hiring medical and nursing personnel indifferent to the psychological and medical needs of Lane County inmates;

e.    A policy, custom or practice of failing to train non-physician medical personnel how to perform a basic neurological exam;

f.    A policy, custom or practice of not providing for trained physicians to examine seriously injured Lane County inmates;

g.    A policy, custom or practice of not responding to corrections officer reports of inmates' need for medical examinations;

h.    A policy, custom or practice of denying Lane County inmates medically necessary transfers to hospitals;

i.    A policy, custom or practice of denying Lane County inmates necessary medical care if said inmates were thought to be soon released from the jail; and

j.    A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for injured inmates of the Lane County jail.

45.    The policies of defendants Corizon and Lane County posed a substantial risk of causing substantial harm to Lane County inmates, and Corizon and Lane County were aware of the risk.

46.    As a direct result of the policies, customs or practices of Corizon and Lane

Page 15 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

County, Kelly Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.  If Mr. Green had been screened by mental health professionals prior to his arraignment, he would have been identified as a suicide risk, and he would have been afforded precautions and treatment that would have prevented his injuries.  Also as a direct result of the policies, customs or practices of Corizon and Lane County, Mr. Green did not receive prompt and necessary medical care after injuring himself, and a result Kelly Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Kelly Green's parents have been denied his love society and companionship.   Kelly Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

47.    The actions of defendant Corizon were recklessly indifferent to Kelly Green and his parents' civil rights, and callously disregarded Kelly Green's physical safety, and punitive damages should be awarded against Corizon in the sum of $20,000,000.

48.    Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## THIRD CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

Page 16 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

**Supervisory Liability – Wrongful Death**

49.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 35, and 44, above.

50.    Defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, in their supervisory capacities, were aware of the policies, customs or practices as alleged in paragraph 44, above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Lane County inmates by endangering their physical safety and their medical and mental health needs.  Despite their knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

51.    Defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, in their supervisory capacities, failed to adequately train Corizon employees:

      a.  On the need to provide a prompt mental health examination of severely mentally ill persons when they are booked into the Lane County jail;

      b.  On the need to take neck and spine precautions to protect inmates who suffer neck and spine injuries;

      c.  To perform basic neurological examinations;

      d.  To recognize medical emergencies; and

      e.  Of the need to obtain a medical examination by a trained physician to evaluate any seriously injured inmate.

52.     Defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, were aware that the failure to train set forth in paragraph 51, above, created a substantial risk of causing harm to Lane County inmates.

53.     As a direct result of the actions and inactions of defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, Kelly Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Kelly Green's parents have been denied his love, society and companionship.   Kelly Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

54.     The actions of defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10 were recklessly indifferent to Kelly Green and his parents' civil rights, and callously disregarded Kelly Green's physical safety, and punitive damages should be awarded in the sum of $20,000,000.

55.     Plaintiffs are entitled to their entitled to his necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## FOURTH CLAIM FOR RELIEF

### Negligence – Wrongful Death

56.     Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-35, above.

Page 18 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

57.    The actions of defendants Corizon. Lane County and John Does 1-3, and each of them, were negligent in one or more of the following particulars:

    a.    In failing to provide Kelly Green with a mental health assessment upon booking into Lane County jail on February 11, 2013; and

    b.    In failing to provide a mental health assessment to Kelly Green at any time prior to his arraignment.

58.    The actions of defendants Corizon, Lane County, Thomas, White, and Fagan, and each of them, were negligent in one or more of the following particulars:

    a.    In failing to provide an appropriate medical examination to Mr. Green following his neck injury at approximately 10:42 a.m. on February 12, 2013;

    b.    In failing to provide neck precautions to Mr. Green immediately after his injury at approximately 10:42 a.m. on February 12, 2013;

    c.    In failing to immediately transport Mr. Green to a hospital after plaintiff suffered his serious neck injury; and

    d.    In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time he was transported to Sacred Heart Hospital.

