**Elden M. Rosenthal, OSB No. 72217**
elden@rgdpdx.com
**John T. Devlin, OSB No. 042690**
john@rgdpdx.com
Rosenthal Greene & Devlin, P.C.
121 SW Salmon St., Suite 1090
Portland, OR 97204
Telephone: (503) 228-3015
Fascimile: (503) 228-3269

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF OREGON
#### EUGENE DIVISION

| | |
|---|---|
| DEREK JOHNSON, personal representative of KELLY CONRAD GREEN II, deceased; KELLY CONRAD GREEN and SANDY PULVER | Civil Action No. 6:13-cv-01855-TC |
| Plaintiffs, | |
| v. | **SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 USC § 1983) AND SUPPLEMENTAL STATE CLAIMS** |
| CORIZON HEALTH, INC., a Tennessee Corporation; LANE COUNTY, an Oregon county; DR. CARL KELDIE, an individual; DR. JUSTIN MONTOYA, an individual; VICKI THOMAS, an individual; KIRSTIN WHITE, an individual;; SHARON EPPERSON (née FAGAN), an individual, and JACOB PLEICH, an individual, | **DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

## INTRODUCTION

1.      Kelly Conrad Green, II, a mentally ill person, was arrested and booked in

the Lane County Jail on a misdemeanor warrant during the evening of February 11, 2013.

Although Lane County had contracted with Corizon Health, Inc., to provide medical

Page 1 – 2ⁿᵈ AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE
CLAIMS

services at the jail, and although Mr. Green was exhibiting symptoms of severe mental illness, Mr. Green was neither medically screened nor examined by Corizon staff.  The next morning, during a court appearance at approximately 10:42 a.m., Mr. Green ran headfirst into a concrete wall, fracturing his neck.  Lane County and Corizon employees treated the injury as minor, failed to perform a reasonable medical examination, failed to consult a physician, and – despite Mr. Green telling defendants that he could not move – failed to transport him to a hospital.  Instead, Mr. Green was taken, without any neck or spine precautions, to a jail cell where he was left naked, incontinent and not moving.  At approximately 4:33 p.m. someone from the jail finally called for an ambulance to transport Mr. Green to a hospital.  As a direct result of the defendants' misconduct, Mr. Green was rendered quadriplegic.  He subsequently died on December 14, 2013 as a result of complications arising from his injuries.  Plaintiffs seek compensatory and punitive damages.

## JURISDICTION AND VENUE

2.    This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a).  This Court has pendent jurisdiction of the state law negligence claims pursuant to 28 USC § 1367, and diversity jurisdiction pursuant to 28 USC § 1332(c)(2).

## PARTIES

3.    Plaintiff Derek Johnson is the duly appointed personal representative of the Estate of Kelly Conrad Green, II, deceased (hereinafter: "Casey Green" or "Mr. Green").

Kelly Conrad Green and Sandy Pulver are the parents of Casey Green, deceased.  At the time of his death, Casey Green was a citizen and a resident of the State of Washington. On February 11 & 12, 2013, Mr. Green was a pretrial detainee in the Lane County jail.

4.     Corizon Health, Inc. (hereinafter: "Corizon") is a Delaware corporation authorized to do business in the State of Oregon.  Its business is providing medical services in jails and prisons nationally, and in the Lane County jail specifically.  At all times pertinent, Corizon was acting under color of state law.

5.     Lane County is an Oregon county.  Lane County operates a jail in Eugene, Oregon, and has contracted with Corizon to provide all necessary medical care to pretrial detainees and persons convicted of crimes held at the Lane County jail.

6.     Defendant Keldie, a licensed physician, was the national medical director for Corizon in February of 2013. At all times pertinent defendant Keldie was responsible for the medical policies, customs and procedures utilized by Corizon medical workers in the Lane County jail.  At all times pertinent, defendant Keldie was acting under color of state law.  Defendant Keldie is a citizen and resident of the State of Tennessee.

7.     Defendant Montoya, a licensed physician, is a Corizon agent or employee who at all times pertinent was the Corizon Site Medical Director for the Lane County jail, and was the supervising physician for defendant White.  At all times pertinent, defendant Montoya was acting under color of state law.  Defendant Montoya is a citizen and resident of the State of Oregon.

