**Elden M. Rosenthal**, OSB No. 72217
elden@rgdpdx.com
**Michael A. Greene**, OSB No. 802445
Mike@rgdpdx.com
**John T. Devlin**, OSB No. 042690
john@rgdpdx.com
*Rosenthal Greene & Devlin, P.C.*
121 SW Salmon St., Suite 1090
Portland, OR 97204
*Telephone*: (503) 228-3015
*Fascimile*: (503) 228-3269

Of Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **DEREK JOHNSON**, personal representative of **KELLY CONRAD GREEN II**, deceased; **KELLY CONRAD GREEN** and **SANDY PULVER**, | **Civil Action No. 6:13-cv-01855-TC** |
| Plaintiffs, | |
| v. | **PRE-TRIAL ORDER** |
| **CORIZON HEALTH, INC.**, a Tennessee Corporation; **LANE COUNTY**, an Oregon county; **DR. JUSTIN MONTOYA**, an individual; **VICKI THOMAS**, an individual; **KIRSTIN WHITE**, an individual; **SHARON  EPPERSON** (née FAGAN), an individual, | |
| Defendants. | |

The following Pre-trial Order is lodged pursuant to Orders of the court.

**Page 1 – PRETRIAL ORDER**

## I.     NATURE OF THE ACTION

This is a wrongful death/survival action brought under the Federal Civil Rights Statute, 42 USC §1983, and under Oregon law.   The parties consented to trial by Magistrate Coffin.  The case will be tried to a jury.

## II.     SUBJECT MATTER JURISDICTION

The court has jurisdiction over the Federal Civil Rights Claim (42 USC §1983) pursuant to 28 USC §§1331 and 1343(a).  The court has pendent jurisdiction of the state law negligence claims pursuant to 28 USC §1367 and 28 USC §1332(c)(2).

## III.    AGREED FACTS

The undisputed facts as agreed by the parties are the following:

1.    Plaintiff Derek Johnson is the duly appointed personal representative of Kelly Conrad Green II, deceased ("Mr. Green").  Kelly Conrad Green and Sandy Pulver are the parents of Mr. Green.  At the time of his death, Mr. Green was a citizen and a resident of the State of Washington.

2.    At all times pertinent Mr. Green was a pretrial detainee in the Lane County jail.

3.    Corizon Health, Inc. ("Corizon") was formed in 2011 when Prison Health Services purchased Correctional Medical Services, merging the two companies to create Corizon.  Corizon is a Delaware corporation authorized to do business in the State of Oregon.  Its business is providing medical services in jails and prisons nationally, and in the Lane County jail

specifically.  At all times pertinent, Corizon was acting under color of state law.

4.  Lane County is an Oregon county.  Lane County operates a jail in Eugene, Oregon.  Lane County's Eugene jail houses pretrial detainees and persons convicted of crimes.  Lane County is obligated by state and federal law to provide medical and mental health care for persons lodged in the Lane County jail.

5.  Commencing in June 2012, Lane County, by contract, delegated to Corizon the obligation to provide medical and mental health care to Lane County pretrial detainees and persons convicted of crimes lodged in the Lane County jail.  Said contractual relationship was in full force and effect in February 2013, and continues to June 30, 2015.

6.  In exchange for a flat fee, Corizon assumed all responsibility to "deliver quality medical services" to jail inmates, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations."  When an inmate was a detainee at the Lane County Adult Correctional Facility and had not yet been released from jail, Corizon also agreed to pay for all inmate medical services that cannot be performed in the jail, including all ambulance and hospital charges.

7.  Lane County initially posted a Request for Proposal (RFP) in late 2011.  Corizon responded to the RFP.  In Corizon's response it represented:

   a.  That Corizon is "committed to delivering the highest quality correctional healthcare services;"

   b.  That Corizon "will identify the need, schedule, administer, coordinate, and pay for all * * * emergency medical care rendered to inmates inside or outside the Jail facility;"*

   c.  That "intake medical screening will be conducted on all new inmates * * * twenty-four (24) hours a day, including weekends and holidays as part of the booking process;" and

   d.  That "care and transportation will be provided without delay for any inmate requiring emergency hospitalization;"

8.   Corizon's response to Lane County's RFP was incorporated into the contract signed by Lane County and Corizon.

9.   Defendant Montoya is a licensed physician who at all times pertinent was, and remains, a Corizon employee.  In February of 2013 he was – and remains to this day – the Corizon site medical director for Lane County Adult Corrections, including the Lane County jail.  In February of 2013 he was - and remains to this day – the supervising physician for defendant White.  At all times pertinent, defendant Montoya was acting under color of state law.  Defendant Montoya is a citizen and resident of the State of Oregon.

10.   Defendant Thomas is a registered nurse who at all times pertinent was, and

remains, a Corizon employee.  In February of 2013 she was the Health Services Administrator of the Lane County jail, the on-site person responsible for providing medical services at the jail.  Since November of 2013 defendant Thomas has served as the Corizon Regional Clinical Services Manager.  At all times pertinent, defendant Thomas was acting under color of state law.  Defendant Thomas is a citizen and resident of the State of Oregon.

