**Richard K. Hansen**, OSB #832231
Email: rhansen@schwabe.com
**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: (503) 222-9981
Facsimile: (503) 796-2900

**James M. Daigle**, OSB #942843
Email:  jmdaigle@lawssl.com
**Adam S. Heder**, OSB #151144
Email:  aheder@lawssl.com
STEWART SOKOL & LARKIN LLC
2300 SW First Ave., Suite 200
Portland, OR  97201-0699
Telephone:  (503) 221-0699
Facsimile:  (503) 223-5706

Attorneys for Corizon Health, Inc. Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DEREK JOHNSON, personal representative of KELLY CONRAD GREEN II, deceased; KELLY CONRAD GREEN and SANDY PULVER,<br><br>Plaintiffs,<br><br>vs.<br><br>CORIZON HEALTH, INC., a Tennessee corporation; LANE COUNTY, an Oregon county; DR. JUSTIN MONTOYA, an individual; VICKI THOMAS, an individual; KIRSTIN WHITE, an individual; and SHARON EPPERSON (née FAGAN), an individual,<br><br>Defendants. | Case No. 6:13-cv-01855-TC<br><br><br><br>**CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS** |

CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\128493\202445\JCA\15913333.1

# TABLE OF CONTENTS

**Page**

I.  Motion *in limine* 1: To preclude testimony or expert opinion on topics that Plaintiffs' experts are not qualified to offer. ................................................................. 1

    A.  Dr. Amanda Ruiz is not qualified to offer testimony beyond the psychiatric care and pre-injury screening conduct of Defendants. ........................ 1

    B.  Steven F. Kinder, RN, is not qualified to offer testimony regarding any alleged "cognitive bias" of any individual. ................................................. 3

    C.  Gayle F. Burrow, RN, is not qualified to offer testimony regarding the standard of care for a PA, alleged inadequacy of care, symptoms and diagnoses of spinal cord injuries and the alleged exacerbation of Green's injury. ......................................................................................................... 4

II.  Motion *in limine* 2: To preclude testimony or expert opinion of Plaintiffs' experts that constitute legal conclusions. ........................................................................ 7

    A.  David W. Keene's opinion that the staff was "indifferent" to Green is an improper legal conclusion. ............................................................................ 8

    B.  Steven F. Kinder's opinions regarding "wanton disregard" and "deliberate indifference" are improper legal conclusions. ............................................... 8

    C.  Dr. Amanda Ruiz's opinion regarding "deliberate indifference" is an improper legal conclusion. ............................................................................ 9

    D.  Gayle F. Burrow's opinions regarding rights of detained individuals and standard of quality health care are improper legal conclusions. ...................... 9

III.  Motion *in limine* 3: To preclude testimony or expert opinion of Plaintiffs' experts that does not meet the standard of certainty for medical opinion testimony. .................. 10

    A.  Dr. Amanda Ruiz's opinions regarding causation are speculative. ...................... 11

    B.  Dr. Jennifer James's opinion regarding Green's potential recovery is speculative. ................................................................................................... 12

IV.  Motion *in limine* 4: To preclude and exclude cumulative testimony of Plaintiffs' experts. ................................................................................................................ 13

V.  Motion *in limine* 5: To preclude testimony or expert opinion on the state of mind of Corizon. ............................................................................................................ 14

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AstraZeneca LP v. TAP Pharm. Prods.*,
    444 F. Supp. 2d 278 (D. Del. 2006).................................................................3, 14

*Berry v. City of Detroit*,
    25 F.3d 1342 (6th Cir. 1994) .................................................................................7

*Carroll v. Otis Elevator Co.*,
    896 F.2d 210 (7th Cir. 1990) ................................................................................1

*Cleveland v. United States*,
    457 F.3d 397 (5th Cir. 2006) ................................................................................7

*Crawford v. Seufert*,
    236 Or 369 (1964)................................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................................1, 2

*Deutsch v. Novartis Pharms. Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y. 2011) ............................................................3, 14

*Earp v. County of Tulare*,
    2012 U.S. Dist. LEXIS 44176 (E.D. Cal. 2012).................................................5

*Elswick v. Nichols*,
    144 F. Supp. 2d 758 (E.D. Ky. 2001) ..................................................................5

