SEBASTIAN TAPIA, OSB #043761
STEPHEN E. DINGLE, OSB #842077
LANE COUNTY OFFICE OF LEGAL COUNSEL
125 East Eighth Avenue
Eugene, OR  97401
541/682-4442
541/682-3803 fax
sebastian.tapia@co.lane.or.us
stephen.dingle@co.lane.or.us
       Of Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **DEREK JOHNSON**, personal representative of **KELLY CONRAD GREEN II,** deceased**; KELLY CONRAD GREEN** and **SANDY PULVER,**<br><br>Plaintiffs,<br><br>v.<br><br>**CORIZON HEALTH, INC**., a Tennessee Corporation; **LANE COUNTY**, an Oregon county; **DR. CARL KELDIE,** an individual; **DR. JUSTIN MONTOYA**, an individual; **VICKI THOMAS**, an individual; **KIRSTIN WHITE**, an individual; **SHARON EPPERSON (née FAGAN)**, an individual; **JACOB PLEICH**, an individual,<br><br>Defendant. | **Case No. 6:13-cv-01855-TC**<br><br>**DEFENDANT LANE COUNTY'S TRIAL MEMORANDUM** |

## FACTS

Kelly Conrad Green, II ("Green") was a homeless, mentally ill young man with several law enforcement contacts.  He also had numerous mental health interventions by his family within his lifetime.  By about January 2013, Green's parents quit their attempts to house Green and to actively influence him to maintain a regular mental health care routine.  Green's parents

were aware of Green's potential for erratic and dangerous behaviors because Green attempted to kill his brother with a knife at a family picnic in 2004. Green's father was also aware that Green threatened to break his own neck in September 2012 if he were ever involuntarily committed again. Green's family was aware that Green's marijuana use reduced the efficacy of Green's mental health medication, yet his brother and his father engaged in smoking marijuana with Green. Green's family was aware that Green was charged with criminal behavior in December 2012 and that he remained jailed during the Christmas holiday that year. Green was also incarcerated at the Lane County jail in January 2013. Plaintiffs never told Defendants or their agents about Green's specific threats of self harm.

On February 11, 2013, Eugene Police were called on a welfare check concerning a possibly suicidal person at a convenience store. The caller said that she overheard the suspect say that he was going to jump into traffic and kill himself. Eugene Police Officer Eric Hubbard responded to the call and arrested the subject, later identified as Green because Green also had an outstanding warrant. Officer Hubbard did not write about Green's specific plan to commit suicide in his report. However, Officer Hubbard did write that Green said he would not kill himself because Green was "too important." Kerri Nelson was the Lane County Sheriff's Deputy who provided an initial screening for Green. She was the same deputy who provided Green's initial screening in January 2013. Deputy Nelson decided that Green would not be put on an immediate suicide watch. Instead, she referred Green to Corizon for additional assessment, as documented on her screening form. Green was held overnight without being "housed." Green was taken to arraignment, which is located in Lane County Adult Correctional Facility. Eugene Police Officer Doug Ledbetter and Sergeant Ball were the only law enforcement officers at that hearing. Green's hearing was heard by Eugene Municipal Court

Judge Don Diment.  Judge Diment noted that Green had failed to appear for pervious hearings.
Judge Diment told Green that he would be held in custody until the next hearing.  Green looked
at a wall approximately 10 feet from this standing position and ran head-first into a cinderblock
wall.  He landed face-down with his head facing away from the wall.  Officer Ledbetter rolled
Green face-up and held him in an "arm bar."  Sergeant Ball secured the other arm.  A "Code 3"
was called, which required all non-essential staff to report to that location.  Several Sheriffs
deputies took hold of Green, and the Eugene officers turned their attention to securing the
remaining arrestees.