59.    The actions of defendants Corizon, Lane County, Thomas, White, Fagan and Pleich were negligent in failing to provide Kelly Green a psychiatric examination at any time between 10:42 a.m. on February 12, 2013, and the time he was transported to

Sacred Heart Hospital.

60.    The actions of defendants Corizon, Lane County, Thomas, White, Fagan, Pleich, Dotson, Balcom and Burnette and each of them, were negligent in one or more of the following particulars:

a. In failing to determine that Mr. Green suffered a serious neck injury at any time prior to 4:33 p.m. on February 12, 2013; and

b. In ignoring Mr. Green's medical plight for almost six hours, even though said defendants were aware that Mr. Green was not moving in his jail cell.

61.    The actions of defendant Corizon were negligent in one or more of the following particulars:

a. In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as he was breathing; and

b. In ignoring Mr. Green's need for medical attention because Corizon employees believed that he was soon to be released from the Lane County jail.

62.    The actions of defendants Corizon, Lane County, Pastor, Keldie, Pinney, Montoya, Thomas and John Does 4-10, were negligent in one or more of the following particulars:

a. In allowing, approving and ratifying the policies, customs or

practices as alleged in paragraph 44, above.

b.  In failing to adequately train Corizon and Lane County employees on the need to provide a prompt mental health examination of mentally ill persons when they are booked into the Lane County jail;

c.  In failing to adequately train Corizon and Lane County employees to provide neck and spine precautions to Lane County inmates who suffer neck and spine injuries;

d.  In failing to adequately train Corizon and Lane County employees to recognize medical emergencies; and

e.  In failing to adequately train Corizon employees to perform a basic neurological examination.

63.  As a direct result of the actions and inactions of defendants, and each of them, Kelly Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Kelly Green's parents have been denied his love society and companionship.  Kelly Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

64.  Notice pursuant to the Oregon Tort Claims Act was given to defendant

Page 21 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Lane County within the time prescribed by law.  Although the estate does not consider Corizon entitled to notice under the Oregon Tort Claims Act, notice was also provided to Corizon within the time prescribed by law.

## FIFTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct – Wrongful Death

65.     Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-35, above.

66.     Defendant Corizon, by and through its employees acting within the scope of their employment, was grossly negligent and acted with reckless misconduct in one or more of the following particulars:

     a.     In failing to provide Mr. Green with a mental health assessment upon booking into Lane County jail on February 11, 2013;

     b.     In failing to provide a mental health assessment to Mr. Green at any time prior to his arraignment;

     c.     In failing to provide an appropriate medical examination to Mr. Green following his neck injury at approximately 10:42 a.m. on February 12, 2013;

     d.     In failing to provide neck precautions to Mr. Green immediately after his injury at approximately 10:42 a.m. on February 12, 2013;

     e.     In failing to immediately transport Mr. Green to a hospital after he suffered his serious neck injury;

f.    In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time plaintiff was transported to Sacred Heart Hospital;

g.    In failing to provide Mr. Green a psychiatric examination at any time between 10:42 a.m. on February 12, 2013, and the time he was transported to Sacred Heart Hospital;

h.    In failing to determine that Mr. Green suffered a serious neck injury at any time prior to 4:33 p.m. on February 12, 2013;

i.    In ignoring Mr. Green's medical plight for almost six hours, even though said defendants were aware that he was not moving in his jail cell;

j.    In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as plaintiff was breathing;

k.    In ignoring Mr. Green's need for medical attention because Corizon believed Mr. Green was soon to be released from the Lane County jail;

l.    In failing to promptly transfer Mr. Green from the Lane County jail to a hospital for diagnosis and treatment of his serious neck fracture;

m.    In allowing, approving and ratifying the policies, customs or

Page 23 – Amended Complaint for Violation of Civil Rights and Suppl. State Claims

practices as alleged in paragraph 44, above;

n.    In failing to adequately train Corizon and Lane County employees on the need to promptly screen and diagnose persons booked into the Lane County jail for severe mental health problems;

o.    In failing to adequately train Corizon and Lane County employees to perform basic neurological examinations; and

p.    In failing to adequately train Corizon and Lane County employees to recognize medical emergencies.