8.     Defendant Thomas, a registered nurse, is a Corizon employee who at all

Page 3 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

times pertinent was the Health Services Administrator of the Lane County jail, the on-site person responsible for providing medical services at the jail.  At all times pertinent, defendant Thomas was acting under color of state law.  Defendant Thomas is a citizen and resident of the State of Oregon.

9.    Defendant White, a licensed physician's assistant, is a Corizon employee who at all times pertinent was working as a primary care provider in the Lane County jail.  At all times pertinent, defendant White was acting under color of state law. Defendant White is a citizen and resident of the State of Oregon.

10.    Defendant Epperson (née Fagan), a registered nurse, is a Corizon employee who at all times pertinent was working in the Lane County jail.  At all times pertinent, defendant Epperson was acting under color of state law.  Defendant Epperson is a citizen and resident of the State of Texas.

11.    Defendant Pleich, a licensed professional counselor, is a Corizon employee who at all times pertinent was working in the Lane County jail.  At all times pertinent, defendant Pleich was acting under color of state law.  Defendant Pleich is a citizen and resident of the State of Oregon.

## **FACTUAL ALLEGATIONS**

12.    Lane County's Eugene jail houses pretrial detainees and persons convicted of crimes.  Lane County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Lane County jail.

13.    Commencing in the spring of 2012, Lane County contractually delegated to

Page 4 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Corizon its duty to provide medical and mental health care to pretrial detainees and persons convicted of crimes lodged in the Lane County jail.  In exchange for a flat fee, Corizon assumed all responsibility to "deliver quality medical services" to jail inmates, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations."  Corizon also agreed to pay for all inmate medical services that cannot be performed in the jail, including all ambulance and hospital charges.

14.    On February 11, 2013, Casey Green was arrested and taken to the Lane County jail.  Mr. Green had previously been jailed in Lane County in both December of 2012 and January of 2013.  Employees of both Lane County and Corizon were aware that Mr. Green suffered from severe mental illness, and records maintained by Lane County and Corizon reflected his history of mental illness.

15.    Casey Green was booked into the Lane County jail during the evening of February 11, 2013.  At the time of booking, the arresting officer noted that Mr. Green made suicidal statements immediately prior to his arrest, and that he was suffering from paranoid schizophrenia.  Booking documents prepared by Lane County Sheriff Officer (hereinafter "LCSO") Nelson noted that Casey Green was "very agitated, talking to himself and inanimate objects, and cursing continuously."  According to Lane County jail records, Mr. Green "barely made it through the booking process."

16.    Casey Green was held in a jail cell by himself until shortly prior to his arraignment at approximately 10:42 a.m. on February 12, 2013.  At no time prior to his arraignment was he medically screened nor was he assessed by any mental health

Page 5 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

professional.

17.     Casey Green was arraigned in a courtroom inside the jail building.  Before his arraignment, Mr. Green had some verbal outbursts and was asked to quiet down. During his arraignment, the arraignment judge told Mr. Green that he would have to remain in jail.  The judge decided to hold him in jail because "[h]e looked like he might ultimately be somebody who would be eligible for mental health court."  Casey Green began to talk to himself while the judge was telling him that he would have to remain in jail, and then ran headfirst approximately 15 feet into a concrete wall.  Casey Green collapsed onto the floor, bleeding profusely from his head.  (This event will be referred to as "plaintiff's injury" throughout the remainder of this 2nd Amended Complaint.)

18.     Corizon medical staff, including defendants White and Epperson, responded to the courtroom.  Mr. Green told defendant White that he was paralyzed and could not move.  No effort was made to stabilize plaintiff's neck or spine.  He was cursorily examined, and bandages were applied.  No physician was called or summoned. No neurological exam was performed.  Mr. Green was put in a wheelchair and removed from the courtroom with his feet dragging behind the wheelchair.