11.    Defendant White is a licensed physician's assistant who at all times pertinent was, and remains, a Corizon employee working in the Lane County jail.  At all times pertinent, defendant White was acting under color of state law.  Defendant White is a citizen and resident of the State of Oregon.

12.    Defendant Epperson (née Fagan) is a registered nurse who at all times pertinent was working in the Lane County jail.  At all times pertinent, defendant Epperson was acting under color of state law.  She is a citizen and resident of the State of Texas.

13.    On February 11, 2013, Mr. Green was arrested on an outstanding warrant and booked in the Lane County jail.  Mr. Green had previously been jailed in Lane County in both December of 2012 and January of 2013.  Certain employees of both Lane County and Corizon were aware that Mr. Green suffered from mental illness, and records maintained by Lane County and

Corizon reflected his history of mental illness.*

14.    Mr. Green was booked into the Lane County jail during the evening of February 11, 2013.

15.    Mr. Green was held in the jail until his arraignment at approximately 10:42 a.m. on February 12, 2013.  At no time prior to his arraignment was he medically screened by a Corizon employee, nor was he assessed by any mental health professional employed by Corizon.*

16.    Mr. Green was arraigned in a courtroom inside the jail.  Before his arraignment, he had some verbal outbursts and was asked to quiet down.  During his arraignment, the arraignment judge told Mr. Green that he would have to remain in jail.  The judge decided to hold plaintiff in jail because he failed to appear at a previous criminal proceeding and because "[h]e looked like he might ultimately be somebody who would be eligible for mental health court."  Mr. Green began to talk to himself while the judge was telling him that he would have to remain in jail, and then ran headfirst from some distance (the actual distance is in dispute) into a concrete wall.*  Mr. Green collapsed on the floor, bleeding profusely from his head.  (This event will be referred to as "plaintiff's injury" throughout the remainder of this Pretrial Order.)

17.    Corizon medical staff was called to the courtroom.  Defendants White and Epperson, accompanied by Corizon employee Jona Bourgard, responded.

At no time was a physician present in the courtroom, nor was a physician summoned to or called from the courtroom.* Mr. Green was transferred by wheelchair from the courtroom to the Corizon Medical Office at approximately 10:55 a.m.  At approximately 11:35 a.m. Mr. Green was transferred by wheelchair from the Corizon Medical Office to a jail cell by Lane County Sheriff Officers.

18.    Mr. Green remained in his jail cell, unclothed, unmoving, and lying in his own feces from approximately 11:35 a.m. on February 12, 2013 until approximately 2:30 p.m. on February 12, 2013. No Corizon employee examined or spoke with Mr. Green between 11:35 a.m. and 2:30 p.m.* At approximately 2:30 p.m. he was seen in his jail cell by Jacob Pleich, a mental health therapist employed by Corizon.  Mr. Pleich put a blanket over Mr. Green.

19.    From the time Mr. Green was placed in a jail cell at approximately 11:35 a.m. on February 12, 2013, until approximately 3:30 p.m. on February 12, 2013, Lane County Sheriff's Officer ("LCSO") Donald Burnette was responsible for monitoring and supervising Mr. Green's incarceration. Burnette performed in-person observations on Green every 15 minutes per LCSO policy. Burnette notified Corizon staff at approximately 11:47 a.m. and 1:45 p.m. that Green had not moved his body since being moved to a segregation cell.*   At approximately 3:30 p.m. Burnette was relieved by

LCSO Dan Correll.  Burnette told Correll about Burnette's observations concerning Green's condition and Burnett's two calls to Corizon staff.*  At approximately 3:30 p.m. Correll checked on Mr. Green, who told Correll that he was not able to move and asked for a doctor. Following this discussion with Mr. Green, Correll immediately walked to the Corizon medical office and summoned members of the Corizon nursing staff to examine Mr. Green.

20.    Corizon nurses Leah Smith and Sharon Epperson responded and assessed Mr. Green.  They summoned Defendant White, who examined Mr. Green. During her examination of Mr. Green, White said to Mr. Green: "We hung out earlier.  I put some stitches in your head."  Shortly afterwards she said to Lane County deputies: "Yeah, he needs to go.  I was under the impression that he was being released within an hour or two of * * *.  He needs to go.  We were going to have you guys do a drop anyways."   White was then asked by a Lane County deputy: "Is it an urgent go right now type thing?"  White responded: "He's been laying there for a while." [* Corizon acknowledges the accuracy of the quoted material in this paragraph, but contends that other relevant conversation is not set forth.]

21.    At approximately 4:33 p.m. a Lane County Jail employee advised Eugene Fire and EMS that Mr. Green needed transportation to a hospital. Eugene Fire and EMS was not told that the situation was an emergency. Paramedics

arrived on the scene at approximately 4:49 p.m., and upon examining Mr. Green upgraded the call to an emergency level. Paramedics removed Mr. Green from the jail on a backboard and wearing a cervical collar at approximately 5:16 p.m.

22.     Mr. Green was transported to Sacred Heart Hospital and admitted at approximately 5:30 p.m., where he was diagnosed with a fractured neck, a spinal cord injury and resultant quadriplegia.  That evening he underwent nearly three hours of surgery.  Mr. Green survived the surgery as a ventilator dependent quadriplegic.  He remained a ventilator dependent quadriplegic until his death on December 16, 2013.