*Gayton v. McCoy*,
    593 F.3d 610 (7th Cir. 2010) ................................................................................2

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)...............................................................................................1

*Good Shepherd Manor Foundation v. City of Momence*,
    323 F.3d 557 (7th Cir. 2003) ................................................................................7

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ................................................................................7

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992).................................................................................7

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*In re Rezulin Prods. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................14

*Long v. Methodist Hosp. of Indiana, Inc.*,
 699 N.E.2d 1164 (Ind. App. 1998) ...................................................................5

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ...................................................................1

*Marx & Co. v. Diners' Club, Inc.*,
 550 F.2d 505 (2d Cir. 1977) ...................................................................8

*McEwen v. Ortho Pharm. Corp.*,
 270 Or 375, 528 P.2d 522 (1974) ...................................................................10

*Salem v. United States Lines Co.*,
 370 U.S. 31 (1962) ...................................................................4

*Sims v. Dixon*,
 224 Or 45, 355 P.2d 478 (1960) ...................................................................10, 11, 12

*United States v. Duncan*,
 42 F.3d 97 (2d Cir. 1994) ...................................................................7

## OTHER AUTHORITIES

Fed. R. Evid. 403 ...................................................................13

Fed. R. Evid. 404 ...................................................................4

Fed. R. Evid. 702 ...................................................................1, 2, 3, 4

CORIZON DEFENDANTS' OMNIBUS MOTIONS IN
LIMINE REGARDING INADMISSIBLE EXPERT
OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

In accordance with this Court's Civil Case Assignment Order dated October 18, 2013, Defendants Corizon Health, Inc., Dr. Justin Montoya, Vicki Thomas, Kirstin White and Sharon Epperson (hereinafter collectively referred to as "Corizon") file this omnibus motion *in limine* excluding Plaintiffs' experts from offering inadmissible opinions as outlined below.

## I.    Motion *in limine* 1: To preclude testimony or expert opinion on topics that Plaintiffs' experts are not qualified to offer.

Under Fed. R. Evid. 702 and the United State Supreme Court's trilogy on the admissibility of expert testimony–*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)–trial courts must act as gatekeepers to exclude unreliable expert testimony.  *Kumho*, 526 U.S. at 141.  Where (1) the expert testifies outside his qualifications, Fed. R. Evid. 702, (2) there is simply too great an analytical gap between the data and the opinion proffered (foundation), *Joiner*, 522 U.S. at 146, or (3) the reasoning or methodology underlying the testimony is not scientifically valid (reliability), *Kumho*, 526 U.S. at 153, the trial court must exclude the opinion. Here, certain opinion and testimony of Plaintiffs' experts must be excluded because the experts are offering opinions outside of their qualifications.  To qualify as an expert, a witness must have the knowledge, skill, experience, training, or education necessary to help the trier of fact understand the evidence or determine a fact in issue.  Fed. R. Evid. 702.  Whether a proffered expert is "qualified . . . can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."  *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990).

### A.    Dr. Amanda Ruiz is not qualified to offer testimony beyond the psychiatric care and pre-injury screening conduct of Defendants.

Dr. Ruiz's report in this case offers inadmissible opinions on the inadequacy of the post-injury medical care offered to Green, including the signs and symptoms of neurologic injury, neurologic causation, aggravation of Green's injuries and the standard of care of a physician's assistant (PA).  Dr. Ruiz should be precluded from offering testimony on those subjects under

Page 1 -    CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\128493\202445\JCA\15913333.1

Fed. R. Evid. 702 because she is not qualified to do so. "[S]imply because a doctor has a medical degree does not make [her] qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citing *Carroll*, 896 F.2d at 212); *see also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993) ("The fact that a proposed witness may be an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas."). The court, in acting as gatekeeper, must not simply answer the question of whether an expert is generally qualified, but whether the expert's "qualifications provide a foundation for [the expert] to answer a specific question." *Gayton*, 593 F.3d at 617 (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

Dr. Ruiz has a medical degree, but that alone does not qualify her to render opinions on such things as the inadequacy of the medical care rendered to Green, including:

- Her opinion that had Green received timely care, his "neurological outcome" would be improved;

- The neurologic significance of Green's symptoms, including loss of bowel or bladder function; or

- Her opinion regarding what Kirstin White and the Corizon staff should have allegedly done following Green's self-inflicted injury.