Physician Assistant Kirstin White was one of the Corizon staff members who assessed
Green while he was on the courtroom floor.  PA White was the apparent decision maker for this
medical call.  PA White checked Green's neck and then told deputies to get a backboard.
Someone told PA White that there was no backboard.  PA White instructed Deputy Dotson and
Sergeant Guy Balcom to move Green to a wheel chair and take him to one of the medical rooms
to get stitched.  They did as ordered.

Green defecated himself in the medical room while PA White stitched his head wound.
PA White and Balcom discussed how a "courtesy drop" might apply to Green.  PA White
instructed Balcom and Dotson that Green was "good to go."  Deputies interpreted this to mean
that Green was not in need of emergency medical care or further medical follow-up.  The Lane
County Sheriff's Office would have needed additional instructions if PA White had intended
"good to go" to mean that they were being instructed to transport Green to a hospital.  Balcom,
Dotson and Deputy Don Burnette moved Green to a segregation cell because of his suicide
attempt.  They removed his clothes as required for an active suicide watch, but did not clean his

feces.  It is the inmate's job to clean himself if he can care for himself.  It is medical's job to clean feces if the inmate cannot care for himself.

Burnette called Corizon's staff at least two times to inform them that Green had not moved in over an hour.  Sergeant Burnette also informed the sergeants that he told Corizon about Green's condition.  At the shift change, Sergeant Burnette also told Deputy Dan Correll about Green's condition.   Correll was able to convince a Corizon nurse, Leah Smith, to report to Green's cell.  Leah was eventually able to bring PA White back to Green's cell.  PA White stated that Green should have had a courtesy drop within one to two hours of his injury.  PA White did not communicate with anyone the "Code" in which the ambulance should be called.  Also, Green could not be released without an Order from the Municipal Court.   Sergeant Steve Davis requested that the City of Eugene allow Green to be released on their hold so that he could get outside medical care.  Jacob Pleich, Mental Health Specialist, prepared a Director's Hold so that Green would receive mental health treatment after he finished getting medical treatment.  Contrary to Balcom's conversation with PA White, a courtesy drop was not possible because Green was a known suicidal inmate.  It is against policy and common sense to release a known suicidal inmate without taking reasonable precautions to assure his safety.  Green could only be released to Sacred Heart – Johnson Unit, which is a metal health ward, or a responsible family member because of his recent suicide attempt.  A courtesy drop is not available for suicidal inmates because a courtesy drop does not require the former inmate to submit to treatment; it is literally a courtesy ride to an Emergency Department and an opportunity to voluntarily submit for treatment.

///

///

## DISCUSSION

Lane County intends to show that Green's injury would not have been avoided even if Corizon staff had assessed him prior to arraignment because he was acting similarly during previous incarcerations and he was not put on previous suicide watches. Lane County intends to show that its employees followed Corizon's explicit instruction to move Green to a wheel chair without neck precautions. Lane County will argue that Green could have been left on the floor of the courtroom until an ambulance arrived if so instructed by PA White. Lane County staff will testify that they would have expected Corizon to provide follow-up if Green was still a medical patient and if he was not, Lane County employees still reasonably expected that Corizon staff would respond to deputies' requests for further evaluation. Lane County will provide testimony that if it had been possible to transport Green as a courtesy drop, he would have been put in the back of a patrol car in handcuffs and without neck precautions. Lane County intends to argue that doing so would not have improved his condition, but would have likely made matters worse.

### Lane County's Liability under 42 U.S.C. § 1983

The evidence will prove that Corizon is responsible to indemnify Defendant Lane County if Lane County is found to have been liable for deliberate indifference to Green's medical needs.

Plaintiffs' only claim against Lane County is that it failed to provide Green constitutionally adequate medical care. Defendant contracted its medical and mental health services to co-Defendant Corizon. Corizon agreed to provide defense and indemnity for lawsuits involving claims within their scope of duties.

Plaintiffs and Corizon appear to claim that Lane County has independent liability for failing to get Green a mental health evaluation.