67.    As a direct result of the misconduct of defendant Corizon, Kelly Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Kelly Green's parents have been denied his love, society and companionship.   Kelly Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

68.    The actions of defendant Corizon were grossly negligent, were recklessly indifferent to Kelly Green's civil rights, and callously disregarded his physical safety. Punitive damages should be awarded in the sum of $20,000,000.

69.    Although the estate does not consider Corizon entitled to notice under the Oregon Tort Claims Act, notice was provided to Corizon within the time prescribed by law.

Page 24 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

## SIXTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Survival Claim (Alternative to First Claim for Relief)

70.     Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1 through 35, and 37 through 39, above.

71.     As a direct result of the actions and inactions of defendants as set forth in paragraph 37, above, Kelly Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.   If Mr. Green had been screened by mental health professionals prior to his arraignment, he would have been identified as a suicide risk, and would have been afforded precautions and treatment that would have prevented his injuries.   As a direct result of the actions and inactions of defendants as set forth in paragraph 38, above, Mr. Green's medical condition was exacerbated and he was rendered quadriplegic.   Mr. Green incurred substantial medical expenses, and endured over ten months of severe physical and mental distress prior to his death.    Plaintiff's estate is entitled to compensatory damages in the sum of $10,000,000.

72.     The actions of defendants Thomas, White, Fagan, Pleich, Corizon, Balcom, Dotson and Burnette were recklessly indifferent to plaintiff's civil rights, and callously disregarded Mr. Green's physical safety, and punitive damages should be awarded in the sum of $20,000,000.

73.     Kelly Green's estate is entitled to its necessary and reasonable attorney fees

and costs incurred in the prosecution of this action.

## SEVENTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### *Monell* Claims

### Survival Claim (Alternative to Second Claim for Relief)

74.     Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1 through 35, 37-39, and 44-45, above.

75.     As a direct result of the policies, customs or practices of Corizon and Lane County, Mr. Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.  If Mr. Green had been screened by mental health professionals prior to his arraignment, he would have been identified as a suicide risk, and would have been afforded precautions and treatment that would have prevented his injuries.  Also as a direct result of the policies, customs or practices of Corizon and Lane County, Kelly Green did not receive prompt and necessary medical care after injuring himself, and a result he endured and suffered severe physical and emotional distress, his medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses and endured over ten months of severe physical and mental distress prior to his death.  Kelly Green's estate is entitled to compensatory damages in the sum of $10,000,000.

76.     The actions of defendant Corizon were recklessly indifferent to Kelly Green's civil rights and callously disregarded his physical safety, and punitive damages

Page 26 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

should be awarded against Corizon in the sum of $20,000,000.

77.     Kelly Green's estate is entitled to its necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## EIGHTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Supervisory Liability

### Survival Claim (Alternative to Third Claim for Relief)

78.     Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1 through 35, 44, and 50-52, above.

79.     As a direct result of the actions and inactions of defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, Kelly Green suffered severe injuries, endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses and endured over ten months of severe physical and mental distress.  Kelly Green's estate is entitled to compensatory damages in the sum of $10,000,000.

80.     The actions of defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10 were recklessly indifferent to Kelly Green's civil rights and callously disregarded his physical safety, and punitive damages should be awarded in the sum of $20,000,000.

81.     Kelly Green's estate is entitled to its necessary and reasonable attorney fees

Page 27 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

and costs incurred in the prosecution of this action.

## NINTH CLAIM FOR RELIEF

### Negligence

### Survival Claim (Alternative to Fourth Claim for Relief)

82.      Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-35, and 57-62, above.