19.     Defendant White, assisted by defendant Epperson, sutured Casey Green's head wound in the jail medical clinic.  No physician was called or summoned.  No neurological exam was performed.  No neck or spine precautions were taken.  While his head was being sutured, Casey Green involuntarily lost control of his bowels.  Defendant White diagnosed plaintiff with a scalp laceration.  She entered in Mr. Green's medical

chart that neurological checks "will continue" every 1-2 hours, that Mr. Green will "be released," and that she "will recommend courtesy drop" at a hospital emergency room "for further/cont[inued] eval[uation]."  Lane County Sheriff Officers on duty contradict defendant White's chart notes and have testified that no arrangements were made to release Mr. Green.  Defendant White discharged Mr. Green from the medical clinic with no effort made to talk with her supervising physician, with no effort made to arrange for a physician to examine him, with no effort made to diagnose his neck injury, and with no neck or spine precautions.

20.    At approximately 11:35 a.m. on February 12, 2013, Casey Green was transferred from the medical clinic to a jail cell on a wheelchair by Lane County Sheriff Officers.  Despite the obvious facts that Mr. Green was limp, could not control his limbs, had defecated on himself and seemed to have minimal control of any portion of his body, the officers removed Casey Green's clothing and repeatedly manipulated his neck.  During this process, Mr. Green fell to the floor.  He was picked up and put on a jail bunk.  No neck or spine precautions were taken.  Casey Green was left, naked and lying in his own feces on a jail bunk, and a fifteen minute suicide watch was started.

21.    At approximately 12:17 p.m., LCSO Burnette reported to a Corizon nurse, probably defendant Epperson, that Mr. Green was not moving.  The Corizon nurse, probably defendant Epperson, advised Burnette that as long as Mr. Green was breathing there was "no immediate concern."  No member of the Corizon medical staff examined Mr. Green; no neurological check occurred.  Casey Green remained naked, immobile and

Page 7 – 2ⁿᵈ AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

lying in his own feces.

22.    At approximately 1:35 p.m., while alone in his cell, Kelly Green repeatedly said "help" and asked for a blanket and a pillow.  LCSO Burnette responded and asked Mr. Green if anyone from the medical staff had come to speak with him.  Casey Green said that no one from the medical staff had seen him, and asked for a blanket and a doctor.  He remained naked, immobile and lying in his own feces.

23.    At approximately 1:40 p.m., LCSO Burnette placed a blanket on a sink in Mr. Green's cell and told Mr. Green that he would talk with the medical staff.  After LCSO Burnette left, Mr. Green responded: "I'm paralyzed, man."  Casey Green remained naked, immobile and lying in his own feces.

24.    At approximately 1:45 p.m., LCSO Burnette again reported to a Corizon nurse, probably defendant Epperson, that Mr. Green still was not moving.  The Corizon nurse, probably defendant Epperson, again asked Burnette whether Mr. Green was breathing, and again neither examined him nor performed a neurological exam.  Casey Green remained naked, immobile and lying in his own feces.

25.    Defendant Pleich was the only mental health care provider working at the Lane County jail on 2/12/2013.  Mr. Pleich did not interview Casey Green until approximately 2:30 p.m.  During that interview, Casey Green told Pleich: "I think I'm gonna die because I'm paralyzed fully."  Pleich responded: "I don't believe you're fully paralyzed."  Pleich told Mr. Green: "If you were actually paralyzed, our medical staff would probably transport you to the hospital."  Casey Green responded: "I would have

Page 8 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

appreciated that earlier." Defendant Pleich placed a blanket over Mr. Green, but left him naked, immobile and lying in his own feces. Defendant Pleich did not report his interaction with or observations of Casey Green to any member of the Corizon medical or nursing staff. Defendant Pleich did not make any effort to arrange for emergency medical care.

26.    At approximately 3:25 p.m., LCSO Dan Correll relieved LCSO Burnette. Burnette briefed Correll about the events involving Mr. Green. Specifically, Burnette told Correll that Casey Green had not moved for several hours. At approximately 3:30 p.m., Correll checked on Mr. Green, who told Correll that he was not able to move and asked for a doctor. Correll immediately walked to the jail medical clinic and spoke with defendant Epperson.

27.    At approximately 3:36 p.m., defendant Epperson and another Corizon nurse, Ms. Leah Smith, examined Casey Green, who repeatedly told them that he could not move. No cervical or spine precautions were taken. No physician was contacted.