23.     No Corizon employee was disciplined or terminated as a result of the events of February 11th or 12th, 2013.*

24.     On or about May 2, 2013, Dr. Harold Orr, the Corizon Regional Medical Director responsible for the Lane County Jail, recommended that a "mandatory in-service [be] scheduled for all clinicians and clinical staff regarding the approach as well as the handling of the more common head and neck injuries i.e. including the indication and use of cervical collars and back boards."

25.     Prior to April 27, 2015, Corizon did not provide any training to Lane County employees regarding intake screening or suicide prevention.*  On April 27, 2015, Corizon required Lane County Corizon staff to review

printed material titled "Moving and Handling Patients with Actual or Suspected Spinal Cord Injuries," a "Position Statement" issued by the National Association of EMS Physicians Board of Directors, a document titled "Immobilizing a Supine Patient," and a Corizon document titled "Neurochecks Flowsheet."*

26.     Corizon has not provided any training to Lane County employees regarding intake screening or suicide prevention.

27.     Mr. Green incurred medical bills totaling $1,807,335.55 as a result of the injuries he suffered on February 12, 2013.  Said medical bills were reasonable for the services provided.  Said medical bills were necessarily incurred treating Mr. Green's injuries and their sequelae.

28.     Notice under the Oregon Tort Claims Act was provided to Corizon* and Lane County within the time prescribed by law.

29.     On or about October 18, 2013, Plaintiffs filed their Complaint alleging, among other things, that Defendant White was negligent in the care she provided to Mr. Green.  On December 20, 2013, Corizon and White filed an Answer to the Complaint denying the allegations that White was negligent.  On or about February 14, 2014, Plaintiffs filed an Amended Complaint again alleging, among other things, that Defendant White was negligent in the care she provided to Mr. Green.  On or about March 14, 2014, Corizon and White filed an Answer to the Amended Complaint again

denying the allegations that White was negligent.

30.    The following persons who were deposed in this case live and work more than 100 miles from Eugene, Oregon: Sharon Epperson, Vicki Thomas, Dr. Joseph Pastor, Dr. Carl Keldie, Stevens Hyppolite, Pablo Viteri, Diane Wood, Becky Pinney, Jeremy Legg, Dr. Ivor Garlick, Tonya Mooningham, Jeff Sholey, Dr. Harold Orr, Richard Hallworth, Tom Green, McKenzie Green and Sandra Pulver.

## IV.    CLAIMS AND DEFENSES

### FIRST CLAIM FOR RELIEF

### Plaintiffs' contentions: 42 USC § 1983 Wrongful Death/Survival Claim

1.    As a result of the policies, practices or customs of Corizon and Lane County, and as a result of the deliberate indifference of Defendants White, Epperson, Thomas, and Montoya, Mr. Green's rights, and the rights of his parents, under the Fourteenth Amendment of the United States Constitution were violated in numerous ways as enumerated below. This misconduct led to Mr. Green being rendered a ventilator dependent quadriplegic, aggravated the injuries that he suffered on February 12, 2013, and caused his death.

2.    Defendants Corizon and Lane County were the moving forces that resulted in the deprivation of Mr. Green's and his parents' Fourteenth Amendment rights as a result of the following policies, customs or practices of Corizon

and Lane County:

   a.  A policy, custom or practice of not providing medical or mental health screening to obviously mentally ill Lane County inmates at or near the time of booking in Lane County jail;

   b.  A policy, custom or practice of not using the on-call psychiatrist for consultation even when a new jail admittee is floridly psychotic;

   c.  A policy, custom or practice of not providing for trained physicians to examine seriously injured Lane County inmates;

   d.  A policy, custom or practice of denying Lane County inmates necessary medical care if said inmates are thought to be soon released from the jail;

   e.  A policy, custom or practice of discouraging transferring inmates to a hospital for medical care;

   f.  A policy, custom or practice of delaying transferring Lane County inmates to hospitals for necessary emergency medical care in order to first prepare paperwork to effectuate a jail discharge; and

   g.  A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical

services for injured inmates of the Lane County jail.

3.     The policies, customs or practices of defendants Corizon and Lane County posed a substantial risk of causing serious harm to Lane County inmates, and both Corizon and Lane County were aware of that risk.

4.     Defendants Corizon, Montoya and Thomas failed to adequately train Corizon and Lane County employees of the need to provide a prompt mental health examination of severely mentally ill persons when they are booked into the Lane County jail.  Defendants Montoya and Thomas were aware that the failure to train created a substantial risk of causing harm to Lane County inmates

5.     Defendant Corizon failed to adequately train Corizon and Lane County employees:

   a.  Of the need to obtain a medical examination by a trained physician to evaluate any seriously injured inmate;

   b.  Of the need to not move a patient with a possible closed head or spinal cord injury without providing neck and spinal cord protection;

   c.  Of the need to perform radiologic imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to jailors; and

   d.  Of the need to immediately summon emergency transport to

Page 13 – PRETRIAL ORDER

hospital facilities when a patient is in need of emergency care, and not to wait for jail authorities to first arrange for the patient's release from jail.