(Ruiz Rpt., pp., 5-7)[1]

Dr. Ruiz is not a neurosurgeon, an emergency medicine physician, or a physician's assistant. Dr. Ruiz is a psychiatrist. Her curriculum vitae demonstrates that her residency, fellowship and employment positions have all been in the field of psychiatry. She appears to have no practical experience in physical medicine other than what would have been required generally to obtain her medical degree, which was completed in 1997–almost 20 years ago. Accordingly, Dr. Ruiz's opinion testimony in this case should be limited to psychiatric care and

---

[1] Exhibit 1 to the Declaration of Anne M. Talcott ("Talcott Decl."), filed concurrently with these Motions.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

pre-injury screening conduct of the Defendants.  Any testimony regarding inadequate medical care, Green's neurological outcome, the aggravation of Green's injuries or the PA standard of care should be excluded under Fed. R. Evid. 702.

> **B.    Steven F. Kinder, RN, is not qualified to offer testimony regarding any alleged "cognitive bias" of any individual.**

Mr. Kinder's expert report provides that he is "compelled" to offer that his review of the materials provided to him by Plaintiffs' counsel "strongly suggests a case of 'cognitive bias' by the clinical staff engaged in Green's care." (Kinder Rpt., p. 6).[2]  Kinder then goes on to discuss the "significant research" documenting this phenomenon and offers his ultimate conclusion that if Green had been viewed as a valued member of the local community, his diagnosis may well have taken a different course.  Mr. Kinder is not qualified by knowledge, skill, experience, training or education to offer an opinion that the Defendants were cognitively biased towards Green.  He is a registered nurse, not a psychologist or an expert in human behavior.  His curriculum vitae demonstrates no practical experience or training in those fields.

Not only is Mr. Kinder not qualified to offer testimony regarding this alleged cognitive bias, it is impermissible evidence as to the Defendants' state of mind.  Expert witnesses are not "permitted to testify … regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred."  *AstraZeneca LP v. TAP Pharm. Prods*., 444 F. Supp. 2d 278 (D. Del. 2006); *see also Deutsch v. Novartis Pharms. Corp*., 768 F. Supp. 2d 420 (E.D.N.Y. 2011).  Statements that the clinical staff "perceived" Green in a certain way such that it affected their treatment of him are a direct attempt by Mr. Kinder to offer opinion testimony on the state of mind of the clinical staff and should be excluded.

Finally, Mr. Kinder's opinion in this regard should be excluded because it is not helpful to the jury.  Under Fed. R. Evid. 702, the testimony of an expert must assist the trier of fact in understanding the evidence or determining a factual issue.  Therefore, expert testimony is

---

[2] Exhibit 2 to Talcott Decl.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

properly excluded "if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect to the subject under investigation . . . ." *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962). Members of the jury are fully capable of hearing the evidence regarding the care and treatment of Green and deciding if the events of February 12, 2013, were influenced by any bias towards Green. Mr. Kinder has never interviewed any of the individuals whom he suggests demonstrated a cognitive bias towards Green; rather, his opinion is based on his review of "extensive summary documentation and deposition materials" provided to him by Plaintiffs' counsel. Mr. Kinder's impression of witness testimony from a paper review is not helpful to the jury. The jury will hear from these witnesses in person and can then assess the testimony provided. [3]

> **C.    Gayle F. Burrow, RN, is not qualified to offer testimony regarding the standard of care for a PA, alleged inadequacy of care, symptoms and diagnoses of spinal cord injuries and the alleged exacerbation of Green's injury.**

Ms. Burrow is an RN with experience in correctional health care; however, throughout her report, she offers opinions as to the standard of care for PAs, the inadequacy of the medical care provided to Green, symptoms and diagnoses of spinal cord injuries, the exacerbation of Green's spinal cord injury and diagnosis malingering. Ms. Burrow is not qualified under Fed. R. Evid. 702 to offer testimony on any of those topics.