Lane County provided initial assessments consistent with state wide jail practices.  Lane County attempted to exceed state practices by contracting with Corizon to do "mental health assessments upon intake."  Defendant provided Corizon walkie-talkies and the BAT computer system so that Corizon staff could have information about inmates who have not yet been housed.  Corizon repeatedly promised Lane County that it would provide prompt intake assessments.

Plaintiffs appear to claim that Lane County's delay in getting outside emergency medical care creates separate liability for Lane County.

There are three possible times in which medical delay might be claimed.  First is the "one-to-two hour courtesy drop."  Second is the time when PA White said we have to get Green out of the facility.  The third is when news of Green's condition makes it to the sergeant's office. Each will be discussed in order.

The courtesy drop is a non-issue.  Corizon has a contractual duty to provide all necessary care for inmates at the Lane County jail.  If Green had a medical need, it should have been met by Corizon staff.  Corizon cannot delegate medical responsibilities and liabilities back to Lane County.  If the suicide watch had not been a consideration, it is possible that Lane County could have provided a courtesy drop.  However, if the courtesy drop had been done, Green would have been put in the back of a patrol car without backboard or neck precautions.  He might have been handcuffed behind his back and laid sidewise in the car.  Lane County believes that this would not have made Green's condition better and may have made it much worse.

PA White verbalized her expectation that Lane County should have done a courtesy drop when she went to Green's cell.  However, PA White should have reported the situation directly to jail sergeants.  PA White was responsible for relaying necessary information to get a Code 3

ambulance called.  She failed to provide Deputy Correll sufficient information to call a Code 3 ambulance and consequently, a Code 1 was called.  As a Code 1, processes that could have been put off to later were done in due course.  The associated liability, if any, cannot be delegated back to Lane County.

## Lane County's Liability under Negligent Misconduct
## Wrongful Death/Survival

Contrary to Plaintiff's assertion, Lane County *did* provide Mr. Green initial  screening, which was consistent with state-wide practices.  Although Deputy Nelson said that she was not trained to do mental health screenings, Defendants believe what she meant is that she is not a Mental Health Specialist.   Her training history shows that she was trained several times throughout her career to ask standard questions to assess suicide risk.   In her judgment, she decided that Green was not an immediate danger to himself.  She also reasonably believed that Corizon staff would do further screening in the immediate future.

Lane County takes no position about the degree of injury that Lane County deputies furthered by moving Green.  It is unclear if Green's condition was beyond repair at the time he hit the wall.  It is unclear if Eugene officers, who are not parties to this lawsuit, furthered the damage by jumping on him, turning his body without neck precautions and holding him in an arm bar, prior to Lane County's first involvement with Green.

What is not disputed is that Corizon's contractual duty was to provide all necessary medical equipment.  They did not have a back board or neck precautions.  Corizon had obvious options that did not require moving Green to a wheel chair.  Corizon could have called a Code 3 ambulance and stabilized his neck until an ambulance responded.  Lane County employees acted reasonably by following PA White's explicit instructions to put Green in a wheel chair and take him to  medical.   Lane County employees acted reasonably when they treated Green as a

passively resistive inmate in light of PA White's advisement that Green was "good to go."  Lane County employees acted reasonably by continuing to inform Corizon staff of their observations. Lane County employees acted reasonably by insisting that a Corizon nurse respond to Green's cell.

Plaintiffs will be unable to prove that Lane County approved or ratified Corizon's policies, customs or practices.  Corizon's written policies or practices are not alleged to be directly responsible for Green's injury or method of care.

Wrongful death is limited by the Oregon Tort Claims act to $500,000 per occurrence because there is not a common law equivalent.

Lane County may present evidence and argument that Green's state law claim is barred by Green's own comparative negligence.  Defendants assume that Plaintiff will argue that Plaintiff could not make a sober decision when he attempted to kill himself.  This argument is flawed in two important ways.  First, the decision does not need to be sober.  Second, Green's decision to stop taking medications was a "sober" decision, which directly caused his injury and represents more than 50% of the combined negligence.