83.      As a direct result of the actions and inactions of defendants, and each of them, Kelly Green suffered severe injuries, endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, and endured over ten months of severe physical and mental distress prior to his death.  Kelly Green's estate is entitled to compensatory damages in the sum of $10,000,000.

84.      Notice pursuant to the Oregon Tort Claims Act was given to defendant Lane County within the time prescribed by law.  Although the estate does not consider Corizon entitled to notice under the Oregon Tort Claims Act, notice was also provided to Corizon within the time prescribed by law.

## TENTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct

### Survival Claim  (Alternative to Fifth Claim for Relief)

85.      Kelly Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-35, and 66 above.

Page 28 – AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

86.    As a direct result of the misconduct of defendant Corizon, Kelly Green suffered severe injuries, endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses and endured over ten months of severe physical and mental distress prior to his death.  Kelly Green's estate is entitled to compensatory damages in the sum of $10,000,000.

87.    The actions of defendant Corizon were grossly negligent, were recklessly indifferent to Kelly Green's civil rights, and callously disregarded his physical safety. Punitive damages should be awarded in the sum of $20,000,000.

88.    Although Kelly Green's estate does not consider Corizon entitled to notice under the Oregon Tort Claims Act, notice was provided to Corizon within the time prescribed by law.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On their First Claim for Relief**, for judgment against defendants Corizon, John Does 1-3, Thomas, White, Fagan, Pleich, Balcom, Dotson and Burnette, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On their Second Claim for Relief**, for judgment against defendants Corizon and Lane County, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages against defendant Corizon in the sum of $20,000,000, and for

necessarily and reasonably incurred attorney fees and costs;

**On their Third Claim for Relief**, for judgment against defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Fourth Claim for Relief**, for judgment in favor of Kelly Green's estate against defendants, and each of them, for compensatory damages in the sum of $10,000,000, and for necessarily and reasonably incurred costs;

**On the Fifth Claim for Relief**, for judgment in favor of Kelly Green's estate against defendant Corizon for compensatory damages in the sum of $10,000,000, for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred costs;

**On the Sixth Claim for Relief (Alternative to First Claim for Relief)**, for judgment in favor of Kelly Green's estate against defendants Corizon, John Does 1-3, Thomas, White, Fagan, Pleich, Balcom, Dotson and Burnette, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Seventh Claim for Relief (Alternative to Second Claim for Relief)**, for judgment in favor of Kelly Green's estate against defendants Corizon and Lane County, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages against defendant Corizon in the sum of $20,000,000, and for necessarily and

reasonably incurred attorney fees and costs;

**On the Eighth Claim for Relief (Alternative to Third Claim for Relief)**, for judgment in favor of Kelly Green's estate against defendants Pastor, Keldie, Pinney, Montoya, Thomas, Corizon and John Does 4-10, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Ninth Claim for Relief (Alternative to Fourth Claim for Relief)**, for judgment in favor of Kelly Green's estate against defendants, and each of them, for compensatory damages in the sum of $10,000,000, and for necessarily and reasonably incurred attorney fees and costs; and

**On the Tenth Claim for Relief (Alternative to Fifth Claim for Relief)**, for judgment in favor of Kelly Green's estate against defendant Corizon for compensatory damages in the sum of $10,000,000, for punitive damages in the sum of $20,000,000, and for necessarily and reasonably incurred attorney fees and costs.

DATED this 14 day of February, 2014.

ROSENTHAL GREENE & DEVLIN, P.C.

/s/ Elden M. Rosenthal_____
Elden M. Rosenthal
Oregon State Bar No. 72217
John T. Devlin
Oregon State Bar No. 042690

Of Attorneys for Plaintiff

Plaintiff demands Trial by Jury.

DATED this 14 day of February, 2014.

ROSENTHAL GREENE & DEVLIN, P.C.

_/s/ Elden M. Rosenthal_____
Elden M. Rosenthal
Oregon State Bar No. 72217
John T. Devlin
Oregon State Bar No. 042690

Of Attorneys for Plaintiff