28.    At approximately 3:40 p.m., defendant White examined Mr. Green, who repeatedly told her that he could not move. Defendant White determined that Casey Green had suffered a "possible cervical injury." No cervical or spine precautions were taken. No physician was contacted.

29.    At approximately 3:50 p.m., Nurse Smith took Casey Green's vital signs and determined that his blood pressure and pulse were dangerously low. Nurse Smith immediately advised defendant White of this fact. Defendant White did not return to Mr.

Green's jail cell, did not call her supervising physician, did not arrange for any emergency medical care. She left the jail at 3:57 p.m. and did not return until the next morning.

30.    At approximately 4:33 p.m., someone from the Lane County Jail advised Eugene Fire and EMS that Mr. Green needed to be transported to a hospital. Eugene Fire and EMS was not told that the situation was an emergency. Paramedics arrived on the scene at approximately 4:49 p.m. When they contacted Casey Green, the paramedics immediately took steps to immobilize his neck and spine, to provide him with IV fluids, and upgraded the call to an emergency level. Additional assistance was summoned to the jail. Paramedics removed Casey Green from the jail on a backboard and in a cervical collar at approximately 5:16 p.m.

31.    Casey Green was transported to Sacred Heart Hospital and admitted at approximately 5:30 p.m., where he was diagnosed with a fractured neck, a spinal cord injury and resultant quadriplegia. That evening he underwent nearly three hours of surgery. Casey Green survived the surgery as a ventilator-dependent quadriplegic, and remained a ventilator dependent quadriplegic until his death on December 14, 2013.

## FIRST CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Wrongful Death

32.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 31, above.

Page 10 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

33.    After plaintiff's injury, defendants Thomas, White, Epperson, Pleich and Corizon were deliberately indifferent to Mr. Green's serious medical needs and to his rights under the Fourteenth Amendment of the U.S. Constitution in one or more of the following particulars:

    a.  In failing to provide prompt medical attention to his serious medical needs;

    b.  In failing to provide any neck or spine precautions;

    c.  In failing to promptly transfer Mr. Green from the Lane County jail to a hospital for diagnosis and treatment;

    d.  In seriously aggravating his medical condition by authorizing the moving, dragging and careless manipulation of Mr. Green's body after he suffered a serious neck fracture;

    e.  In seriously aggravating his medical condition by moving, dragging and carelessly manipulating Mr. Green's body after he suffered a serious neck fracture;

    f.  In seriously aggravating his medical condition by ignoring his medical plight for almost six hours; and

    g.  In allowing and causing him to lie naked, not moving and in his own feces on a jail bed from approximately 11:30 a.m. until approximately 4:00 p.m.

34.    Defendants Pleich and Corizon were deliberately indifferent to Mr. Green's

Page 11 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

serious medical needs and to his rights under the Fourteenth Amendment of the U.S. Constitution in one or more of the following particulars:

     a.  In failing to promptly report defendant Pleich's interaction with and observations of Casey Green to Corizon medical or nursing staff; and

     b.  In failing to make any effort to arrange for emergency medical care for Casey Green after being told by Casey Green that he was paralyzed.

35.    Defendants White and Corizon were deliberately indifferent to Mr. Green's rights under the Fourteenth Amendment of the U.S. Constitution in that:

     a.  Defendant White did not take the necessary steps to have Mr. Green immediately taken by ambulance to a hospital after examining him at approximately 3:40 p.m. on February 12, 2013; and

     b.  Defendant White abandoned Mr. Green at approximately 3:57 p.m. when she left the jail knowing that he had suffered a significant neurological injury, knowing that his blood pressure and pulse were critically low, knowing that he was in neurogenic shock, and knowing that no other physician's assistant or medical doctor was in the jail to provide necessary emergency medical care.