6.    After Mr. Green's injury, defendants White and Epperson were deliberately indifferent to Mr. Green's rights under the Fourteenth Amendment of the U.S. Constitution:

a.    In failing to provide an appropriate medical examination to Mr. Green following his injury at approximately 10:42 a.m. on February 12, 2013;

b.    In failing to provide spinal precautions to Mr. Green after his injury at approximately 10:42 a.m. on February 12, 2013;

c.    In failing to transport Mr. Green directly to a hospital from the courtroom on February 12, 2013;

d.    In aggravating his medical condition by authorizing the moving and careless manipulation of Mr. Green's body after he suffered a serious neck fracture;

e.    In aggravating his medical condition by moving and carelessly manipulating Mr. Green's body after he suffered a serious neck fracture;

f.    In aggravating his medical condition by ignoring his medical plight for almost six hours; and

    g. In allowing and causing him to lie naked, not moving and in his own feces on a jail bed from approximately 11:30 a.m. until approximately 4:00 p.m.

7.     Additionally, defendant White was deliberately indifferent to Mr. Green's rights under the Fourteenth Amendment of the U.S. Constitution in that:

    a. She did not take the necessary steps to have Mr. Green immediately taken by ambulance to a hospital after examining him at approximately 3:40 p.m. on February 12, 2013; and

    b. She abandoned Mr. Green at approximately 3:57 p.m. when she left the jail knowing that he had suffered a significant neurological injury, knowing that his blood pressure and pulse were critically low, knowing that he was in neurogenic shock, and knowing that no other physician's assistant or medical doctor was in the jail to provide necessary emergency medical care.

8.     Additionally, defendant Thomas was deliberately indifferent to Mr. Green's rights under the Fourteenth Amendment of the U.S. Constitution in that:

    a. She did not take the necessary steps to have Mr. Green immediately taken by ambulance to a hospital after concluding at approximately 11:00 a.m. on February 12,

2013, that Mr. Green needed to be immediately transferred to a hospital by ambulance;

b.  She participated in moving and cleaning Mr. Green between approximately 4:16 p.m. and 4:30 p.m. on February 12, 2013, while Mr. Green was paralyzed and in spinal shock; and

c.  She did not take any steps to ensure that an ambulance was immediately called at any time between 4:16 p.m. and 4:30 p.m. on February 12, 2013.

9.  Defendants Montoya and Thomas, in their supervisory capacities, were aware of the policies, customs or practices as alleged in paragraph 2(a)-(b), above, and were aware that said policies, customs or practices created a substantial risk of causing substantial harm to Lane County inmates by endangering their physical safety and their medical and mental health needs.  Despite their knowledge, said supervisors allowed, approved of and ratified said policies, customs or practices.

10.  As a direct result of the policies, customs or practices of Corizon and Lane County, Mr. Green was not examined by a mental health professional at any time prior to his arraignment, and was not provided timely mental health or medical care.  If Mr. Green had been screened by medical and/or mental health professionals prior to his arraignment, he would have been afforded precautions and treatment that would have prevented his injuries.

Also as a direct result of the policies, customs or practices of Corizon and Lane County, and as a direct result of the conduct of defendants White, Epperson, and Thomas, Mr. Green did not receive prompt and necessary medical care after injuring himself.  As a result, Mr. Green endured and suffered severe physical and emotional distress, his medical condition was exacerbated and he was rendered quadriplegic.  Mr. Green endured over ten months of severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  As a result of Mr. Green's death, Mr. Green's parents have been denied their substantive due process rights to their son's society and companionship.   Mr. Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

11.    As a direct result of the misconduct of defendants, Mr. Green incurred reasonable and necessary medical expenses in the sum of $1,807,335.55.

12.     The actions of defendants Corizon, Thomas, White, Epperson and Montoya were recklessly indifferent to Mr. Green's and his parents' civil rights and callously disregarded Mr. Green's physical safety.  Punitive damages should be awarded in the sum of $73,000,000.

13.    Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## DEFENSES

## Corizon Defendants' Defenses

**GENERAL DENIAL**

1. The Corizon Defendants deny the factual and legal basis for all of Plaintiffs' claims against them under 42 U.S.C. § 1983. None of the Corizon Defendants acted with the requisite "deliberately indifferent" state of mind. Nor were any of them, or any of their actions, the moving force behind Plaintiffs' alleged injuries.

**FIRST AFFIRMATIVE DEFENSE: (Failure to State a Claim)**

2. Plaintiffs' claims do not amount to "deliberate indifference" under the statute, 42 U.S.C. § 1983. Corizon does not have the policies identified by Plaintiffs, either as to the alleged conduct occurring before Mr. Green injured himself in the courtroom on February 12, 2013 or as to the alleged conduct occurring after Mr. Green injured himself in the courtroom on February 12, 2013. Nor could such policies, even if they existed, have been the moving force behind Plaintiffs' injuries.

3. As to Plaintiffs' claims regarding those policies and actions relating to conduct prior to Mr. Green's injuries (i.e., the Pre-Injury Conduct), Corizon's policies were constitutionally sufficient. Moreover, Corizon's policies could not have been the moving force behind Mr. Green's injuries, as his injuries were unpredictable and a result of his own behavior.