//

---

[3] Corizon also highlights for the Court that Mr. Kinder's report includes a section entitled "Corizon litigation" in which he summarizes his understanding of the number of lawsuits filed against Corizon "or its predecessors" in the five years prior to June 5, 2013, the estimated dollar figure of uninsured professional liability claims and the estimated dollar figure of anticipated settlements. (Kinder Rpt. p. 9). This testimony/opinion is inadmissible under Fed. R. Evid. 404 and should be excluded pursuant to Corizon's motion *in limine* to exclude evidence of other litigation.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

1.    *Ms. Burrow is not qualified to offer opinions about Green's neurological injuries or aggravation of the same.*

Ms. Burrow offers the following opinions on this topic:

i.    "KG stated he was paralyzed and could not hear.  This means he was not feeling his extremities and his body could have had some reflex motions as his neurological status declined.  It also suggests that his head injury was causing his hearing to be impaired."  (Burrow Rpt., p. 6.)[4]

ii.    "Further paralysis may have occurred during the transport and move onto his bed." (Burrow Rpt., p. 7.)

iii.    "Also it is very significant when a head/neck injured patient is incontinent. This is a serious health complication.  KG did not know he was incontinent of stool, which meant he had a significant loss of sensation.  Incontinence is a key component in all serious cervical, back and compression head injuries . . . Also, incontinence is a serious symptom of a severe spinal or neurological injury." (Burrow Rpt., 11.)

Ms. Burrow's nursing degree does not qualify her to offer an opinion or testimony on medical causation or the neurological significance of Green's symptoms.  *See Earp v. County of Tulare*, 2012 U.S. Dist. LEXIS 44176, *9-10 (E.D. Cal. 2012) ("This Court agrees with the reasoning in the line of cases which rejects opinion evidence from a registered nurse, rather than a qualified physician" on issues of injury causation) (citing Fed. R. Evid. 702; *Gayton v. McCoy*, 593 F.3d at 616; *Vaughn v. Miss. Baptist Med Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) ("nurses cannot testify as to medical causation")); *Elswick v. Nichols*, 144 F. Supp. 2d 758, 767 (E.D. Ky. 2001) (nursing expert cannot testify as to how plaintiff received infection because it was "outside [her] area of expertise"); *Long v. Methodist Hosp. of Indiana, Inc*., 699 N.E.2d 1164, 1169 (Ind. App. 1998) ("[W]e now hold that nurses are not qualified to offer expert testimony as to the medical cause of injuries.").

_____

[4] Exhibit 3 to Talcott Decl.

Page 5 -    CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

2.    *Ms. Burrow is not qualified to offer opinions about a diagnosis of malingering.*

Ms. Burrow offers the following:

i.    "Diagnosing malingering or 'lying about symptoms', requires a skilled psychiatrist to complete an evaluation and make a diagnosis.  Neither the PA or Nurse or Custody Officers had the education or training to diagnose if KG was speaking the truth.  What did occur was that KG was telling everyone that he was paralyzed and could not move." (Burrow Rpt., p. 11, ¶ 3.)

Within her own opinion on this issue, Ms. Burrow admits that she is not qualified to make it.  Diagnosing malingering, per Ms. Burrow, requires a "skilled psychiatrist" and "neither a PA nor a nurse has the "education or training to diagnose if KG was speaking the truth."  Ms. Burrow is not a psychiatrist, and like the PA and nurse whose conduct she opines on, is not qualified by education or training to diagnose if KG was telling the truth–or in this instance, if medical personnel in this case had reason to believe Green was not telling the truth.

3.    *Ms. Burrow is not qualified to offer opinions about the standard of care for a PA.*

Ms. Burrow offers these opinions regarding the PA's standard of care and what Kirstin White should have done:

i.    "My professional opinion is that PA White should have notified her supervising physician and sent KG to the hospital from the courtroom . . . As the provider on site and the leader in the response, she should have known that no cervical collar, no backboard, no on site X-ray, no physician on site, injury self-inflicted and in the public arena, that it would have been good patient care to assure higher level of care at a local hospital." (Burrow Rpt., p. 12.)

ii.    "White said she examined his neck; however, a cervical fracture cannot be definitely diagnosed without an X-Ray.  Most orthopedic injuries, unless severely out of alignment, need an X-Ray or MRI to diagnose." (Burrow Rpt., p. 7.)