First, Green knew of his potential to harm himself and people around him.  He had violent attacks on others since 2004 and stated intentions for self-harm since 2003.  Each time he was medicated, counseled and housed.  Each time he made the "medicated" decision to stop taking medications.  Green repeatedly told his family that he did not need it.  Green knew of the danger he posed to himself and to others and yet repeatedly stopped taking medications.  This act represents more than 50% of all negligence that led to his injury and death.  If Green or his family had informed defendants that Green was suicidal, this argument might not have been valid under Oregon law, but Lane County was only told that he would not commit suicide and he

PAGE 8 – DEFENDANT LANE COUNTY'S TRIAL MEMORANDUM

responding accordingly to Deputy Kerri Nelson.  Green told Officer Hubbard, he was "too important" to commit suicide.  When asked by Deputy Nelson if he was having suicidal ideations, he responded, "no."

Second, Oregon law does not require a sober decision, even in criminal law with a higher burden of proof.  In criminal law, a defendant must prove that he does not appreciate the criminality of his actions.  Here, Green knew that running his head against a wall would cause his death.  That was his conscious objective.  The fact that he did not appreciate the value of life (his or others) is not a basis for deny Plaintiff's ability to present an affirmative defense.

Oregon law allows an affirmative defense of comparative negligence in a wrongful death action.  *Robinson v. Children's Services,* 140 Or App 429

## LANE COUNTY'S CROSS CLAIM

### Lane County's Claim for Indemnity and Contribution

In the spring of 2012, Lane County contracted with Corizon Health, LLC for medical, mental health and dental services for Lane County inmates.

In exchange for a flat fee, Corizon assumed all responsibility to "deliver quality medical services" to jail inmates, and further agreed to "meet all applicable federal, state and local guidelines, laws and regulations."

Corizon agreed to pay for all inmate medical services that cannot be performed in the jail, including all ambulance and hospital charges.  Corizon agreed to review Lane County policies and procedures, and to make recommendations to jail administration.

Corizon accepted "responsibility for making emergency arrangements for ambulance service" when outside medical treatment is required.

The Corizon-Lane County contract required Corizon staff to "train Contractor's staff on the identification and treatment of inmates who are at risk for suicidal or homicidal acts, and must provide annual training to Jail staff on suicide prevention."

The Corizon-Lane County contract required Corizon staff to "perform mental health services to the inmate population including: upon intake into the Jail system, evaluation, identification and treatment of inmates with mental health problems."

Prior to February 2013, Lane County provided Corizon staff access to the BAT system, which is a computer system that lists all inmates at the Jail who have not been assigned a housing unit yet, and organizes the inmates' names in the order in which they were received upon intake into the Jail system.  From this, Corizon staff knew or should have known when a new inmate was booked into the jail, regardless of whether they received a courtesy telephone call from Lane County staff regarding a new inmate.

The Corizon-Lane County contract required Corizon staff to "identify the need, schedule, coordinate and pay for all non-emergency and emergency medical health care rendered to inmates inside or outside the Jail." Corizon was also required to "identify the need, schedule, coordinate and pay for any inpatient hospitalization." This also includes responsibility for making "emergency arrangements for ambulance services to the inpatient facility and reimbursement to the local ambulance organization for the services provided."

The Corizon-Lane County contract required Corizon staff to purchase equipment not already owned by Lane County.  At the time that the contract was executed, Lane County did not own a backboard.  Lane County provided Corizon staff an inventory of equipment that it owned.  A backboard was not on that list.  Lane County also provided Corizon staff a tour of the facility prior to February 2013, which included a visual inventory of Lane County-owned equipment.

Corizon agreed to "indemnify and hold County, and its officers, agents and employees, harmless from and against all claims, actions, liabilities and other costs of defense, arising out of or in any way related to the Services rendered by Contractor or Contractor's employees."