36.    As a direct result of the actions and inactions of defendants as set forth in paragraphs 33 through 35, above, Casey Green's medical condition was exacerbated and

Page 12 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Mr. Green's parents have been denied his love, society and companionship.   Casey Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

37.    The actions of defendants Corizon, Thomas, White, Epperson and Pleich were recklessly indifferent to Casey Green and his parents' civil rights, and callously disregarded Casey Green's physical safety, and punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

38.    Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### *Monell* Claims – Wrongful Death

39.    Plaintiffs reallege and incorporate herein as though set forth in full paragraphs 1 through 31, and 38, above.

40.    The moving forces that resulted in the deprivation of Casey Green's and his parents' Fourteenth Amendment rights were the following policies, customs or practices of Corizon and Lane County:

a.    A policy, custom or practice of not providing mental health screening to obviously mentally ill Lane County inmates at or

Page 13 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

near the time of booking in Lane County jail;

b.    A policy, custom or practice of not using the on-call psychiatrist for consultation even when a new jail admittee is actively suicidal and floridly psychotic;

c.    A policy, custom or practice of not providing for trained physicians to examine seriously injured Lane County inmates;

d.    A policy, custom or practice of denying Lane County inmates necessary medical care if said inmates are thought to be soon released from the jail;

e.    A policy, custom or practice of discouraging transferring inmates to a hospital for medical care;

f.    A policy, custom or practice of delaying transferring Lane County inmates to hospitals for necessary emergency medical care in order to first prepare paperwork to effectuate a jail discharge; and

g.    A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for injured inmates of the Lane County jail.

41.    The policies, customs and practices of defendants Corizon and Lane County posed a substantial risk of causing substantial harm to Lane County inmates, and Corizon and Lane County were aware of the risk.

42.    As a direct result of the policies, customs or practices of Corizon and Lane

Page 14 – 2ⁿᵈ AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

County, Casey Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.  If Mr. Green had been screened by a mental health professional prior to his arraignment, he would have been identified as a suicide risk, and he would have been afforded precautions and treatment that would have prevented his injuries.  Also as a direct result of the policies, customs or practices of Corizon and Lane County, Mr. Green did not receive prompt and necessary medical care after injuring himself, and as a result he endured and suffered severe physical and emotional distress, his medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Casey Green's parents have been denied his love society and companionship.   Casey Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

43.    The actions of defendant Corizon were recklessly indifferent to Casey Green and his parents' civil rights, and callously disregarded Casey Green's physical safety, and punitive damages should be awarded against Corizon in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

### THIRD CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Supervisory Liability – Wrongful Death

44.    Plaintiffs reallege and incorporate herein as though set forth in full

paragraphs 1 through 31, 38 and 40, above.

45.     Defendants Keldie, Montoya, Thomas and Corizon, in their supervisory capacities, were aware of the policies, customs or practices as alleged in paragraph 40, above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Lane County inmates by endangering their physical safety and their medical and mental health needs.  Despite their knowledge, said defendants allowed, approved of and ratified said policies, customs or practices.

46.     Defendants Keldie, Montoya, Thomas and Corizon, in their supervisory capacities, failed to adequately train Corizon and Lane County employees:

> a.  Of the need to provide a prompt mental health examination of severely mentally ill persons when they are booked into the Lane County jail;
>
> b.  Of the need to obtain a medical examination by a trained physician to evaluate any seriously injured inmate;
>
> c.  Of the need to not move a patient with a possible closed head or spinal cord injury without providing neck and spinal cord protection;
>
> d.  Of the need to perform radiologic imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to jailers; and
>
> e.  Of the need to immediately summon emergency transport to

hospital facilities when a patient is in need of emergency care, and not to wait for jail authorities to first arrange for the patient's release from jail.

47.     Defendants Keldie, Montoya, Thomas and Corizon were aware that the failure to train set forth in paragraph 45, above, created a substantial risk of causing harm to Lane County inmates.

48.     Defendant Montoya approved and ratified the actions of Defendant White, Thomas and Epperson.  Defendant Thomas approved and ratified the actions, as set forth above, of defendants White and Epperson.

49.     As a direct result of the actions and inactions of defendants Keldie, Montoya, Thomas and Corizon, Casey Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Casey Green's parents have been denied his love, society and companionship.   Casey Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

50.     The actions of defendants Keldie, Montoya, Thomas and Corizon were recklessly indifferent to Casey Green and his parents' civil rights, and callously disregarded Casey Green's physical safety, and punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

## FOURTH CLAIM FOR RELIEF

### Negligence – Wrongful Death

51.    Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31, above.