4. As to Plaintiff's claims that the Corizon defendants were deliberately indifferent to Mr. Green following his injuries, even if Defendant White failed to meet the

standard of care in her assessment of Mr. Green in the courtroom, at no point did she or any other Corizon defendant act with deliberate indifference towards Mr. Green. On the contrary, they all acted with concern that Mr. Green's immediate injuries be treated properly and that Mr. Green be taken to the hospital shortly thereafter.

5. The Corizon Defendants also contend that paragraph 9 in Plaintiffs' claim above does not set forth a separate theory of liability under 42 U.S.C. § 1983 under the facts of this case and should therefore be stricken.

**SECOND AFFIRMATIVE DEFENSE: (Contributory / Comparative Negligence)**

6. Mr. Green's quadriplegia (which eventually lead to his death), or the process which irredeemably triggered the quadriplegia, was complete as of the moment of Mr. Green's impact with the courtroom wall. Running his head into the wall was a voluntary act by Mr. Green and did not implicate any Corizon defendant.

**THIRD AFFIRMATIVE DEFENSE: (Lack of Causation)**

7. The actions of the Corizon defendants were not the direct or proximate cause of Mr. Green's injuries or subsequent death. Mr. Green caused his own injuries, which in turn were the legal cause of his death.

**FOURTH AFFIRMATIVE DEFENSE: (Acts of Others)**

8. To the extent Mr. Green's injuries were caused or exacerbated on February 12, 2013 by something other than his own actions, the actions of Lane County and its employees were comparatively negligent and were the direct and proximate cause

of those injuries or exacerbation.

**FIFTH AFFIRMATIVE DEFENSE:  (No Punitive Damages)**

9.  The Corizon Defendants did not act with the requisite state of mind, nor are they sufficiently culpable, to warrant punitive damages.

## Lane County Defenses

1.  Lane County acted reasonably by contracting its medical and mental health care duties for Lane County inmates to Corizon after completing a competitive bid process.

2.  Lane County's policy and practice was to provide intake screening for identification of severe mental health conditions facing inmates, including Kelly Green, which were consistent with state-wide practices.

3.  Lane County provided Corizon staff the tools necessary to know when a person was waiting to be housed so that Corizon could provide medical and psychological assessments.

4.  Lane County policy and practice of following explicit instructions of a physician's assistant is reasonable.

5.   Lane County's policy and practice to inform medical staff of concerning medical conditions is reasonable.

## SECOND CLAIM FOR RELIEF

### Plaintiffs' contentions: Gross Negligence/Reckless Misconduct –

### Wrongful Death/Survival

1.  Defendant Corizon, by and through its employees and agents, was grossly

negligent and acted with reckless misconduct in one or more of the following particulars:

    a. In failing to provide Mr. Green with a mental health assessment upon booking into Lane County jail on February 11, 2013;

    b. In failing to provide a mental health assessment to Mr. Green at any time prior to his arraignment;

    c. In failing to provide an appropriate medical examination to Mr. Green following his injury at approximately 10:42 a.m. on February 12, 2013;

    d. In failing to provide spinal precautions to Mr. Green after his injury at approximately 10:42 a.m. on February 12, 2013;

    e. In failing to transport Mr. Green directly to a hospital from the courtroom on February 12, 2013;

    f. In failing to have a cervical collar or backboard available for use in the Lane County jail on February 12, 2013;

    g. In aggravating his medical condition by authorizing the moving, dragging and careless manipulation of Mr. Green's body after he suffered a serious neck fracture;

    h. In aggravating his medical condition by moving, dragging and carelessly manipulating Mr. Green's body after he

suffered a serious neck fracture;

i.  In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time he was transported to Sacred Heart Hospital;

j.  In failing to determine that Mr. Green suffered a serious spinal injury at any time prior to 4:00 p.m. on February 12, 2013;

k.  In failing to call for emergency assistance prior to 4:33 p.m. on February 12, 2013;

l.  In ignoring Mr. Green's medical plight for almost five hours, even though Corizon was aware that he was not moving in his jail cell;

m.  In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as he was breathing;

n.  In ignoring Mr. Green's need for medical attention because Corizon employees believed that he was soon to be released from the Lane County jail;

o.  In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 2 of the First Claim for Relief, above;

p.  In failing to adequately train Corizon and Lane County employees of the need to provide a prompt mental health examination of persons exhibiting symptoms of severe mental illness when they are booked into the Lane County jail;

q.  In failing to train Lane County Booking Officer Nelson of the need to seek mental health screening of inmates exhibiting severe mental health symptoms at the time of admission into the Lane County jail;

r.  In failing to adequately train Corizon and Lane County employees to provide neck and spine precautions to Lane County inmates who suffer neck and spine injuries; and

s.  In failing to train Corizon staff of the need to perform radiological imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to staff.

2.  As a direct result of the misconduct of defendant Corizon, Mr. Green endured and suffered severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Mr. Green's parents have been denied his love, society and companionship.  Mr. Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

3.  As a direct result of the misconduct of defendant Corizon, Mr. Green incurred

reasonable and necessary medical expenses in the sum of $1,807,335.55.