iii.    "PA White should have immediately called her medical director . . ." (Burrow Rpt., p. 9.).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Ms. Burrow should not be allowed to testify as to the care that Kirstin White should have provided because Ms. Burrow is not qualified to do so by education, training or experience.[5] A nurse "is not qualified to testify as to . . . the standard of care governing a physician assistant who stands in the place of the treating physician." *Cleveland v. United States*, 457 F.3d 397 (5th Cir. 2006). Ms. Burrow is an RN, not a PA. She has not received the training of a PA, and she never held a PA license. In preparing her report, Ms. Burrow did not even review any information regarding standards of practice for PAs. (*See* Burrow Rpt., p. 2 Scope of Work.) Ms. Burrow should be not be permitted to offer any opinions on the standard of care for a PA.

## II.   Motion *in limine* 2: To preclude testimony or expert opinion of Plaintiffs' experts that constitute legal conclusions.

Although experts may opine on an issue of fact within the jury's province, they may not offer testimony stating ultimate legal conclusions based on those facts. *United States v. Duncan*, 42 F.3d 97, 103 (2d Cir. 1994). Expert opinions must be helpful to the trier of fact and cannot "merely tell the jury what result to reach." *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) (quoting advisory committee note to FRE 704 and finding admission of expert's "conclusory condemnation" of defendant's conduct was error because it told the jury what result to reach); *see also Good Shepherd Manor Foundation v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) (an expert is not permitted to testify to "legal conclusions that will determine the outcome of the case."); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court"). Expert opinion must also not come in the form of a legal conclusion, as it is the responsibility of the court, not testifying witnesses, to define legal terms. *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (error in a § 1983 case to admit

---

[5] Plaintiffs have already retained David Keene, a PA, to offer testimony on the care rendered by White. Even if the Court determined that Ms. Burrow was qualified to testify regarding the standard of care of a PA, her testimony should be excluded as cumulative.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

testimony of an expert that the policies of the City of Detroit police department demonstrated that the city was deliberately indifferent to its citizens).  The following Plaintiffs' experts offer testimony that should be excluded because it amounts to legal conclusion that tells the jury the result it should reach:

### A.    David W. Keene's opinion that the staff was "indifferent" to Green is an improper legal conclusion.

Mr. Keene's report provides that "[t]he staff was *indifferent* to the condition of their patient." (Keene Rpt., p. 2)[6] (emphasis added).  This is not an opinion regarding an ultimate fact, but a legal conclusion, and it does nothing more than tell the jury that it should find Corizon's and, specifically Kirstin White's, behavior to be "indifferent."  Although he does not use the phrase "deliberate indifference," Mr. Keene's use of the word "indifferent" tracks the language of the legal standard to be applied in § 1983 claims closely enough that his opinion should be excluded because it invades the province of the jury and the court.  "It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."  *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977).  Mr. Keene's testimony and opinion that the conduct of clinic personnel was "indifferent" to Mr. Green's condition should be excluded.

### B.    Steven F. Kinder's opinions regarding "wanton disregard" and "deliberate indifference" are improper legal conclusions.

Mr. Kinder's report provides the following opinions that should be excluded from trial because they constitute legal conclusions that invade the province of the jury and legal terms that invade the province of the court:

i.    "The lack of evidence to support follow up action determining the impact of changes to policy and procedure at the local level demonstrates *wanton disregard* for the safety and welfare of patients in the care of Corizon healthcare personnel."  (Kinder Rpt., p. 9, ¶ 2) (emphasis added).

---

[6] Exhibit 4 to Talcott Decl.

Page 8 -    CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

ii.  In summary, my review of the documents and depositions demonstrates a consistent, methodical and *deliberate indifference* by Corizon clinical providers, staff, executives and officers . . . ."  (Kinder Rpt., p. 10, ¶ 2) (emphasis added).