Defendant Corizon is required and obligated to defend, indemnify and reimburse Defendant Lane County for all claims, damages, fees and payments that Defendant Lane County may be required to make under the Second Amended Complaint.  In the event any judgment is rendered in favor of Plaintiff and against Defendant Lane County, Defendant Lane County is entitled to judgment over and against Co-Defendant Corizon or contribution in equal or appropriate sums.

### Lane County's Legal Issues

If Plaintiff prevails on his Wrongful Death action, his combined recovery is capped at $600,000 for all defendants. ORS 30.272(d).  The Oregon Supreme Court has found that there was not right to recover damages for the death of a person at common law.  *Hughes v. PeaceHealth*, 344 Or. 142, 178 P3d 225(2008).  The court has held that wrongful death actions did not exist at common law, and were originally created by the legislature. Thus, the legislature may limit the amount of damages available. *Id.*

Corizon alleges that Lane County made oral modifications of the Lane County-Corizon Contract.  However, the contract specifically prohibits oral modifications.  Corizon alleges that Lane County, by way of Lt. Larry Brown, waived the provision for mental health assessment at book in, but the evidence will show that Lane County repeatedly attempted to get compliance with the terms of the agreement by providing Corizon the BAT and providing staff walkie-talkies to communicate with sergeant's office or intake staff.  Lt. Brown did not have authority to waive

any term of the contract.  The Sheriff did not have the authority to re-negotiate the contract either.  LM 21.147 (4).

DATED this 18th day of May, 2015.

                                LANE COUNTY OFFICE OF LEGAL COUNSEL

                                By:    ___*/s/ Sebastian Tapia*_____
                                       Sebastian Tapia, OSB# 043761
                                       Lane County Office of Legal Counsel
                                       125 East Eighth Avenue
                                       Eugene, OR 97401
                                       541/682-3728
                                       sebastian.tapia@co.lane.or.us
                                            Of Attorneys for Defendant

**DELEGATION OF AUTHORITY TO EXECUTE CONTRACTS AND AMENDMENTS**

**21.145  Delegation of Authority to Execute Contracts.**

    (1)    The County Administrator is delegated authority to execute all contracts and agreements that do not exceed $100,000 in cost or revenue nor three years in length.

    (2)    The County Administrator is further delegated authority to execute contracts that exceed three years in length, only if:

    (a)    The cost or revenue for the first three years does not exceed $50,000, and

    (b)    The contract contains a provision allowing the County to terminate the contract upon not more than one year's notice.

    (3)    The County Administrator is further delegated authority to execute, without limitation of amount or length:

    (a)    All contracts that have been awarded or expressly approved by the Board.

    (b)    Contracts specifically identified in a budget adoption order or supplemental budget order approved by the Board.

    (c)    Insurance nonwaiver agreements and insurance endorsements to original policies.

    (d)    Land use improvement agreements, Building Program Quick Start Agreements and acceptance and release of land use performance bonds.

    (e)    Contracts and assignments for the collection of County judgments.

    (f)    All contracts with terms of three years or less that implement public improvement projects described on the adopted Public Works five-year Capital Improvement Program list, the adopted Parks Capital Improvement Program priorities list, and the Public Works and Management Services public improvement lists prepared for

EXHIBIT A

filing with the Commissioner of the Bureau of Labor and Industries (BOLI) pursuant to ORS 279C.305. This delegation includes, without limitation, those contracts reflecting the County paid portion of the project, those reflecting any amount to be paid by other governmental agencies or housing development entities for assisted housing projects, and those covering environmental mitigation responsibility.