52.    The actions of defendants Corizon and Lane County, acting by and through their employees and agents, were negligent in one or more of the following particulars:

a.    In failing to provide Casey Green with a mental health assessment upon booking into Lane County jail on February 11, 2013;

b.    In failing to provide a mental health assessment to Casey Green at any time prior to his arraignment;

c.    In failing to provide an appropriate medical examination to Mr. Green following plaintiff's injury at approximately 10:42 a.m. on February 12, 2013;

d.    In failing to provide neck precautions to Mr. Green immediately after plaintiff's injury at approximately 10:42 a.m. on February 12, 2013;

e.    In failing to immediately transport Mr. Green directly to a hospital from the courtroom on February 12, 2013;

f.    In failing to have a cervical collar or backboard available for use in the Lane County jail on February 12, 2013;

g.  In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time he was transported to Sacred Heart Hospital;

h.  In failing to determine that Mr. Green suffered a serious neck injury at any time prior to 4:00 p.m. on February 12, 2013;

i.  In failing to call for emergency assistance prior to 4:33 p.m. on February 12, 2013;

j.  In ignoring Mr. Green's medical plight for almost five hours, even though said defendants were aware that Mr. Green was not moving in his jail cell;

k.  In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 40, above;

l.  In failing to adequately train Corizon and Lane County employees on the need to provide a prompt mental health examination of mentally ill persons when they are booked into the Lane County jail; and

m.  In failing to train Lane County Booking Officer Nelson of the need to seek mental health screening of inmates exhibiting severe mental health symptoms at the time of admission into the Lane County jail.

53.  The actions of defendant Corizon were negligent in one or more of the

following particulars:

      a.  In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as he was breathing;

      b.  In ignoring Mr. Green's need for medical attention because Corizon employees believed that he was soon to be released from the Lane County jail;

      c.  In failing to adequately train Corizon and Lane County employees to provide neck and spine precautions to Lane County inmates who suffer neck and spine injuries; and

      d.  In failing to train Corizon staff of the need to perform radiological imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to jailors.

54.    As a direct result of the actions and inactions of defendants, and each of them, Casey Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Casey Green's parents have been denied his love society and companionship.  Casey Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

55.    Notice pursuant to the Oregon Tort Claims Act was given to defendant

Page 20 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Lane County within the time prescribed by law.  Although the estate does not consider Corizon entitled to notice under the Oregon Tort Claims Act, notice was also provided to Corizon within the time prescribed by law.

## FIFTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct – Wrongful Death

56.     Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31 and 55, above.

57.     Defendant Corizon, by and through its employees and agents acting within the course and scope of their employment, was grossly negligent and acted with reckless misconduct in one or more of the following particulars:

    a.     In failing to provide Casey Green with a mental health assessment upon booking into Lane County jail on February 11, 2013;

    b.     In failing to provide a mental health assessment to Casey Green at any time prior to his arraignment;

    c.     In failing to provide an appropriate medical examination to Mr. Green following plaintiff's neck injury at approximately 10:42 a.m. on February 12, 2013;

    d.     In failing to provide neck precautions to Mr. Green immediately after plaintiff's injury at approximately 10:42 a.m. on February 12, 2013;

    e.     In failing to immediately transport Mr. Green directly to a hospital

from the courtroom on February 12, 2013;

f.    In failing to have a cervical collar or backboard available for use in the Lane County jail on February 12, 2013;

g.    In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time plaintiff was transported to Sacred Heart Hospital;

h.    In failing to determine that Mr. Green suffered a serious neck injury at any time prior to 4:00 p.m. on February 12, 2013;

i.    In failing to call for emergency assistance prior to 4:33 p.m. on February 12, 2013;

j.    In ignoring Mr. Green's medical plight for almost five hours, even though said defendants were aware that he was not moving in his jail cell;

k.    In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as he was breathing;

l.    In ignoring Mr. Green's need for medical attention because Corizon employees believed that he was soon to be released from the Lane County jail;

m.    In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 40, above;

n.    In failing to adequately train Corizon and Lane County employees

on the need to provide a prompt mental health examination of mentally ill persons when they are booked into the Lane County jail;

o.    In failing to train Lane County Booking Officer Nelson of the need to seek mental health screening of inmates exhibiting severe mental health symptoms at the time of admission into the Lane County jail;

p.    In failing to adequately train Corizon and Lane County employees to provide neck and spine precautions to Lane County inmates who suffer neck and spine injuries; and

q.    In failing to train Corizon staff of the need to perform radiological imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to jailors.