4. The actions of defendant Corizon were grossly negligent, were recklessly indifferent to Mr. Green's civil rights, and callously disregarded his physical well-being and safety. Punitive damages should be awarded in the sum of $73,000,000.

5. If the jury concludes that Corizon caused injury to Mr. Green, but did not cause his death, then plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## DEFENSES

## Corizon Defendants' Defenses

### GENERAL DENIAL

1. The Corizon Defendants deny the factual and legal basis for all of Plaintiffs' gross negligence claims. The Corizon Defendants deny that any of them engaged in reckless or grossly negligent misconduct. Nor was any of them, or any of their actions, the cause of any of Plaintiffs' alleged injuries.

### AFFIRMATIVE DEFENSES

1. Corizon defendants assert the same defenses to the gross negligence claims that they do to the 42 U.S.C. § 1983 claims.

2. Corizon defendants also incorporate Lane County's defenses to the "Negligence" claim, outlined below.

## THIRD CLAIM FOR RELIEF

## Plaintiffs' contentions: Negligence –

## Wrongful Death/Survival

1. The actions of defendants Corizon and Lane County, acting by and through their employees and agents, were negligent in one or more of the following particulars:

   a. In failing to provide Mr. Green with a mental health assessment upon booking into Lane County jail on February 11, 2013;

   b. In failing to provide a mental health assessment to Mr. Green at any time prior to his arraignment;

   c. In failing to provide an appropriate medical examination to Mr. Green following his injury at approximately 10:42 a.m. on February 12, 2013;

   d. In failing to provide neck precautions to Mr. Green immediately after his injury at approximately 10:42 a.m. on February 12, 2013;

   e. In failing to transport Mr. Green directly to a hospital from the courtroom on February 12, 2013;

   f. In failing to have a cervical collar or backboard available for use in the Lane County jail on February 12, 2013;

   g. In aggravating his medical condition by moving and carelessly manipulating Mr. Green's body after he suffered a serious neck fracture;

   h. In failing to provide Mr. Green a neurologic exam at any time between 10:42 a.m. on February 12, 2013, and the time he was

transported to Sacred Heart Hospital;

i. In failing to determine that Mr. Green suffered a serious neck injury at any time prior to 4:00 p.m. on February 12, 2013;

j. In failing to call for emergency assistance prior to 4:33 p.m. on February 12, 2013;

k. In ignoring Mr. Green's medical plight for almost five hours, even though said defendants were aware that Mr. Green was not moving in his jail cell;

l. In allowing, approving and ratifying the policies, customs or practices as alleged in paragraph 2 of the First Claim for Relief;

m. In failing to adequately train Corizon and Lane County employees of the need to provide a prompt mental health examination of persons exhibiting symptoms of severe mental illness when they are booked into the Lane County jail; and

n. In failing to train Lane County Booking Officer Nelson of the need to seek mental health screening of inmates exhibiting severe mental health symptoms at the time of admission into the Lane County jail.

2. The actions of defendant Corizon were negligent in one or more of the following particulars:

a. In aggravating his medical condition by authorizing the moving

and careless manipulation of Mr. Green's body after he suffered a serious neck fracture;

b.  In advising Lane County corrections officer Burnette that Mr. Green did not need medical attention as long as he was breathing;

c.  In ignoring Mr. Green's need for medical attention because Corizon employees believed that he was soon to be released from the Lane County jail;

d.  In failing to adequately train Corizon and Lane County employees to provide neck and spine precautions to Lane County inmates who suffer neck and spine injuries; and

e.  In failing to train Corizon staff of the need to perform radiological imaging of patients with possible closed head and/or spinal cord injuries before clearing such patients for release to jailors.

3.  As a direct result of the negligence of defendants, and each of them, Mr. Green endured severe physical and mental distress, and died as a result of medical complications arising from his quadriplegia.  Mr. Green's parents have been denied his love society and companionship.  Mr. Green's estate and his parents are entitled to compensatory damages in the sum of $10,000,000.

4.  As a direct result of the negligence of defendant Corizon, Mr. Green incurred reasonable and necessary medical expenses in the sum of $1,807,335.55.

5. If the jury concludes that Corizon and/or Lane County caused injury to Mr. Green, but did not cause his death, then plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## DEFENSES

### Corizon Defendants' Defenses

**GENERAL DENIAL**

1. The Corizon Defendants deny the factual and legal basis for all of Plaintiffs' negligence claims, except that they admit that defendant Kirstin White breached the standard of care for physician's assistants in failing to properly diagnose that Mr. Green had a cervical spine injury and in failing to treat his injuries as such. The Corizon Defendants deny that any of their actions were the cause of Plaintiffs' alleged injuries.

**AFFIRMATIVE DEFENSES**

1. Corizon defendants assert the same defenses to the negligence claims that they do to the 42 U.S.C. § 1983 claims, except that they admit that defendant Kirstin White breached the standard of care for physician's assistants in failing to properly diagnose that Mr. Green had a cervical spine injury and in failing to treat his injuries as such.