Whether Corizon and the employee Defendants demonstrated a deliberate indifference to Green's need for medical care is the very issue to be decided *by the jury* on Plaintiffs' § 1983 claims; therefore, Mr. Kinder should be excluded from offering testimony or opinion that tells the jury to find conduct was, in fact, deliberately indifferent.  Similarly, he tells the jury to conclude that certain behavior demonstrated "wanton disregard" for the welfare of patients.  "Wanton disregard" is a legal term that is used to define behavior sufficient to award punitive damages and implies knowledge and consciousness that an injury will result from an act.  The expert's opinions regarding  "deliberate indifference" and "wanton disregard" invade the province of the jury, as the jury should be one to conclude whether certain conduct amounted to these standards.  Likewise, they invade the province of the court, as the court should be the one to instruct the jury on the legal meaning of these terms and how to apply the law to the facts to determine if deliberate indifference or wanton disregard has been demonstrated.

C.    **Dr. Amanda Ruiz's opinion regarding "deliberate indifference" is an improper legal conclusion.**

Dr. Ruiz states at page six of her report that a statement made by a deputy is "consistent with deliberate indifference."  (Ruiz Rpt. p. 6, ¶ 1).  For the same reasons that Mr. Kinder should be precluded from offering testimony or opinion that conduct of the Defendants was deliberately indifferent, so too should Dr. Ruiz be excluded from doing so.

D.    **Gayle F. Burrow's opinions regarding rights of detained individuals and standard of quality health care are improper legal conclusions.**

Ms. Burrow offers the following legal conclusions within her expert report, which should be excluded at trial:

i.    "The Supreme Court assured each detained individual those rights in *Estelle v. Gamble* in 1979 and many other court cases since." (Burrow Rpt., p. 9.)  This

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

statement invades the province of the court, as it is the court's job to instruct the jury on the law, not the job of a registered nurse.

          ii.   "Mr. Green's health care while in the Lane County Jail did not meet the standard of quality health care as guaranteed by the Constitution of the United States . . . ." (Burrow Rpt., p. 10.)  This is a legal conclusion that tells the jury exactly what it should find on Plaintiffs' § 1983 claims.  It should be excluded from evidence.

### III.    Motion *in limine* 3: To preclude testimony or expert opinion of Plaintiffs' experts that does not meet the standard of certainty for medical opinion testimony.

In Oregon, experts must present their opinions to a reasonable medical probability. *McEwen v. Ortho Pharm. Corp.*, 270 Or 375, 414-15 & n. 36, 528 P.2d 522 (1974).  Reasonable medical probability has been held to be synonymous with "more likely than not."  *Sims v. Dixon*, 224 Or 45, 48, 355 P.2d 478, (1960).  For medical opinion testimony to have probative value, it must advise the jury that the inference drawn by the doctor is more probably correct than not, *Crawford v. Seufert*, 236 Or 369 (1964), but when opinions are expressed as mere possibilities, they are to be excluded as speculative.  *Sims*, 224 Or at 48-49 ("It is well established that the causal connection between defendant's acts or omissions and the plaintiff's injuries must not be left to surmise or conjecture.").  In *Sims*, the decision of the trial court denying the request for nonsuit and directed verdict was reversed where the plaintiff's expert offered nothing more than speculation as to the causal connection between her injuries and the defendant's conduct.  Specifically, the plaintiff claimed that a near car accident aggravated her heart illness.  Her expert testified that it was "*probable* that if [a person] was frightened badly it *could* precipitate extreme emotional stress which could lead to an angina syndrome."  *Id.* at 49 (emphasis in original).  The court deemed the expert's answer to amount to nothing more than a statement of possibility, which was insufficient because it failed to show with reasonable certainty "any connection between the near accident" and the plaintiff's medical condition.  *Id.*

      The following opinions of Plaintiffs' experts amount to speculation because they are not

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

offered to a reasonable degree of medical probability and, therefore, should be excluded from evidence:

### A.      Dr. Amanda Ruiz's opinions regarding causation are speculative.

Dr. Ruiz's expert report concludes with the speculative opinion that "[h]ad Lane County Jail provided adequate mental health screening, treatment, and supervision, it is *likely* that the events of February 12, 2013 *could* have been prevented."  (Ruiz Rpt., p. 10) (emphasis added). This statement is speculative, not supported by any evidence, and is not offered on a more-likely-than-not basis.  Specifically, Dr. Ruiz's opinion is not supported by any evidence as to *how* adequate mental health screening, treatment and supervision could have prevented Green from injuring himself on February 12, 2013, triggering the cascade of events that followed.