        (4)      The Financial Services Manager and each Department Director is delegated authority to execute all contracts that do not exceed $25,000 in cost of revenue nor 3 years in length. *(Revised by Order No. 98-12-2-4, Effective 12.2.98; 04-6-30-12, 6.30.04; 05-2-16-8, 2.28.05; 08-5-7-10, 5.7.08; 13-03-11-04, 03.19.14)*

### 21.147  County Administrator's Delegation of Authority to Execute Amendments.

        (1)      The County Administrator is delegated authority to execute amendments to contracts that do not cause the contract amount to exceed $100,000 in cost or revenue nor three years in length.

        (2)      The County Administrator is further delegated authority to execute amendments to contracts, without limitation of amount or length, if the amendment amount or length is within limits authorized by the Board for that specific contract or class of contracts.

        (3)      The County Administrator is further delegated authority to execute amendments to contracts where the original contract amount exceeds $100,000, subject to the following limitations:

        (a)      If the original contract amount is greater than $500,000, the total of all amendments  to that contract  may not exceed  25 percent of the original contract amount.

        (b)      If the original contract amount is $500,000 or less, the total of all amendments may not exceed 50 percent of the original contract amount, and

        (c)      The amendment does not extend the length of the contract beyond three years, unless the original contract contained a provision for a longer duration and was awarded or expressly approved by the Board. *(Revised by Order No. 98-12-2-4, Effective 12.2.98, 02-1-30-1, 1.30.02; 04-6-30-12, 6.30.04; 08-2-13-1; 2.13.08; 13-03-11-04, 03.19.14)*

### 21.148  Department Directors' Authority to Execute Contracts and Amendments.

        (1)      The Financial Services Manager and each Department Director is delegated authority to execute contracts that do not exceed $25,000 nor three years in length.

        (2)      The Financial Services Manager and each Department Director is delegated authority to execute amendments that do not exceed $25,000, subject to the following limitations:

        (a)      The amendment, in combination with all prior amendments, does not cause the contract amount to exceed $100,000 in cost or revenue nor three years in length, and

        (b)      The amendment, in combination with all prior amendments, does not exceed 25% of either the original contract amount, or the amount expressly approved by the Board, whichever is greater. *(Revised by Order No. 05-2-16-8, Effective 2.28.05; 13-03-11-04, 03.19.14)*

### 21.149  Further Delegation and Termination.

        (1)      <u>Contract Termination</u>.  The County Administrator is delegated the authority to cancel or terminate contracts, including amendments, as provided in the contract or by law.

        (2)      <u>Additional Delegation</u>.  The County Administrator, Financial Services Manager, and each Department Director may further delegate authority under LM

EXHIBIT A

21.145, 21.147, and 21.149(1) to a representative by signed written document.  *(Revised by Order No. 98-12-2-4, Effective 12.2.98; 13-03-11-04, 03.19.14)*

EXHIBIT A

## CERTIFICATE OF SERVICE

      I, Sebastian Tapia, hereby certify that I am the attorney for the Defendant herein; that I served the Plaintiffs the foregoing **DEFENDANT LANE COUNTY'S TRIAL MEMORANDUM**, on the 18th day of May, 2015, by the following method:

Elden M. Rosenthal
Rosenthal Greene & Devlin, P.C.
121 Salmon Street, Suite 1090
Portland, OR 97204-2904

James M. Daigle
Stewart Sokol & Gray LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201

\_\_\_\_\_   Postage prepaid and deposited in the United States Post Office at Eugene, Oregon.

 XX  CM/ECF.

\_\_\_\_\_   Delivered personally by me or by a member of my staff.

\_\_\_\_\_   Caused to be delivered by facsimile transmission, fax #:_____.


                               */s/ Sebastian Tapia*
                               Sebastian Tapia, OSB# 043761
                               Stephen E. Dingle, OSB #842077
                               Lane County Office of Legal Counsel
                               125 East Eighth Avenue
                               Eugene, OR  97401
                               541/682-3728
                               541/682-3803 fax
                               sebastian.tapia@co.lane.or.us
                               stephen.dingle@co.lane.or.us
                                   Of Attorneys for Defendant