58.    As a direct result of the misconduct of defendant Corizon, Casey Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Casey Green's parents have been denied his love, society and companionship.   Casey Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

59.    The actions of defendant Corizon were grossly negligent, were recklessly

indifferent to Casey Green's civil rights, and callously disregarded his physical safety. Punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

## SIXTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Survival Claim (Alternative to First Claim for Relief)

60.     Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1 through 31, 33-35, 38 and 55, above.

61.     As a direct result of the actions and inactions of defendants, Mr. Green's medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, and endured over ten months of severe physical and mental distress prior to his death.  Plaintiff's estate is entitled to compensatory damages in the sum of $10,000,000.

62.     The actions of defendants Thomas, White, Epperson, and Corizon were recklessly indifferent to plaintiff's civil rights, and callously disregarded Mr. Green's physical safety, and punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

///

///

///

///

Page 24 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

## SEVENTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### *Monell* Claims

### Survival Claim (Alternative to Second Claim for Relief)

63.     Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31, 33-35, 38, 40-41 and 55, above.

64.     As a direct result of the policies, customs or practices of Corizon and Lane County, Mr. Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.  If Mr. Green had been screened by mental health professionals prior to his arraignment, he would have been identified as a suicide risk, and would have been afforded precautions and treatment that would have prevented his injuries.  Also as a direct result of the policies, customs or practices of Corizon and Lane County, Casey Green did not receive prompt and necessary medical care after injuring himself, and a result he endured and suffered severe physical and emotional distress, his medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses and endured over ten months of severe physical and mental distress prior to his death.  Casey Green's estate is entitled to compensatory damages in the sum of $10,000,000.

65.     The actions of defendant Corizon were recklessly indifferent to Casey Green's civil rights and callously disregarded his physical safety, and punitive damages should be awarded against Corizon in the sum of at least $20,000,000, or whatever

Page 25 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

amount the jury concludes is appropriate.

## EIGHTH CLAIM FOR RELIEF

### Civil Rights Claim – 14th Amendment – 42 USC § 1983

### Supervisory Liability

### Survival Claim (Alternative to Third Claim for Relief)

66.    Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31, 38, 40-41, 45-49 and 55, above.

67.    As a direct result of the actions and inactions of defendants Keldie, Montoya, Thomas and Corizon, Casey Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Casey Green's estate is entitled to compensatory damages in the sum of $10,000,000.

68.    The actions of defendants Keldie, Montoya, Thomas and Corizon were recklessly indifferent to Casey Green's civil rights and callously disregarded his physical safety, and punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

///

///

///

Page  26  –  2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

## NINTH CLAIM FOR RELIEF

### Negligence

### Survival Claim (Alternative to Fourth Claim for Relief)

69.     Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31, 38, 52-54 and 55, above.

70.     As a direct result of the actions and inactions of defendants, and each of them, Casey Green suffered severe injuries, endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses, and endured over ten months of severe physical and mental distress prior to his death.  Casey Green's estate is entitled to compensatory damages in the sum of $10,000,000.

## TENTH CLAIM FOR RELIEF

### Gross Negligence/Reckless Misconduct

### Survival Claim (Alternative to Fifth Claim for Relief)

71.     Casey Green's estate realleges and incorporates herein as though set forth in full paragraphs 1-31, 38, 55 and 57 above.

72.     As a direct result of the misconduct of defendant Corizon, Casey Green suffered severe injuries, endured and suffered severe physical and emotional distress, his medical condition was exacerbated, and he was rendered quadriplegic.  Mr. Green incurred substantial medical expenses and endured over ten months of severe physical and mental distress prior to his death.  Casey Green's estate is entitled to compensatory

damages in the sum of $10,000,000.