2. Corizon defendants also incorporate Lane County's defenses outlined below.

### Lane County Defenses

1. Kelly Green knew or should have known that discontinuing medications for his mental health conditions would result in increased suicidal ideations.

Nevertheless he was not taking his medications prior to the present incident.

2.  Kelly Green knew or should have known that resuming medications would not result in meaningful improvement in his behavior until one or two week's continuous use.

3.  Kelly Green's parents knew that Kelly Green had been charged with assaultive crimes months prior to this incident and that he was un-medicated during that period as well.

4.  Kelly Green's parents failed to warn Defendants of Kelly Green's specific threats of self-harm.

5.  Kelly Green knew of the risks of running headfirst into a wall.  He appreciated the risks and intended the likely result that he would break his neck by doing so.  If a criminal defendant killed someone while under the same conditions, that criminal defendant would not be entitled to a mental defense.

6.  Kelly Green's injury would not have been prevented even if he was evaluated by a mental health specialist.  Kelly Green's injury could not have been anticipated without specific information held only by Kelly Green and his parents.

## LANE COUNTY'S CROSS CLAIM

### Lane County's Claim for Indemnity and Contribution

1.  In the spring of 2012, Lane County contracted with Corizon Health, LLC for medical mental health and dental services for Lane County inmates.

2.  In exchange for a flat fee, Corizon assumed all responsibility to "deliver quality

medical services" to jail inmates, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations."

3. Corizon agreed to pay for all inmate medical services that cannot be performed in the jail, including all ambulance and hospital charges. Corizon agreed to review Lane County policies and procedures, and to make recommendations to jail administration.

4. Corizon accepted "responsibility for making emergency arrangements for ambulance service" when outside medical treatment is required.

5. The Corizon-Lane County contract required Corizon staff to "train Contractor's staff on the identification and treatment of inmates who are at risk for suicidal or homicidal acts, and must provide annual training to Jail staff on suicide prevention."

6. The Corizon-Lane County contract required Corizon staff to "perform mental health services to the inmate population including: upon intake into the Jail system, evaluation, identification and treatment of inmates with mental health problems."

7. Prior to February 2013, Lane County provided Corizon staff access to the BAT system, which is a computer system that lists all inmates at the Jail who have not been assigned a housing unit yet, and organizes the inmates' names in the order in which they were received upon intake into the Jail system. From this, Corizon staff knew or should have known when a new inmate was booked into the jail,

regardless of whether they received a courtesy telephone call from Lane County staff regarding a new inmate.

8. The Corizon-Lane County contract required Corizon staff to "identify the need, schedule, coordinate and pay for all non-emergency and emergency medical health care rendered to inmates inside or outside the Jail." Corizon was also required to "identify the need, schedule, coordinate and pay for any inpatient hospitalization." This also includes responsibility for making "emergency arrangements for ambulance services to the inpatient facility and reimbursement to the local ambulance organization for the services provided."

9. The Corizon-Lane County contract required Corizon staff to purchase equipment not already owned by Lane County. At the time that the contract was executed, Lane County did not own a backboard. Lane County provided Corizon staff an inventory of equipment that it owned.  A backboard was not on that list. Lane County also provided Corizon staff a tour of the facility prior to February 2013, which included a visual inventory of Lane County-owned equipment.

10. Corizon agreed to "indemnify and hold County, and its officers, agents and employees, harmless from and against all claims, actions, liabilities and other costs of defense, arising out of or in any way related to the Services rendered by Contractor or Contractor's employees."

11. Defendant Corizon is required and obligated to defend, indemnify and reimburse Defendant Lane County for all claims, damages, fees and payments that Defendant

Page 31 – PRETRIAL ORDER

Lane County may be required to make under the Second Amended Complaint. In the event any judgment is rendered in favor of Plaintiff and against Defendant Lane County, Defendant Lane County is entitled to judgment over and against Co-Defendant Corizon or contribution in equal or appropriate sums.

## Corizon's Defenses

**GENERAL DENIAL**

1. The Corizon Defendants deny the factual and legal basis for all of Lane County's indemnity and contribution claims.

   **FIRST AFFIRMATIVE DEFENSE**: (Failure to State a Claim)

2. Defendant Lane County's claims, or some of them, fail to state a claim upon which relief may be granted.

   **SECOND AFFIRMATIVE DEFENSE**: (Modification of the Contract between Lane County and Corizon)

3. To the extent that the contract between Lane County and Corizon obligates Corizon to perform according to Lane County's allegations, that contract was modified both orally and through the parties' course of dealing.

   **THIRD AFFIRMATIVE DEFENSE**: (Contribution)

4. Lane County's own conduct was a substantial contributing factor in causing any injury alleged by Plaintiff.

   **FOURTH AFFIRMATIVE DEFENSE: (Waiver)**

5. Lane County, through the express and implicit representations of its employees, waived those portions of the contract between itself and Corizon defendants that

Lane County claims supports its cross claims.

**FIFTH AFFIRMATIVE DEFENSE**: (Estoppel)

6. Lane County, because of the express and implicit representations of its employees, is now estopped from relying on those provisions of the contract between it and the Corizon defendants that Lane County claims supports its cross claims.