Dr. Ruiz offers examples of "modalities" that could have been implemented to keep Green "safe," such as placing him on constant observation, obtaining an emergency medication treatment order or transferring Green to a higher level of care.  (*Id.* at 4.)  But Dr. Ruiz fails to explain how or why these modalities would have actually kept Green safe and, more importantly, prevented him from running headfirst into a wall.  Dr. Ruiz likewise opines that had Green been "seen by an appropriately trained professional and adequately screened, *a number of treatment options were available to protect him from harm*."  (*Id.* at 5) (emphasis added).  She offers no actual examples of the treatment options that were available and no explanation as to how or why those treatment options would have effectively prevented Green from harming himself on the day in question.

Like the expert opinion in *Sims*, Dr. Ruiz's opinion is merely a statement of possibility that fails to show with reasonable certainty the causal connection between the failure to provide Green with "adequate mental health screening, treatment, and supervision," and the injuries Green incurred on February 12, 2013.  Dr. Ruiz's conclusory opinion is wholly insufficient to meet the standard of admissibility for expert opinion testimony on the issue of causation.  As such, Dr. Ruiz should be excluded from offering this testimony or opinion to the jury.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**B.    Dr. Jennifer James's opinion regarding Green's potential recovery is speculative.**

Dr. Jennifer James offers the opinion that Green would have recovered "one to two levels" to C5 or C6 if he had had prompt intervention and explains the alleged physical capabilities Green would have had if he had achieved such a recovery.  (James Rpt., pp. 35, 37.)[7] Dr. James's opinion that Green could have recovered to C6 should be excluded because it is speculative and not offered to a reasonable degree of medical probability.

In providing support for her opinion that recovery to C6 was achievable, Dr. James states that the spinal cord injury literature indicates the "strong *possibility* that an individual can recover two levels below the level of the initial lesion." (*Id.* at 37 ¶ 5) (emphasis added). Testimony and opinion that Green could have recovered to C6 should be excluded because it is not offered on a more-likely-than-not basis, but rather on the basis of it being a "strong possibility." A strong possibility is still a just a possibility and insufficient to meet the standard for admissibility of medical opinion testimony. Moreover, Dr. James's opinion in this regard is speculative because it is not offered in terms of what *Green* could have recovered to, but what "an individual" can recover to. This is a generalization extrapolated from unspecified "spinal cord injury literature." Dr. James offers no explanation as to why Green specifically was a candidate for recovery of two levels. Accordingly, Dr. James should be excluded from offering any opinion or testimony that Green could have recovered to C6 and the alleged physical capabilities Green would have had at that level because this opinion is speculative and not offered on a more-probable-than-not basis.

//

//

//

//

---

[7] Exhibit 5 to Talcott Decl.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

IV.     Motion *in limine* 4: To preclude and exclude cumulative testimony of
        Plaintiffs' experts.

Plaintiffs have identified six expert witnesses, five of whom have submitted reports in this case that demonstrate significant overlap on the topics of their testimony.  The below chart sets forth the specific areas of overlap:

| TOPIC | Jennifer James, MD | Amanda Ruiz, MD | Steven Kinder, RN | David Keene, PA | Gayle Burrow, RN |
|---|---|---|---|---|---|
| Inadequate charting performed by Corizon personnel | X | | X | X | X |
| The need for immediate ambulance transport of Green to an ER. | X | X | | X | X |
| The PA standard of care | X | | | X | X |
| The need for neurological checks/monitoring of Green while in the holding cell or lack thereof | | X | | X | X |
| The neurological exam performed on Green or the lack thereof | X | X | | X | X |
| The failure to stabilize Green's neck with a neck collar | X | X | | X | X |
| The failure to use a backboard in transporting Green to the clinic/holding cell | X | X | | X | |
| The inadequacy of the medical care provided to Green | X | X | | X | X |
| Injuries sustained by Green because of inadequate care | X | X | | | X |
| National Commission on Correctional Health Care standard for mental health evaluations | | X | | | X |
| Loss of bowel or bladder function as a sign of neurologic injury | X | X | | | X |

Such duplicative testimony should be barred as a "waste of time" and a "needless presentation of cumulative evidence," and because of the "danger of unfair prejudice."  Fed. R. Evid. 403.  Three to four witnesses are not necessary for the jury to understand the issues involved

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

in this matter.  Plaintiffs' attempt to introduce multiple witnesses on the same issue is nothing more than an attempt to sway the jury into counting experts, and not to promote any true understanding of the facts of this case.