73.     The actions of defendant Corizon were grossly negligent, were recklessly indifferent to Casey Green's civil rights, and callously disregarded his physical safety. Punitive damages should be awarded in the sum of at least $20,000,000, or whatever amount the jury concludes is appropriate.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On their First Claim for Relief**, for judgment against defendants Corizon, Thomas, White, Epperson, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On their Second Claim for Relief**, for judgment against defendants Corizon and Lane County, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages against defendant Corizon in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On their Third Claim for Relief**, for judgment against defendants Keldie, Montoya, Thomas and Corizon, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Fourth Claim for Relief**, for judgment in favor of Casey Green's estate against defendants, and each of them, for compensatory damages in the sum of $10,000,000, and for necessarily and reasonably incurred costs;

Page 28 – 2ⁿᵈ AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

**On the Fifth Claim for Relief**, for judgment in favor of Casey Green's estate against defendant Corizon for compensatory damages in the sum of $10,000,000, for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred costs;

**On the Sixth Claim for Relief (Alternative to First Claim for Relief)**, for judgment in favor of Casey Green's estate against defendants Corizon, Thomas, White, Epperson, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Seventh Claim for Relief (Alternative to Second Claim for Relief)**, for judgment in favor of Casey Green's estate against defendants Corizon and Lane County, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages against defendant Corizon in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Eighth Claim for Relief (Alternative to Third Claim for Relief)**, for judgment in favor of Casey Green's estate against defendants Keldie, Montoya, Thomas and Corizon, and each of them, for compensatory damages in the sum of $10,000,000, and for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs;

**On the Ninth Claim for Relief (Alternative to Fourth Claim for Relief)**, for judgment in favor of Casey Green's estate against defendants, and each of them, for

Page 29 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

compensatory damages in the sum of $10,000,000, and for necessarily and reasonably incurred attorney fees and costs; and

**On the Tenth Claim for Relief (Alternative to Fifth Claim for Relief)**, for judgment in favor of Casey Green's estate against defendant Corizon for compensatory damages in the sum of $10,000,000, for punitive damages in the sum of at least $20,000,000, and for necessarily and reasonably incurred attorney fees and costs.

DATED this 29th day of December, 2014.

ROSENTHAL GREENE & DEVLIN, P.C.

/s/ Elden M. Rosenthal_____
Elden M. Rosenthal
Oregon State Bar No. 72217
John T. Devlin
Oregon State Bar No. 042690

Of Attorneys for Plaintiff


Plaintiff demands Trial by Jury.

DATED this 29th day of December, 2014.


ROSENTHAL GREENE & DEVLIN, P.C.

_/s/ Elden M. Rosenthal_____
Elden M. Rosenthal
Oregon State Bar No. 72217
John T. Devlin
Oregon State Bar No. 042690

Of Attorneys for Plaintiff


Page 30 – 2nd AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

# CERTIFICATE OF SERVICE

I hereby certify that I served true and correct copies of the foregoing:

     1.  SECOND AMENDED COMPLAINT.

on the following:

| | |
|---|---|
| James Daigle / Robert Coleman | Sebastian Tapia |
| Stewart Sokol & Larkin LLC | Lane County Counsel |
| 2300 SW First Ave., Suite 200 | 125 East 8th Avenue |
| Portland, OR 97201 | Eugene, OR  97401 |
| jmdaigle@lawssl.com | Sebastian.tapia@co.lane.or.us |
| rcoleman@lawssl.com | |
|      Of Attorneys for defendants. |      Of Attorneys for defendants |

by the following method/s:

    _____  mail with postage prepaid, deposited in the US mail at Portland, OR
    \_\_\_X\_\_  service made via electronic mailing and/or CM/ECF filing
    _____  hand delivery
    _____  facsimile transmission
    _____  overnight delivery.

Dated this 29th day of December, 2014.

                                 /s/ Elden M. Rosenthal
                               ELDEN M. ROSENTHAL, OSB No. 722174
                               JOHN T. DEVLIN, OSB No. 042690
                               Of Attorneys for Plaintiff