## V.    OTHER LEGAL ISSUES

### Plaintiffs' Legal Issues

1.   All of plaintiffs' claims set forth above can and should be brought solely in the name of Derek Johnson, the Personal Representative of Mr. Green's Estate.

2. Defendants' claims that Mr. Green's parents are guilty of comparative fault are not allowable affirmative defenses under either Oregon or 42 U.S.C. § 1983 law.

3. Defendants' claim that Mr. Green is guilty of comparative fault is not an allowable defense under either Oregon or 42 U.S.C. § 1983 law.

### Corizon Defendants' Legal Issues

1. If Plaintiff Derek Johnson, personal representative of Kelly Conrad Green II, prevails on his Wrongful Death action, his combined recovery is capped at $500,000 for all defendants.

2. Although Plaintiffs may advance alternative theories of negligence/gross negligence and 42 U.S.C. § 1983, Plaintiffs may not be awarded a judgment on both – as the two claims require proof of different elements that are necessarily mutually exclusive of each other.

**Page 33 – PRETRIAL ORDER**

3. Corizon seeks clarification from the Court as to whether it dismissed in its order of 4/6/2015, Corizon, as an entity, from Plaintiffs' Supervisory Claims, (paragraphs 4 and 5 under Plaintiffs' First Claim for Relief).

## Lane County's Legal Issues

1. If Plaintiff Derek Johnson, personal representative of Kelly Conrad Green II, prevails on his Wrongful Death action, his combined recovery is capped at $600,000 for all defendants.

2. Corizon may not introduce evidence or argument concerning City of Eugene's theoretical liability.

## VI.    PROPOSED AMENDMENTS TO THE PLEADINGS

### Plaintiffs' Proposed Amendments

1. Plaintiffs move to amend the complaint by increasing the prayer for punitive damages to $73,000,000.  This proposed amendment is based on information learned during discovery.

### Corizon Defendants' Proposed Amendments

1. Defendants move to amend their answer by eliminating their affirmative defense of qualified immunity.

2. Defendants further move to amend their answer by adding the third, fourth, and fifth affirmative defenses to Plaintiffs' claims outlined above.

### Lane County's Proposed Amendments

**None.**

**Page 34 – PRETRIAL ORDER**

Dated this 18th day of May, 2015

ROSENTHAL GREENE & DEVLIN, P.C.    STEWART SOKOL & LARKIN, LLC


/s/ Elden M. Rosenthal
Elden M. Rosenthal OSB # 722174
John T. Devlin OSB # 042690
Michal A. Greene OSB # 802445

Attorneys for Plaintiffs

/s/ James M. Daigle
James M. Daigle OSB # 942843
Adam S. Heder OSB # 151144
Richard Hansen OSB #832231
Anne Talcott OSB #965325

Attorneys for Defendants Corizon Health,
Inc., Justin Montoya, M.D., Vicki Thomas,
Kirstin White and Sharon Epperson

LANE COUNTY OFFICE OF LEGAL
COUNSEL


/s/ Sebastian Tapia
Sebastian Tapia, OSB#043761
Steve Dingle, OSB# 842077

Attorneys for Defendant Lane County

# CERTIFICATE OF SERVICE

I hereby certify that I served true and correct copies of the foregoing:

**1. PRE-TRIAL ORDER**

on the following:

| | |
|---|---|
| James Daigle | Richard K. Hansen |
| Adam Heder | Anne M. Talcott |
| *Stewart Sokol & Larkin LLC* | *Schwabe, Williamson & Wyatt, P.C.* |
| 2300 SW First Ave., Suite 200 | 1211 SW 5th Ave., Suite 1900 |
| Portland, OR 97201 | Portland, OR 97204 |
| jmdaigle@lawssl.com | rhansen@schwabe.com |
| aheder@lawssl.com | atalcott@schwabe.com |

|  Of Attorneys for Corizon defendants. | Of Attorneys for Corizon defendants. |
|---|---|
| Robert L. Goldstucker | Sebastian Tapia |
| *Nall & Miller, LLP* | Stephen Dingle |
| 235 Peachtree St., NE | *Lane County Counsel* |
| Suite 1500 – North Tower | 125 East 8th Avenue |
| Atlanta, GA 30303-1418 | Eugene, OR  97401 |
| bgoldstucker@nallmiller.com | Sebastian.tapia@co.lane.or.us |
| | Stephen.dingle@co.lane.or.us |

|  Of Attorneys for Corizon defendants. | Of Attorneys for Lane Co. defendant. |
|---|---|

by the following method/s:

| | |
|---|---|
| _____ | mail with postage prepaid, deposited in the US mail at Portland, OR |
| \_\_\_X\_\_ | service made via electronic mailing and/or CM/ECF filing |
| _____ | hand delivery |
| _____ | facsimile transmission |
| _____ | overnight delivery. |

Dated this 18th day of May, 2015.

/s/ Elden M. Rosenthal
ELDEN M. ROSENTHAL, OSB No. 722174
MICHAEL A. GREENE, OSB No. 802445
JOHN T. DEVLIN, OSB No. 042690
*Of Attorneys for Plaintiff*