There is no basis for allowing the Plaintiffs to have more than two witnesses offer testimony on the issues identified above.

### V.     Motion *in limine* 5: To preclude testimony or expert opinion on the state of mind of Corizon.

Expert witnesses are not "permitted to testify … regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred." *AstraZeneca LP v. TAP Pharm. Prods*., 444 F. Supp. 2d 278 (D. Del. 2006); *see also Deutsch v. Novartis Pharms. Corp*., 768 F. Supp. 2d 420 (E.D.N.Y. 2011).   Here, certain opinion and testimony of Plaintiffs' experts must be excluded because the experts are offering opinions on the state of mind of Corizon and/or its officers.

The report of Steven Kinder offers the following opinions:

1.   Corizon's failure to immediately investigate and "thoroughly report and review findings . . . demonstrates a lack of regard for not only the safety of [its] local contracted population, but [its] national community";

2.   Corizon's CEO's alleged lack of familiarity with company litigation "suggests, at a minimum, corporate cognitive dissonance"; and

3.   "It unfortunately appears that this case is reflective of a corporate perspective that embraces an attitude of higher concern for financial indicators of success rather than the provision of the highest quality of care."

(Ex. 2, Kinder Rpt., pp. 8, 9, & 10.)

Mr. Kinder is clearly offering opinions as to the state of mind of Corizon and its CEO. These opinions should be excluded because they have "no basis in any relevant body of knowledge or expertise." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  Mr. Kinder lacks any scientific basis for an opinion about the motives, intent or thinking

Page 14 -   CORIZON DEFENDANTS' OMNIBUS MOTIONS IN
LIMINE REGARDING INADMISSIBLE EXPERT
OPINIONS

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

of Corizon and its CEO and, therefore, his opinion and testimony in this regard should be excluded.

Dated this 18th day of May, 2015.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By:      /s/Richard K. Hansen
        Richard K. Hansen, OSB #832231
        Anne M. Talcott, OSB #965325
        Telephone: (503) 222-9981
        Facsimile: (503) 796-2900

        James M. Daigle, OSB #942843
        Adam S. Heder, OSB #151144
        Telephone: (503) 221-0699
        Facsimile:  (503) 223-5706

        Trial Attorney:  Richard K. Hansen

        Of Attorneys for Defendants, Corizon Health, Inc., Dr. Justin Montoya, Vicki Thomas, Kirstin White, Sharon Epperson (née Fagan)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury, under the laws of the State of Oregon, that the following is true and correct:

That on the 18th day of May, 2015, I arranged for service of the foregoing CORIZON DEFENDANTS' OMNIBUS MOTIONS IN LIMINE REGARDING INADMISSIBLE EXPERT OPINIONS to the parties to this action as follows:

Elden M. Rosenthal
Michael Greene
Rosenthal, Greene & Devlin PC
121 SW Salmon St., Ste. 1090
Portland, OR 97204-2920
E-Mail: elden@rgdpdx.com

Sebastian Tapia
Attorney
Lane County Office of Legal Counsel
125 East Eighth Avenue
Eugene, OR 97401
E-Mail: sebastian.tapia@co.lane.or.us

James Daigle
Adam Heder
Stewart Sokol & Larkin LLC
2300 SW First Ave., Ste. 200
Portland, OR 97201
E-Mail: jmdaigle@lawssl.com
E-Mail: aheder@lawssl.com

Robert L. Goldstucker
Nall & Miller LLP
235 Peachtree St., NE
Ste. 1500 – North Tower
Atlanta, GA 30303
E-Mail: bgoldstucker@nallmiller.com

by:

☐ U.S. Postal Service, ordinary first class mail
☐ U.S. Postal Service, certified or registered mail, return receipt requested
☐ hand delivery
☐ facsimile
☒ electronic service: CM/ECF
☐ other (specify) _____

/s/Richard K. Hansen
Richard K. Hansen

Page 1 -    CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\128493\202445\JCA\15913333.1