**Richard K. Hansen**, OSB #832231
Email: rhansen@schwabe.com
**Anne M. Talcott**, OSB #965325
Email: atalcott@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: (503) 222-9981
Facsimile: (503) 796-2900

**James M. Daigle**, OSB #942843
Email: jmdaigle@lawssl.com
**Adam S. Heder**, OSB #151144
Email: aheder@lawssl.com
STEWART SOKOL & LARKIN LLC
2300 SW First Ave., Suite 200
Portland, OR 97201-0699
Telephone: (503) 221-0699
Facsimile: (503) 223-5706

Attorneys for Corizon Health, Inc. Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DEREK JOHNSON, personal representative of KELLY CONRAD GREEN II, deceased; KELLY CONRAD GREEN and SANDY PULVER, <br><br> Plaintiffs, <br><br> vs. <br><br> CORIZON HEALTH, INC., a Tennessee corporation; LANE COUNTY, an Oregon county; DR. JUSTIN MONTOYA, an individual; VICKI THOMAS, an individual; KIRSTIN WHITE, an individual; and SHARON EPPERSON (née FAGAN), an individual, <br><br> Defendants. | Case No. 6:13-cv-01855-TC <br><br><br> **CORIZON DEFENDANTS' SUPPLEMENTAL OMNIBUS MOTIONS IN LIMINE** |

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

# TABLE OF CONTENTS

**Page(s)**

I.  Motion *in limine* No. 6:  To exclude evidence of the "Sentinel Event Report" and all related evidence, testimony, and argument. .................................................................. 1

    A.  Background ........................................................................................................... 1

    B.  Legal Argument ................................................................................................... 2

        1.  The Sentinel Event Report is not admissible to show Corizon's longstanding policy or custom. .................................................................. 3

        2.  The Sentinel Event Report is not admissible to prove ratification on Corizon's part. ........................................................................................ 9

        3.  The Sentinel Event Report and any related evidence should be excluded because the probative value of that evidence, if any, is substantially outweighed by the danger that it would confuse the issues and mislead the jury. ................................................................. 10

        4.  At a minimum, this Court should exclude any evidence relating to Tonya Mooningham's indication of "reckless behavior/choice" in the Sentinel Event Report. ..................................................................... 10

II.  Motion *in limine* No. 7:  To preclude evidence or testimony concerning the employment history or alleged prior bad acts of Kirstin White, PA. ............................. 13

    A.  Evidence regarding White's employment history and self-medication is inadmissible under Fed. R. Evid. 404(b)(1) because such evidence is inadmissible character evidence. ......................................................................... 13

    B.  Evidence regarding White's employment history and self-medication is inadmissible under Fed. R. Evid. 402 and 403 because it is irrelevant and unfairly prejudicial. ............................................................................................. 14

III.  Motion *in limine* No. 8:  To exclude evidence, argument, and comments regarding Kirstin White's deposition testimony that she was aware that Corizon paid inmate hospital bills. ............................................................................................................... 15

IV.  Motion *in limine* No. 9:  To preclude evidence of media reports written about or involving Corizon. ................................................................................................... 16

    A.  Media reports are inadmissible hearsay. ............................................................. 17

    B.  Media reports are not admissible under Fed. R. Evid. 404(b)(1). ....................... 19

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

V.    Motion *in limine* No. 10:  To preclude evidence of or filings from prior or contemporaneous lawsuits against Corizon. ................................................................ 20

    A.    Evidence regarding other lawsuits is inadmissible under Fed. R. Evid. 401 and 402 because it is irrelevant to the claims in this case. .................................... 21

    B.    Evidence of other lawsuits is inadmissible under Fed. R. Evid. 404(b)(1) because such evidence is inadmissible character evidence. ................................. 22

    C.    Evidence of other lawsuits is inadmissible under Fed. R. Evid. 403 because such evidence is highly prejudicial, would confuse and mislead the jury, and would waste time. .......................................................................... 22

        1.    Evidence of other lawsuits is highly prejudicial and would confuse and mislead the jury. .................................................................... 23

        2.    Evidence of other lawsuits would create mini-trials in this case and offer little, if any, probative value, thus wasting time. ............................ 24

VI.    Motion *in limine* No. 11:  To preclude evidence or testimony from lay witnesses regarding the proper care and treatment of Green's injuries. ............................................ 25

    A.    Lay witnesses lack the expertise to testify about the diagnosis, cause, extent, or proper treatment of Green's injuries. .................................................... 26

    B.    Lay opinion testimony regarding the diagnosis, cause, extent, or proper treatment of Green's injuries should be excluded under Fed. R. Evid. 403. ........ 27

VII.    Motion *in limine* No. 12:  To Preclude Evidence or Testimony related to the claims against dismissed Defendants Pleich and Keldie. .................................................. 27

VIII.    Motion *in limine* No. 13:  To Exclude Evidence, Argument, and Comments Regarding the February 12, 2013 Video of Jacob Pleich Standing Outside of Green's Cell. ...................................................................................................... 28

IX.    Motion *in limine* No. 14:  To preclude Plaintiffs, their attorneys and experts from suggesting that jurors put themselves in the position of Green. ....................................... 29

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Blevens v. Cessna Aircraft Co.*
  728 F.2d 1576 (10th Cir. 1984) ...........................................................29

*Canton v. Harris,*
  489 U.S. 378 (1989) ..............................................................3, 7, 15

*Carpenter v. Sullivan,*
  2014 U.S. Dist. LEXIS 30156 (E.D. Cal. 2014).............................................26

*City of St. Louis v. Praprotnik,*
  485 U.S. 112 (1988)................................................................3, 8, 9

*First Bancorp Mortgage Corp. v. Giddens,*
  251 Ga. App. 676, 555 S.E.2d 53 (Ga. App. 2001) .......................................23, 24

*Gillette v. City of Eugene,*
  979 F.2d 1342 (9th Cir. 1992) ...........................................................2, 3, 9

*Gomez v. Vernon,*
  255 F.3d 1118 (9th Cir. 2001) ...............................................................6

*Grandstaff v. The City of Borger, Texas,*
  767 F.2d 161 (5th Cir. 1985) ........................................................... passim

*Granfield v. CSX Transportation, Inc.,*
  597 F.3d 474 (1st Cir. 2010) ...........................................................29

*Guillory v. Tilton,*
  2012 U.S. Dist. LEXIS 86383 (E.D. Cal. June 20, 2012).....................................27

*Hall v. Sterling Park Dist.,*
  2012 U.S. Dist. LEXIS 42334 (N.D. Ill. Mar. 28, 2012).....................................27

*Henry v. County of Shasta,*
  132 F.3d 512 (9th Cir. 1997) ...........................................................3, 5

*Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.,*
  2014 U.S. Dist. LEXIS 123345 (D. Ariz. 2014)............................................24

*Jett v. Penner,*
  439 F.3d 1091 (9th Cir. 2006) ...........................................................11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Kranson v. Valley Crest Nursing Home*,
  755 F.2d 46 (3d Cir. 1985)............................................................3, 7, 8, 15

*Larez v. City of Los Angeles*,
  946 F.2d 630 (9th Cir. 1991) ................................................................ passim

*Macy's, Inc. v. Strategic Marks, LLC*,
  2014 U.S. Dist. LEXIS 168376 (N.D. Cal. 2014) ...................................17

*McRorie v. Shimoda*,
  795 F.2d 780 (9th Cir. 1986) .............................................................5, 6

*Miller v. Doctor's Gen. Hosp.*,
  76 F.R.D. 136 (W.D. Okla. 1977)..........................................................21

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)................................................................. passim

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ..............................................................12

*Prouty v. Nat'l R.R. Passenger Corp.*,
  99 F.R.D. 545 (D. D.C. 1983)................................................................21

*Ramos-Melendez v. Valdejully*,
  960 F.2d 4 (1st Cir. 1992)...................................................................25

*Ross v. Am. Red Cross*,
  2012 U.S. Dist. LEXIS 77475 (S.D. Ohio 2012)........................... passim

*State v. Hite*,
  131 Or. App. 59 (1994), *rev. den.*, 320 Or. 508 (1995) ......................26

*Sutherland v. Correctional Officers A. Fernando, et al.*,
  2014 U.S. Dist. LEXIS 177346 (E.D. Cal. 2014) ...................................26

*United States v. Palma*,
  473 F.3d 899 (8th Cir. 2007) ...............................................................29

*United States v. Roman*,
  492 F.3d 803 (7th Cir. 2007) ...............................................................29

*United States v. Tsinnijinnie*,
  91 F.3d 1285 (9th Cir. 1996)...........................................................19, 22

*Wingster v. Head*,
  318 Fed. Appx. 809 (11th Cir. 2009).....................................................26

Page iv -    CORIZON DEFENDANTS' SUPPLEMENTAL
             OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

*Wood v. McCullough,*
    45 F.R.D. 41 (S.D.N.Y. 1968) ........................................................21

*Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.,*
    491 F.2d 1239 (5th Cir. 1974) ...............................................23, 24

*Zeke's Distrib. Co. v. Brown-Forman Corp.,*
    779 P.2d 908 (Mont. 1989) ...........................................................21

**OTHER AUTHORITIES**

Fed. R. Evid. 104 ..............................................................................12

Fed R. Evid. 401 ...............................................2, 13, 14, 20, 21, 22, 28

Fed. R. Evid. 402 ...................................................13, 14, 20, 21, 22

Fed. R. Evid. 403 ................10, 12, 13, 14, 15, 16, 17, 20, 22, 24, 25, 27, 29

Fed. R. Evid. 404 ....................................................13, 17, 19, 20, 22

Fed. R. Evid. 407 .......................................................................1, 2, 9

Fed. R. Evid. 701 ............................................................10, 11, 25, 26

Fed. R. Evid. 702 ................................................................11, 12, 26

Fed. R. Evid. 801 ..............................................................................17

Fed. R. Evid. 802 .......................................................................16, 17

Fed. R. Evid. 803 ..............................................................................17

Fed. R. Evid. 807 .......................................................................17, 18

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

In accordance with this Court's Civil Case Assignment Order dated October 18, 2013, Defendants Corizon Health, Inc., Dr. Justin Montoya, Vicki Thomas, Kirstin White and Sharon Epperson (hereinafter collectively referred to as "Corizon") file this supplemental omnibus motion *in limine* to preclude Plaintiffs from introducing any evidence, testimony or argument at trial regarding the matters discussed herein.

**I.**     **Motion i*n limine* No. 6:  To exclude evidence of the "Sentinel Event Report" and all related evidence, testimony, and argument.**

Corizon moves this Court for an order *in limine* excluding from evidence in the trial of this matter all documents relating to Corizon's internal investigation and report following Green's injury, including but not limited to the "Sentinel Event Report" and all related evidence, testimony, and argument.  That evidence is inadmissible because (1) it is not the type of post-event evidence that the Ninth Circuit has held to be admissible to establish a *Monell*[1] policy and, as a result, is an inadmissible subsequent remedial measure under Fed. R. Evid. 407; and (2) even if otherwise admissible, the probative value of that evidence is substantially outweighed by the danger that offering the evidence will unfairly prejudice Corizon, confuse the issues, and mislead the jury.

**A.**     **Background**

In early May 2013, Corizon Corporate Headquarters (Corizon HQ) received a letter from Plaintiffs' counsel notifying Corizon of the injury that Green had suffered on February 12, 2013, at the Lane County Jail.  Although Corizon policy required Corizon HQ to be notified of injuries such as the one Green suffered, counsel's letter was the first notice that Corizon HQ received of Green's injury, and Corizon promptly initiated an expedited sentinel event review of the circumstances surrounding Green's injury.

Corizon's sentinel event review is a peer-review process designed to identify errors and to prescribe corrective action to prevent those errors from recurring in the future.  The sentinel

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Page 1 -     CORIZON DEFENDANTS' SUPPLEMENTAL
             OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

review process is not a tool of discipline, and it is not designed as a means of imposing punitive sanctions on employees for errors they may have committed.

As this Court knows, Corizon's sentinel event review process produced documentation regarding Corizon's investigation of the circumstances surrounding Green's injury. That documentation is referred to in this motion collectively as the "Sentinel Event Report." In this motion, Corizon seeks an order from this Court excluding the Sentinel Event Report from evidence, as well as any testimony or argument relating to the Sentinel Event Report.

### B.    Legal Argument

The Sentinel Event Report and related evidence is not the type of "post-event" evidence that the Ninth Circuit has held may be used to support a *Monell* claim. As a result, that evidence is not probative of any material issue in this case, *see* Fed R. Evid. 401 (defining standard of relevance for evidence), and could be offered only to impermissibly ask the jury to infer that Corizon acted culpably in relation to Green's injury, *see* Fed. R. Evid. 407 (prohibiting admission of subsequent remedial measures).

In this case, Plaintiffs must prove their *Monell* claims in one of two ways. Plaintiffs must either (1) prove that Green's injuries resulted from "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," or (2) "prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. City of Eugene*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).[2] The Sentinel Event Report and related evidence is not admissible to prove either of those bases for a *Monell* claim.[3]

//

---

[2] A third way of proving a *Monell* claim exists where the constitutional tort actually was committed by an official with final policy-making authority. *Gillette*, 979 F.2d at 1346. This case presents no such issue.

[3] The Sentinal Event Report is attached as Exhibit 6 to the Declaration of Anne M. Talcott ("Talcott Decl."), filed concurrently with these Motions.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

1.    *The Sentinel Event Report is not admissible to show Corizon's longstanding policy or custom.*

As this Court previously has recognized,[4] post-event evidence may sometimes be used to prove the existence of a policy or custom supporting *Monell* liability.  *See* Dkt. 109, p. 24 (citing *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)).  That rule is a narrow one, however, when understood in the broader context of the legal standards applicable to *Monell* claims premised on the existence of a policy or custom.  Specifically, that theory of *Monell* liability requires the plaintiff to prove "the existence of a widespread practice that . . . is *so permanent and well settled* as to constitute a 'custom or usage' with the force of law."  *Gillette*, 979 F.2d at 1348-49 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988)) (emphasis added).  Consistently, a policy giving rise to *Monell* liability *cannot* be proved by isolated instances of misconduct on the part of the defendant's agents.  *Henry*, 132 F.3d at 519 (citing *Tuttle v. Oklahoma City*, 471 U.S. 808, 823-24 (1985)).

Indeed, *Monell* itself held that § 1983 does not permit *respondeat superior* liability, *i.e.*, liability based solely on the fact that the defendant's employee or agent acted wrongfully.  As a result, *Monell* does not permit § 1983 liability to be based on an employee's failure to adhere to, or misapplication of the defendant's policy.  *See Canton v. Harris*, 489 U.S. 378, 387 (1989) ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*."); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985) ("[T]he carelessness of an employee in failing to follow a policy or in misunderstanding its

_____

[4] Corizon acknowledges that, in this Court's opinion denying Corizon's motion for summary judgment, this Court ruled for summary judgment that the Sentinel Event Report was post-event evidence that created a factual issue as to the existence of a *Monell* policy.  Dkt. 109, p. 16, n.9.  This Court also invited Corizon to revisit the issue of the Sentinel Event Report's admissibility in a motion *in limine* before trial.  *Id.*  Corizon does so now, and briefs the issue of the admissibility of post-event evidence more fully than the issue was briefed as it arose in the course of summary judgment briefing.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

meaning may establish the negligence of the employee but does not fasten liability on the governmental agency.").

Within that broader context, a closer examination of the cases that have held post-event evidence admissible to prove the existence of a *Monell* policy shows the narrow circumstances in which such evidence may be admitted. The leading case is *Grandstaff v. The City of Borger, Texas*, 767 F.2d 161 (5th Cir. 1985). In that case, several officers pursued in an extremely reckless manner a fugitive driving a pickup truck, including shooting at the truck when it refused to stop, before the officers had confirmed the identity of the driver or whether any passengers were in the truck. *Id.* at 165. The police pursued the fugitive onto a private ranch property on which the plaintiff lived with his family. *Id.* The plaintiff drove from his house towards the officers in order to assist them, but when he approached the officers they opened fire and killed him. *Id.*

The plaintiff's family brought a § 1983 claim. In determining whether the evidence supported a finding that the officers' shooting of an innocent bystander was pursuant to a policy giving rise to *Monell* liability, the court stated that

> The disposition of the policymaker may be inferred from his conduct after the events of that night. *Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies.* If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger. *If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do on August 11, 1981 was not acceptable to the police chief, changes would have been made.*
>
> This reaction to so gross an abuse of the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force.

*Id.* at 171 (emphases added). As the emphasized portions make clear, the court in *Grandstaff* focused on the *utter absence* of any critical reaction to the police misconduct in concluding that that reaction supported an inference that the police misconduct conformed to city policy.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

In every case in which the Ninth Circuit has cited *Grandstaff* for the proposition that post-event evidence is admissible to prove the existence of a *Monell* policy, the invocation of that rule has been limited to facts that show, as was shown in *Grandstaff*, a *complete absence* of any critical reaction to the subject misconduct.  In *McRorie v. Shimoda*, 795 F.2d 780, 781 (9th Cir. 1986), the plaintiff brought suit after a prison guard plunged a riot stick into the plaintiff's anus.  The court cited *Grandstaff* noting that, as the case came to the court, "the record [was] silent as to what action the officials took" in response to plaintiff's injury, but the plaintiff should be permitted on remand to "amend his complaint to make allegations about the officials' conduct."  *Id.* at 784.  That is, the court in *McRorie* acknowledged the possibility that the plaintiff could show, as the plaintiff in *Grandstaff* had shown, a complete absence of critical reaction to the misconduct on the part of policymakers.  *See id.*

Similarly, in *Larez v. City of Los Angeles*, 946 F.2d 630, 633-35 (9th Cir. 1991), the plaintiff brought suit after police used excessive force in the course of an illegal search of the plaintiff's house.  Following that misconduct, the police chief took no remedial action, but instead made public comments deriding the plaintiff, and suggesting that he approved of, and in fact had *ordered*, the misconduct.  *See id.* at 641 (police chief stated to newspaper reporters that the plaintiff "is probably lucky" that he only had his nose broken in the course of the illegal search, and that "I tell my officers to do something—and we do something and they [the jury] give them $90,000").  Based on *that* evidentiary record, the court in *Larez* noted that "[t]he jury properly could find [a *Monell*] policy or custom from the failure of [the police chief] to take ***any*** remedial steps after the violations."  *Id.* at 647 (emphasis added).  Again, the court's focus was on the complete absence of "any" remedial measures at all.  *See id.*

In *Henry v. County of Shasta*, the plaintiff was detained and mistreated by county police for an extended period of time after committing a minor traffic violation.  *See* 132 F.3d at 514-17 (setting out facts).  The court held—over a dissent—that evidence showing that the county police engaged in a similar incident of misconduct after receiving notice of the plaintiff's § 1983 claim

Page 5 -    CORIZON DEFENDANTS' SUPPLEMENTAL
             OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

was admissible to establish that the plaintiff's own mistreatment had been pursuant to a *Monell* policy. *Id.* at 518-19. That is, the court concluded that the fact that the county engaged in nearly the exact same misconduct after receiving notice of the plaintiff's lawsuit supported an inference that the policymakers had done *nothing* in response to the plaintiff's own incident, which, in turn, supported the inference authorized in *Grandstaff—i.e.*, that the misconduct was pursuant to a *Monell* policy. *Id.*

Finally, in *Gomez v. Vernon*, 255 F.3d 1118, 1122-23 (9th Cir. 2001), prison officials repeatedly retaliated against inmates "who filed lawsuits or availed themselves of grievance procedures." Citing *McRorie* and *Larez*, the court in *Gomez* noted that a policy of retaliation could be inferred from the fact that prison officials conducted no investigation of the inmates' complaints and took no steps to reprimand or discipline the offending officials. *Id.* at 1127. Again, the evidence that permitted the inference of a *Monell* policy was the lack of "*any*" remedial measures whatsoever. *See id.*

The foregoing makes clear that the rule the Ninth Circuit drew from *Grandstaff* and applied in *McRorie*, *Larez*, *Henry*, and *Gomez* holds that evidence showing a *complete absence* of any remedial measures following alleged misconduct supports an inference of a *Monell* policy allowing the misconduct. Indeed, relying on that string of cases, this Court recognized the narrow contours of that rule in its summary judgment order, reasoning that "[a *Monell*] policy or custom may be inferred if, after Green's allegedly unconstitutional treatment, Corizon officials *took no steps to reprimand or discharge White* or if it otherwise *failed to admit White's conduct was in error*." Dkt. 109, p. 24 (citing *McRorie*, 795 F.2d at 784).

Despite that articulation, however, this Court relied on the Sentinel Event Report to support the inference of a *Monell* policy. But there is a difference between (1) the *complete absence* of any remedial measures and (2) the *existence* of remedial measures that the defendant's agents arguably negligently administered. Nothing in any of the cases discussed above suggests that the rule in *Grandstaff* permits a jury to infer a *Monell* policy whenever the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

jury concludes that, even though the defendant *did* take remedial measures, in hindsight those measures did not go as far as they should have gone.

Indeed, the rule in *Grandstaff* cannot be extended that far without undermining a fundamental premise of *Monell* liability:  permitting a jury to infer a *Monell* policy whenever the jury concluded that remedial measures actually undertaken were somehow deficient would functionally eliminate the requirement that an entity's § 1983 liability be based on a *policy* of the entity.  Instead, the jury would be imposing § 1983 liability based on the entity's agents' arguably negligent failure to properly administer policies designed to *remedy* misconduct—*i.e.*, *respondeat superior* liability, which *Monell* prohibits.  *See Canton*, 489 U.S. at 387 ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*."); *Kranson*, 755 F.2d at 51 ("[T]he carelessness of an employee in failing to follow a policy or in misunderstanding its meaning may establish the negligence of the employee but does not fasten liability on the governmental agency.").

Here, the Sentinel Event Report and all related evidence are not properly admissible under the *Grandstaff* rule as it has been applied by the Ninth Circuit and articulated by this Court.  The Sentinel Event Report is not evidence of a complete absence of remedial steps following Plaintiff's injury, but the exact opposite:  it is evidence of the remedial steps that Corizon actually took, pursuant to an established Corizon policy designed to correct mistakes and prevent reoccurrence of sentinel events.  Likewise, the Sentinel Event Report does not approve of the conduct and circumstances leading up to and following Green's injury.  To the contrary, the Sentinel Event Report makes clear that "[a] review of the care issues surrounding this case *raise*[*s*] *a number of concerns that need to be addressed*" and goes on to recommend corrective actions for the site to implement.  (Ex. 6, p. 3).  Further, one of the employees who prepared the report, Tonya Mooningham, also acknowledged that the circumstances surrounding plaintiff's injury were not acceptable, initially indicating "reckless behavior" had been involved,

Page 7 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

(Ex. 6, p. 9), but later clarifying that she was not aware of the specific meaning of that term and had intended to indicate—still consistently with a disapproval of the circumstances leading to Green's injury—that Green had been misdiagnosed.  (Mooningham Dep. Tr. 38:18 -46:2).[5]

It may be, now that this litigation has drawn out substantially more factual detail about Green's injury than was known to Corizon employees at the time that they prepared the Sentinel Event Report, that the report could have recommended different or additional corrective actions. But that does not alter the fact that Corizon's *policy* is to perform a review of sentinel events in order to identify mistakes and take steps to ensure that those mistakes do not recur, and the Sentinel Event Report is evidence of that policy.  *Cf. Praprotnik*, 485 U.S. at 128 (noting in a § 1983 action based on alleged improper employment actions, putting aside question whether city supervisors acted improperly, the city's *policy* provided a procedural means of seeking redress for such conduct).

In light of that overarching policy, the Sentinel Event Report cannot properly be admitted as post-event evidence of Corizon's failure to take any remedial steps.  Corizon did not fail to take remedial steps; the Sentinel Event Report itself proves that.  To admit the Sentinel Event Report to allow the jury to identify corrective action that, in hindsight, the jury believes should have been taken, and to further allow the jury to infer from those perceived deficiencies in the report a *policy* on the part of Corizon countenancing the conduct not identified in the report, would extend far beyond the bounds of the rule set out in *Grandstaff*.  It would allow the jury to impose *respondeat superior* liability on Corizon for the perceived negligent failure of its employees to adequately implement Corizon policy.  *Monell* prohibits such a result.  *Kranson*, 755 F.2d at 51 ("[T]he carelessness of an employee in failing to follow a policy or in misunderstanding its meaning may establish the negligence of the employee but does not fasten liability on the governmental agency.").

---

[5] Ex. 24 to the Talcott Decl.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

In the absence of a basis in the case law for admitting the Sentinel Event Report as evidence, the report amounts to evidence offered to show post-injury measures "that [allegedly] would have made an earlier injury or harm less likely to occur," and the Sentinel Event Report therefore is not admissible to prove culpable conduct on the part of Corizon. Fed. R. Evid. 407 (subsequent remedial measures are not admissible to prove culpable conduct). This Court should exclude from evidence in this case for any such purpose the Sentinel Event Report and all related evidence, testimony, and argument.

> 2.    *The Sentinel Event Report is not admissible to prove ratification on Corizon's part.*

As noted above, the second possible way that Plaintiffs could prove their *Monell* claims in this case is by evidence showing that an individual with policymaking authority at Corizon expressly ratified the alleged misconduct surrounding Green's injury. More specifically, the Plaintiffs must prove "that a policymaker approve[d] a subordinate's decision *and the basis for it*[.]" *Gillette*, 979 F.2d at 1348 (emphasis in original). The case law is clear that ratification cannot be proved by the failure to expressly denounce an employee's conduct. *See Praprotnik*, 485 U.S. at 130 (noting that ratification could be shown "if a particular decision by a subordinate was cast in the form of a policy decision and *expressly approved* by the supervising policymaker" but that "the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority" (emphasis added)); *Gillette*, 979 F.2d at 1348 ("At most, [the plaintiff] has established that the City Manager did not overrule a discretionary decision by the [subordinate] . . . . There is no evidence that the City Manager made a deliberate choice to endorse the [subordinate's] decision and the basis for it.").

Here, the Sentinel Event Report and any related evidence contain nothing showing express approval of any conduct surrounding Green's injury or the basis for that conduct. Thus, the Sentinel Event Report contains no evidence relevant to show any ratification on Corizon's part of any of that conduct, and the Sentinel Event Report should be excluded on that basis as well.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

      3.      *The Sentinel Event Report and any related evidence should be excluded because the probative value of that evidence, if any, is substantially outweighed by the danger that it would confuse the issues and mislead the jury.*

As Corizon explained in detail above, although a jury may infer the existence of a *Monell* policy from the *complete absence* of any remedial measures taken following misconduct, no basis in the case law exists for allowing a jury to audit remedial measures that actually were taken and infer the existence of a *Monell* policy to the extent that, in the jury's view, those remedial measures failed to go as far as they should have gone. The Sentinel Event Report represents the remedial measures that Corizon actually took following Green's injury, not a policy for refusing to take any remedial measures at all. Permitting the jury to use evidence showing that Corizon actually took remedial measures to infer that Corizon has a policy for not taking remedial measures would substantially confuse and mislead the jury regarding the findings it must make in order to impose *Monell* liability on Corizon. As a result, admitting that evidence would impose substantial, incurable prejudice on Corizon. In light of that, this Court should additionally exclude the Sentinel Event Report and all related evidence under Fed. R. Evid. 403.

      4.      *At a minimum, this Court should exclude any evidence relating to Tonya Mooningham's indication of "reckless behavior/choice" in the Sentinel Event Report.*

Even if this Court determines that the Sentinel Event Report and related evidence are generally admissible, this Court should still exclude evidence of the Sentinel Event Report form indicating that "reckless behavior/choice" was involved in Green's injury and any related evidence and testimony, (Ex. 6, p. 9.), including specifically the deposition testimony of Tonya Mooningham. That evidence should be excluded because (1) it is lay opinion testimony that fails to satisfy the admissibility requirements of Fed. R. Evid. 701, and (2) in any event, the probative value of that evidence is substantially outweighed by the risk of unfair prejudice to Corizon, confusion of the issues, and misleading the jury, Fed. R. Evid. 403.

First, the characterization of conduct involved with Green's injury as "reckless" should

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

be excluded because it is lay opinion testimony that is inadmissible under Fed. R. Evid. 702. That rule provides that a lay witness may offer opinion testimony only if the testimony is "helpful to clearly understanding the witness's testimony or to determining a fact in issue."  Fed. R. Evid. 701(b).

Here, the "fact in issue" to which Mooningham's characterization of conduct arguably is relevant is the question—ultimately for the jury to decide—whether Corizon employees at the Lane County jail were "deliberately indifferent" to Green's serious medical needs.  *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Mooningham was not present at the Lane County jail on February 12, 2013, and thus does not have first-hand knowledge of any of the events of that day.  Instead, Mooningham—just as the jury will do in this case—assessed the circumstances surrounding Green's injury from a record of evidence that she reviewed after the fact.  Mooningham initially selected "reckless" to characterize her assessment of those circumstances, but later clarified in her deposition that she had not truly understood the meaning of that word, and had meant to indicate only that Green had been misdiagnosed.  (Ex. 24, pp. 38:18 -46:2).

Because Mooningham's assessment of the circumstances surrounding Green's injury was not based on any first-hand knowledge of the events at issue, Mooningham's initial characterization of the conduct involved (which she later explained was based on a mistaken focus on the outcome) cannot possibly be helpful to the jury in determining any facts in issue in this case.  Mooningham is no more competent than the jury itself to review the evidence in this case and draw conclusions regarding the nature of the conduct involved.  Mooningham's initial conclusion adds nothing relevant to assist the jury in drawing its own conclusions from that evidence.  Offering Mooningham's characterization on the Sentinel Event Review form would be no different than selecting at random an individual from the gallery of the courtroom and asking him or her to characterize the conduct involved; such lay opinion would clearly not be admissible.  Because Mooningham's initial characterization on the Sentinel Event Review form

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

cannot satisfy the admissibility requirements of Fed. R. Evid. 702, it must be excluded.

That evidence also must be excluded because it is an improper opinion on an ultimate legal issue.  No evidence whatsoever indicates that the word "reckless" on the Sentinel Event Review form carries a meaning that in any way is analogous to the legal meaning of the phrase "deliberate indifference."  In that way, the very relevance of the Sentinel Event Review form to the issue of "deliberate indifference" rests on a conditional factual predicate that cannot possibly be proved.  *See* Fed. R. Evid. 104(b) (describing conditional admissibility).  In any event, however, the Ninth Circuit has held that, while opinion testimony is not inadmissible simply "because it embraces an ultimate issue to be decided by the trier of fact," opinion testimony *is* inadmissible if it amounts to a legal conclusion, *i.e.*, if the testimony constitutes "an opinion on an ultimate issue of law."  *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).  To the extent that Mooningham's characterization is relevant to the issue of deliberate indifference, it amounts to an improper and inadmissible legal conclusion, and should be excluded.

Finally, given the likelihood that the jury would improperly infer Mooningham's characterization to be an admission of deliberate indifference, offering the Sentinel Event Review form risks confusing the issues and misleading the jury in a way that would visit substantial prejudice on Corizon.  Fed. R. Evid. 403.  More specifically, the form risks drawing the jury's attention away from the task of independently assessing all of the evidence in this case and determining whether that evidence establishes deliberate indifference consistently with this Court's legal instructions.  Instead, the form would simply invite the jury to impose liability because Corizon itself at one point used the word "reckless" to characterize the conduct surrounding Green's injury, with no evidence whatsoever as to what relation the word "reckless" on the Sentinel Event Review form bears to the legal definition of "deliberate indifference."  For that reason, this Court also should exclude Mooningham's characterization of the conduct surrounding Green's injury under Fed. R. Evid. 403.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

II.     **Motion** *in limine* **No. 7:  To preclude evidence or testimony concerning the employment history or alleged prior bad acts of Kirstin White, PA.**

Corizon moves this court for an order *in limine* directing Plaintiffs and their witnesses and attorneys not to directly or indirectly disclose or attempt to convey to the jury in any manner any testimony or evidence concerning the employment history or alleged prior bad acts of PA Kirstin White, as it constitutes inadmissible character evidence.  *See* Fed. R. Evid. 404(b). Specifically, Corizon seeks to exclude evidence concerning 1) White's termination of employment from Oregon Neurosurgery Specialists; 2) White's prior disciplinary history while at Corizon resulting from her cursing at a supervisor over a dispute regarding on-call pay; and 3) White's past history of prescribing herself medication, voluntarily relinquishing her DEA license, participating in counseling, and her change of answer to the question on her application with Corizon asking if she had ever been involved in an "impaired physician program."

This court should exclude evidence of items (1)-(3) above whether in the form of documents produced in discovery or through the testimony of witnesses, because it is not only inadmissible character evidence, but irrelevant and more prejudicial than probative. *See* Fed. R. Evid. 401, 402, 403, and 404(b).

A.     **Evidence regarding White's employment history and self-medication is inadmissible under Fed. R. Evid. 404(b)(1) because such evidence is inadmissible character evidence.**

Fed. R. Evid. 404(b) prohibits evidence of other crimes, wrongs, or acts to prove a person's character "in order to show that on a particular occasion the person acted in accordance with the character."  Evidence of other bad acts is not admissible to prove character or that a defendant acted in accordance with that character unless the plaintiffs can set forth some other relevant purpose for admitting the evidence.  No other relevant purpose exists in this instance.  The only purpose Plaintiffs could have in attempting to admit the above described evidence is to paint Kirstin White as a bad person who has allegedly made bad choices and that on February 12, 2013, she made more bad choices in accordance with her character.  This purpose is expressly prohibited by Fed. R. Evid. 404.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**B.    Evidence regarding White's employment history and self-medication is inadmissible under Fed. R. Evid. 402 and 403 because it is irrelevant and unfairly prejudicial.**

Next, even if Plaintiffs could articulate an acceptable purpose for admitting this evidence, it should still be excluded because it is not relevant and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. *See* Fed. R. Evid. 403.  Evidence is relevant if it "has any tendency to make a fact more or less probable than it would without evidence; and the fact is of consequence to determining the action."  Fed. R. Evid. 401.

None of the evidence outlined in the first paragraph of this motion involves facts of consequence to determining this action.  White's position with Oregon Neurosurgery ended because of what she described as "personality issues."  (White Dep. Tr. 15:9-15.)[6]  The evidence does not demonstrate that White's termination had anything to do with her qualifications or the quality of her performance.  As such, reference to her employment with the company and her termination are not facts of consequence to determining Plaintiffs' claims here.  Equally irrelevant is the fact that White had a disagreement with her supervisor at Corizon and cursed at him on the phone or White's past problem with self-medicating following surgery.

There are no allegations that either insubordination by White or an alleged substance abuse problem led to Green's injuries and death or that Corizon should not have hired White because of her past history.  At issue in this lawsuit are Plaintiffs' allegations that White rendered inadequate medical care to Green.  None of the evidence this motion seeks to exclude is related to medical care of Green or any other patient White has encountered during her time as a PA.  Thus, Plaintiffs should be precluded from submitting any evidence on these topics at trial.

Last, even if this evidence were relevant under Fed. R. Evid. 402, and Corizon maintains it is not, it should still be excluded because it is more prejudicial than probative.  Evidence of this nature would only inject collateral issues into the trial that would confuse and mislead the jury and

---

[6] Ex. 7 to Talcott Decl.

Page 14 -    CORIZON DEFENDANTS' SUPPLEMENTAL OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

create a very serious danger of unfair prejudice against White.  *See* Fed. R. Evid. 403.

### III.    Motion *in limine* No. 8:  To exclude evidence, argument, and comments regarding Kirstin White's deposition testimony that she was aware that Corizon paid inmate hospital bills.

Corizon moves this Court to exclude all evidence, testimony, and argument relating to Kirstin White's deposition testimony that she believed that Corizon was required to pay the hospital bills of all custodial inmates sent to the hospital from the Lane County jail, regardless of which agency had arrested the inmate.  (White Dep. Tr. 64:17-65:6).[7]  White's subjective belief in that regard was incorrect; because Green was in the custody of the Eugene police, the Eugene police would have been responsible for any bills associated with hospitalization of Green. Corizon recognizes that, in ruling on Corizon's summary judgment motion, this Court stated that White's testimony in that regard, "*correct or not*, is evidence of White's adherence to Corizon policy that resulted in injury to" Green.  Dkt. 109, p. 26 n.12.  Corizon respectfully disagrees; the fact that White was *incorrect* in her belief that Corizon would be responsible for Green's hospital bills makes all the difference in determining whether that testimony is relevant to Plaintiffs' *Monell* claims.

In determining whether an entity is liable under *Monell* for its policies, it is the policy itself, not the subjective beliefs or misapplication of those who are charged with implementing the policy, that is the focus of the analysis.  More specifically, as explained above, *Monell* liability cannot be based on an employee's misconduct if that conduct flowed from a failure to adhere to or an erroneous application of the defendant's policy.  *Canton*, 489 U.S. at 387 ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*."); *Kranson*, 755 F.2d at 51 ("[T]he carelessness of an employee in failing to follow a policy or in misunderstanding its meaning may establish the negligence of the

---

[7] Ex. 7 to Talcott Decl.

Page 15 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

employee but does not fasten liability on the governmental agency.").  In the specific context of this case, the fact that White was *mistaken* in her belief that Corizon would be responsible for hospital bills is precisely what prevents White's testimony from being relevant to prove the existence of any Corizon policy.  To allow the jury to infer the existence of a *Monell* policy based on that mistaken belief would impose *respondeat superior* liability, which *Monell* prohibits.  Thus, this Court should prevent White's testimony in that regard from being offered to prove the existence of any Corizon policy.

Additionally, admitting that evidence for any other purpose poses a substantial risk that the jury will do precisely what it is not permitted to do and infer that White's mistaken belief is evidence of a Corizon policy.  In light of that substantial risk of prejudice, confusion of the issues, and misleading the jury, this Court should exclude White's testimony regarding Corizon's responsibility for hospital bills under Fed. R. Evid. 403.  At a minimum, this Court should give the jury a limiting instruction making clear that they may not draw any inferences from White's testimony regarding the existence of a Corizon policy.

## IV.    Motion *in limine* No. 9:  To preclude evidence of media reports written about or involving Corizon.

Corizon moves this Court for an order to exclude evidence of media reports written about or involving Corizon, including the following newspaper articles: "As Health Care in Jails Goes Private, 10 Days Can Be a Death Sentence" (*The New York Times*, dated February 27, 2005),[8] "Company's Struggles Highlight Challenges of Inmate Care" (*The New York Times*, dated January 19, 2015),[9] and "Injured Inmate Files Lawsuit" (*The Register-Guard*, dated October 24, 2013),[10] for two reasons.  First, such evidence is inadmissible and should be excluded because it is hearsay that does not fall under any exception to the hearsay rule (Fed. R. Evid. 802).  Second,

---

[8] Ex. 8 to Talcott Decl.

[9] Ex. 9 to Talcott Decl.

[10] Ex. 10 to Talcott Decl.

Page 16 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

such evidence is also not admissible under Fed. R. Evid. 404(b)(1).

### A. Media reports are inadmissible hearsay.

The Court should exclude evidence of media reports written about or involving Corizon because such reports are inadmissible hearsay that do not fall within any exception to the hearsay rule. Fed. R. Evid. 801 and 802. *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (excluding such evidence on grounds that it was hearsay that did not fall within any exception); *Macy's, Inc. v. Strategic Marks, LLC*, 2014 U.S. Dist. LEXIS 168376 (N.D. Cal. 2014) (same).

In *Larez*, the Ninth Circuit addressed the admissibility of newspaper articles in a case alleging constitutional violations against six individual Los Angeles Police Department ("LAPD") officers, LAPD Police Chief Gates, and the City of Los Angeles. The jury found in favor of the plaintiffs as to all defendants. On appeal, Chief Gates challenged the admission of five statements that had been reported in newspaper articles and attributed to him. The statements allegedly had been made in the courthouse corridor after Gates had testified, and all five were substantially corroborated in three separate newspapers. The trial court admitted the statements, finding them relevant nonhearsay. The court also engaged in the balancing test of Fed. R. Evid. 403, and concluded that the probative value of the statements was not exceeded by their prejudicial effect, as they were what the court termed "invited prejudice."

The Ninth Circuit reversed, but only on the issue of hearsay. Glossing over Chief Gates's statements, which would have been admissible on their own, the court focused on the implicit statements of the reporters that "Gates said this!" *Larez*, 946 F.2d at 642. Noting that newspaper articles are inadmissible hearsay as to their content, the court reasoned that the "only exception which colorably applies to these hearsay statements is [*former*] Fed. R. Evid. 803.24"—the residual hearsay exception. *Id.*[11] Under that exception (now at Fed. R. Evid. 807), hearsay is

---

[11] That rule has since been moved to Fed. R. Evid. 807, but it remains substantively unchanged.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

admissible if it has "equivalent circumstantial guarantees of trustworthiness" and is (a) offered as evidence of a material fact, (b) more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purposes of evidence rules and the interests of justice would be served by the admission.

Walking through those requirements, the court first observed that, as a general rule, newspaper and other media reports lack the "circumstantial guarantees of trustworthiness" required for admission under Fed. R. Evid. 807. *Larez*, 946 F.2d at 643. The court concluded, however, that in the "extraordinary circumstances" of the case, where three independent newspapers all attributed the same quotations to Chief Gates and Chief Gates himself did not dispute that he had made the statements, the statements carried such guarantees of trustworthiness. *Larez*, 946 F.2d at 643. The court also noted that the statements were offered as evidence of a material fact and the interests of justice supported admissibility. The court also held, however, that the newspaper articles were nonetheless not admissible because they were not the "best available evidence" of Gates's statements. *Id.* at 644. The newspaper articles were thus inadmissible hearsay that should have been excluded.

Media accounts or articles about or involving Corizon have the same admissibility problems noted in *Larez*. Along with being hearsay if offered to prove the truth of the matter asserted, such articles or accounts likely also contain at least some skewed facts or omit others and thus do not contain a "circumstantial guarantee[] of trustworthiness." Fed. R. Evid. 807. *See Larez*, 946 F.2d at 643 ("it is not unknown for reporters to stretch some facts or omit others") (quoting with approval dissent in *May v. Cooperman*, 780 F.2d 240 (3d Cir. 1985)).

In addition, the general purposes of the evidence rules and the interests of justice would not be served if the Court admitted evidence of accounts or incidents involving Corizon in a circumstance under which Corizon would not have the ability to cross-examine the article's author or those quoted within such articles. For example, the two articles noted above from *The New York Times* both contain detailed descriptions of out-of-state prison incidents and lawsuits

Page 18 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

(some many years old) involving Corizon or one of its predecessors.  Admitting the one-sided articles that contain those descriptions could lead the jury to believe that the content within the articles and the factual basis of the lawsuits noted are factually accurate in all respects, including any "spin" put on such articles or out-of-state litigation by the articles' authors.  Such misleading of the jury does not serve the interests of justice.

Admitting the article from *The Register-Guard* presents similar problems.  That article contains one author's version of the complaint filed in this case, and no treatment is given to Corizon's defenses.  As with *The New York Times* articles, admitting the article could lead the jury to believe that the complaint filed in this case provides the most accurate account of exactly what happened as that is all upon which the author reported.  Again, such misleading of the jury does not support the interests of justice.

Finally, Plaintiffs also will not be able to show that articles or accounts satisfy the best-evidence rule.  As noted above, the articles contain accounts of out-of-state incidents involving Corizon.  The best evidence of such incidents would be testimony from the people involved, including the authors, not the articles themselves.

As held in *Larez*, not even the residual-hearsay exception warrants admitting media articles written about or involving Corizon.  The Court should therefore exclude them.

### B.    Media reports are not admissible under Fed. R. Evid. 404(b)(1).

Under Fed. R. Evid. 404(b)(1), evidence of other acts is not admissible to prove a person's character in order to show that he or she (or in this case, it) acted in accordance with that character on a particular occasion.  In the Ninth Circuit, "[t]he test for admitting evidence under 404(b) is whether: 1) it tends to prove a material fact; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the act; and 4) where knowledge and intent are at issue, the act is similar to that charged."  *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288-89 (9th Cir. 1996).  In addition, "[t]he probative value of the evidence must also not be substantially outweighed by the danger of unfair prejudice."  *Id.* at

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

1289.

Media reports do not meet the Ninth Circuit's test because such evidence does not satisfy any of the four prongs. First, media reports do not "prove a material fact" or "support a finding that [Corizon] committed the act." At best, such evidence provides only one-sided accounts of Corizon's acts in other states at other times. Such uncorroborated accounts do not "prove" anything other than that a reporter reported on them, and thus also do not prove that Corizon committed the acts in question here. Such evidence thus fails to meet the first and third prongs of the test.

In addition, media reports of incidents involving Corizon, particularly the ones noted in the 2005 *The New York Times* article, detail acts that are too remote in time to the present case or are not similar to the claims in this case regarding acts done in Lane County. Such evidence therefore does not meet the first and fourth prongs of the test either, and it should be excluded.

## V.    Motion *in limine* No. 10:  To preclude evidence of or filings from prior or contemporaneous lawsuits against Corizon.

Corizon moves this Court for an order to exclude evidence of or filings from prior or contemporaneous lawsuits against Corizon, including reports from special masters filed in other lawsuits, such as the Special Master's Report dated February 2, 2012,[12] and entered in the case *Balla, et al. v. Idaho State Board of Correction, et al.*, D. Idaho Case No. CV 81-cv-01165, on March 19, 2012. Such evidence should be excluded for three reasons: (1) any such evidence is irrelevant because it makes no fact of consequence to Plaintiffs' claims more or less probable (Fed. R. Evid. 401 and 402); (2) such evidence is not admissible under Fed. R. Evid. 404(b)(1); and (3) even if such evidence is relevant or admissible character evidence, such evidence should be excluded under Fed. R. Evid. 403 because it is prejudicial, would confuse the jury, and would waste the court's time.

//

---

[12] Ex. 11 to Talcott Decl.

Page 20 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**A.    Evidence regarding other lawsuits is inadmissible under Fed. R. Evid. 401 and 402 because it is irrelevant to the claims in this case.**

Under Fed. R. Evid. 402, irrelevant evidence is inadmissible.  Under Fed. R. Evid. 401, evidence is only relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Evidence of other lawsuits against Corizon, which involve different plaintiffs, different circumstances, and different harm, do not fall within that scope of relevance because there is no nexus between the other lawsuits and this case.  *See generally Ross v. Am. Red Cross*, 2012 U.S. Dist. LEXIS 77475 (S.D. Ohio 2012) (granting a motion *in limine* to exclude other-lawsuit evidence in part on grounds that such evidence was irrelevant to determination of whether the defendants acted wrongfully in the case before the court); *Prouty v. Nat'l R.R. Passenger Corp.*, 99 F.R.D. 545, 549 (D. D.C. 1983) (denying motion to compel interrogatory answers related to other lawsuits on grounds that issues raised in such lawsuits were not relevant to the case before the court); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 139 (W.D. Okla. 1977) (same); *Wood v. McCullough*, 45 F.R.D. 41, 42 (S.D.N.Y. 1968) (same); *Zeke's Distrib. Co. v. Brown-Forman Corp.*, 779 P.2d 908 (Mont. 1989) (admission of other-lawsuit evidence was improper, new trial granted).  Thus, such lawsuits do not show facts that are "of consequence" in this matter, which involves claims unique to the Plaintiffs.

The *Ross* case provides a good example of why evidence of other lawsuits should be excluded under Fed. R. Evid. 401 and 402.  That case involved a claim for negligence related to a phlebotomist who attempted to draw the plaintiff's blood.  The defendant American Red Cross moved to exclude evidence of other lawsuits in which it was involved, and the plaintiff argued that such evidence was relevant to foreseeability and proximate cause.  The court determined that such evidence was irrelevant and excluded it in part under Fed. R. Evid. 402 on the grounds that such lawsuits did not "inform[] the issue" of whether the defendant committed the tort that plaintiff alleged.  *Ross*, 2012 U.S. Dist. LEXIS 77475 at *15.

//

Page 21 -    CORIZON DEFENDANTS' SUPPLEMENTAL
OMNIBUS MOTIONS IN LIMINE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

The same reasoning applies in this case. Evidence of or filings from other lawsuits against Corizon is of "no consequence" in determining whether or not the Defendants committed the alleged bad acts in Lane County of which Plaintiffs complain. Such evidence is thus irrelevant under Fed. R. Evid. 401 and should be excluded under Fed. R. Evid. 402.

**B.      Evidence of other lawsuits is inadmissible under Fed. R. Evid. 404(b)(1) because such evidence is inadmissible character evidence.**

Under Fed. R. Evid. 404(b)(1), evidence of other acts is not admissible to prove a person's character in order to show that he or she (or in this case, it) acted in accordance with that character on a particular occasion. Evidence of and filings from other lawsuits do not meet the Ninth Circuit's test as articulated in *Tsinnijinnie*, 91 F.3d at 1288-89, because such evidence does not satisfy any of the four prongs. First, evidence from other lawsuits does not "prove a material fact" or "support a finding that [Corizon] committed the act." At best, such evidence only shows that at some point, other individuals brought claims against Corizon. That does not "prove" anything or "support [any] finding." Such evidence thus fails to meet the first and third prongs of the test.

In addition, the other lawsuits detail acts that are too remote in time to the present case or are not similar to the claims in this case regarding acts done in Lane County. Such evidence therefore does not meet the first and fourth prongs of the test either, and it should be excluded.

**C.      Evidence of other lawsuits is inadmissible under Fed. R. Evid. 403 because such evidence is highly prejudicial, would confuse and mislead the jury, and would waste time.**

Under Fed. R. Evid. 403, a court may exclude relevant evidence if the court finds that the probative value of such evidence is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. In matters involving evidence of other lawsuits, courts routinely exclude such evidence under Fed. R. Evid. 403 because the probative value of such lawsuits is minimal compared to the danger of unfair prejudice, improperly misleading and confusing the jury, and the waste of time that such evidence would effect.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

1.    *Evidence of other lawsuits is highly prejudicial and would confuse and mislead the jury.*

The court in *Ross v. Am. Red Cross*, 2012 U.S. Dist. LEXIS 77475 (S.D. Ohio 2012), also addressed the prejudicial effect that evidence of other lawsuits can have to a matter.  As noted above, the Red Cross filed a motion *in limine* to exclude evidence related to other lawsuits against the Red Cross.  The court determined that even if the other lawsuits were relevant to the plaintiff's case, and the court did not believe that they were, such relevance was still "substantially outweighed by the danger of unfair prejudice and confusion of the issues."  *Ross*, 2012 U.S. Dist. LEXIS 77475 at *15.  The court wrote:

> Unsubstantiated allegations from other individuals, in other cases and under different circumstances, are of minimal probative value in determining whether the Red Cross's alleged negligence proximately caused Plaintiff's injuries in this case.  This value is outweighed by the risk that the jury will draw improper conclusions from other incidents in which the Red Cross's actions allegedly caused injuries * * * If Plaintiff seeks to show the jury that her injuries were possible from the Red Cross's alleged negligence, she has far better ways of doing so.

*Id.* at **16-17 (internal citations and parentheticals omitted).

The court in *First Bancorp Mortgage Corp. v. Giddens*, 251 Ga. App. 676, 555 S.E.2d 53 (Ga. App. 2001), also addressed similar issues.  In that case, the plaintiff sought to introduce evidence of other lawsuits against the defendant and his law firm in order to show a continuing course of conduct that would support punitive damages.  The Georgia Court of Appeals determined that the trial court had properly excluded such evidence because "admitting information about the other lawsuits targeting [defendant] and his law firm would likely have engendered a substantial risk of creating undue prejudice or confusion, especially since the lawsuits involved unrelated transactions…."  *First Bancorp*, 251 Ga. App. at 678.

The Fifth Circuit reached a similar conclusion in *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.*, 491 F.2d 1239 (5th Cir. 1974).  In that case, the plaintiff sought to introduce evidence of other lawsuits involving the defendant to support the contention that the defendant knew or should have known that a product was ineffective.  The court concluded that the most

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

that such items would indicate was that "absent third parties" had made similar claims against the defendant. *Id.* at 1243. The court considered such evidence to have "faint probative value" but "high potential for unfair prejudice" and determined that it was well within the trial court's discretion to exclude such evidence. *Id. See also Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, 2014 U.S. Dist. LEXIS 123345, *8 (D. Ariz. 2014) ("Even if one could cobble up some theory upon which [the other lawsuits involving defendant had] some relevance and is not hearsay, [the] probative value is minimal, and it is substantially outweighed by the risk of confusing the issues, misleading the jury, undue delay, and wasting the time of the court, the jury, and the litigants. It would also be unfairly prejudicial to [defendant].").

The reasoning of the courts in *Ross*, *First Bancorp*, and *Yellow Bayou* applies in this case. Any value that other litigation or findings from other litigation may have to this matter is substantially outweighed by the unfair prejudice to Corizon and the confusion that such other matters will cause the jury. Evidence of other lawsuits could, for instance, lead jurors to punish Corizon for the injuries suffered in the other cases and not those suffered by the Plaintiffs. The jury also could improperly determine Corizon's liability based on the existence of unproven allegations in the other matters rather than the facts of this case. That is particularly alarming for other lawsuits that have ended in settlement with no admission of liability. The risk of punishing Corizon for acts not involved here where a Plaintiff never proved liability, or having the jury make a determination based on other acts outside this case, outweighs any minimal relevance that the other lawsuits, which involve different plaintiffs, different circumstances, and different harm, may have. The Court thus should exclude the evidence of other lawsuits under Fed. R. Evid. 403.

> 2.    *Evidence of other lawsuits would create mini-trials in this case and offer little, if any, probative value, thus wasting time.*

In addition to the prejudicial effect and jury confusion that evidence of other lawsuits would create, introducing evidence of other lawsuits also will waste time. If the Court were to allow Plaintiffs to introduce evidence of other lawsuits, Corizon would have to introduce rebuttal

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

evidence to disprove the causes of the other, unrelated, and unproven allegations.  Such evidence would distract the jury from the limited issues involved in this case and would waste the court's time as Corizon would have to refute, explain, and distinguish each lawsuit and challenge the similarities alleged, effectively turning this trial into a series of mini-trials on each of the offered other incidents.  For that additional reason, the Court should grant this motion.  *See generally Ross*, 2012 U.S. Dist. LEXIS 77475, *16 (granting motion *in limine* to exclude other lawsuit evidence and noting that such evidence may "invite mini-trials about facts and circumstances" not necessarily similar to the case before the court); *Ramos-Melendez v. Valdejully*, 960 F.2d 4, 6 (1st Cir. 1992) (affirming decision of trial court to exclude testimony of other lawsuits against defendant under Fed. R. Evid. 403 on grounds that for such evidence to be significant, "it would be necessary in effect to try [the other lawsuits], as well as the plaintiff's").

## VI.   Motion *in limine* No. 11:  To preclude evidence or testimony from lay witnesses regarding the proper care and treatment of Green's injuries.

Corizon moves this Court to exclude opinion testimony from lay witnesses, including Amanda Sustaire, Tracy Tomseth, Guy Balcom, James Ball, Robert Dotson, Kelly Rahm, Richard Peters, Robert Ralph, Donald Burnette, Dan Correll, Douglas Ledbetter, and Angela Dodds, regarding the diagnosis, cause, extent, or proper treatment of Green's injuries.[13]  None of these individuals are medical doctors or other medical professionals.  This motion is made under Fed. R. Evid. 701 and Fed. R. Evid. 403.

---

[13] Amanda Sustaire is a friend of the late Kelly Green.  (Sustaire Dep Tr., p. 10:7-11) (Ex. 12 to Talcott Decl.).  Tracy Tomseth is a court clerk or was at the time of the incidents related to this lawsuit.  (Tomseth Dep. Tr., p. 6:11-16) (Ex. 13 to Talcott Decl.).  Guy Balcom and James Ball are or were police sergeants at the time of the incidents related to this lawsuit.  (Balcom Depo., p. 5:11-13); (Ball Dep. Tr., p. 5:9-11) (Exs. 14-15 to Talcott Decl.).  Robert Dotson, Kelly Rahm, Richard Peters, Robert Ralph, Donald Burnette, Dan Correll, and Angela Dodds are or were deputy sheriffs at the time of the incidents related to this lawsuit.  (Dotson Dep. Tr., p. 6: 9-13; Rahm Dep. Tr., p. 6:1-3; Peters Dep. Tr., p. 6:16-17; Ralph Dep. Tr., p. 6:18-20; Burnette Dep. Tr. p. 7:7-8; Correll Dep. Tr., p. 6:2-13; Dodds Dep. Tr., p. 6:21-23).  (Exs. 16-22 to Talcott Decl.) Douglas Ledbetter is a police officer.  Ledbetter Dep. Tr., p. 5:2-16.  (Ex. 23 to Talcott Decl.)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

The Court should exclude lay witness opinion testimony regarding the diagnosis, cause, extent, or proper treatment of Green's injuries because lay witnesses are not qualified medical experts permitted to opine on such matters and the undue prejudice of admitting such evidence outweighs any minimal probative value that such evidence may have.

### A.    Lay witnesses lack the expertise to testify about the diagnosis, cause, extent, or proper treatment of Green's injuries.

Opinion testimony about the diagnosis, cause, extent, or proper treatment of Green's injuries must come from a qualified medical expert, not lay witnesses.  Fed. R. Evid. 701 (lay witness opinion testimony must not be based on scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702); Fed. R. Evid. 702.  *See also State v. Hite*, 131 Or. App. 59, 62-63 (1994), *rev. den.*, 320 Or. 508 (1995) (lay defendant not competent to testify regarding causation of symptoms); *Carpenter v. Sullivan*, 2014 U.S. Dist. LEXIS 30156, *6 (E.D. Cal. 2014) (lay plaintiff not competent to testify regarding medical records or medical condition); *Sutherland v. Correctional Officers A. Fernando, et al.*, 2014 U.S. Dist. LEXIS 177346, *12-13 (E.D. Cal. 2014) (lay plaintiff not competent to testify regarding a diagnosis, prognosis, opinions, inferences, or causation of alleged injuries because he had no medical expertise or background); *Wingster v. Head*, 318 Fed. Appx. 809, 815 (11th Cir. 2009) (expert testimony required for medical causation issues).

In *Hite*, the court held that the defendant could not testify about the effect medications had on his ability to communicate, reasoning that "[t]here is no evidence that defendant had the expertise and training that would make him competent to testify that, in his opinion, the medication was causing the symptoms about which he was complaining." *Id.*  A medical professional's expertise was necessary to establish that opinion.

The reasoning in *Hite* applies in this case.  Similarly to *Hite*, the lay witnesses set forth above lack medical training and are not qualified to testify regarding the diagnosis, cause, extent, or proper treatment of Green's injuries.  Such testimony falls within the sole ken of an expert witness, and thus, such lay opinion testimony should be excluded.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**B.     Lay opinion testimony regarding the diagnosis, cause, extent, or proper treatment of Green's injuries should be excluded under Fed. R. Evid. 403.**

Under Fed. R. Evid. 403, a court may exclude relevant evidence if the court finds that the probative value of such evidence is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time. The Court should exclude any lay opinion testimony regarding the diagnosis, cause, extent, or proper treatment of Green's injuries under Fed. R. Evid. 403 because the probative value of such evidence (minimal at best) is outweighed by the confusion of the issues and the misleading of the jury that such information would cause.

None of the noted lay witnesses are competent to provide an opinion regarding the diagnosis, cause, extent, or proper treatment of Green's injuries. Allowing them to testify on those subject areas could improperly lead the jury to believe that such witnesses *are* competent to so testify, thus giving such testimony an undeserving expert weight. Thus, for that additional reason, the Court should exclude such evidence under Fed. R. Evid. 403.

**VII.    Motion *in limine* No. 12: To Preclude Evidence or Testimony related to the claims against dismissed Defendants Pleich and Keldie.**

Evidence related to claims that were dismissed on summary judgment should not be admissible at trial, as such evidence is not relevant and the probative value is substantially outweighed by "unfair prejudice, confusion of the issues, or misleading the jury . . . ." *Guillory v. Tilton*, 2012 U.S. Dist. LEXIS 86383, at *6-7 (E.D. Cal. June 20, 2012) (barring evidence relating to dismissed claims); *Hall v. Sterling Park Dist.*, 2012 U.S. Dist. LEXIS 42334, at *23 (N.D. Ill. Mar. 28, 2012) ("any evidence, testimony, or argument relating to Plaintiff's claims that were dismissed at summary judgment is not relevant to the remaining claims before the jury. The information would only serve to confuse the jury and prolong the trial . . . ."). Therefore, evidence related to any alleged culpability or malfeasance of the dismissed-Defendants Pleich and Keldie should be excluded from presentation to the jury.

//

//

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

**VIII.  Motion *in limine* No. 13:  To Exclude Evidence, Argument, and Comments Regarding the February 12, 2013 Video of Jacob Pleich Standing Outside of Green's Cell.**

Corizon moves this Court to exclude all evidence, testimony, and argument relating to the February 12, 2013 video of Jacob Pleich observing Green from the outside of his cell.[14]  On April 6, 2015, the Court granted summary judgment in favor of Pleich on Plaintiff's § 1983 claim against him.  The Court reasoned that there was no evidence that Pleich was subjectively aware of the extent of the spinal injury, because Pleich believed that Green was faking his condition.  The only individual depicted in the February 12, 2013, Pleich video against whom Plaintiffs have alleged any constitutional violations is Pleich; thus, the Pleich video cannot be relevant to Plaintiffs' claims against any other individuals in this lawsuit.

The Pleich video also is not relevant to Plaintiffs' claims against Corizon or Lane County.  Green's claims against those entities are premised on the existence of policies or widespread practices that allegedly caused the deprivation of his constitutional rights.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978).  The February 12, 2013, Pleich video depicts a single incident that, in light of this Court's summary judgment ruling, did not itself amount to a constitutional violation.  Accordingly, the Pleich video cannot be evidence of a widespread practice or repeated constitutional violations.  In light of this Court's summary judgment ruling dismissing Pleich from this lawsuit, the Pleich video is no longer relevant to any issue in this case and, therefore, it should be excluded from evidence in this case.  Fed. R. Evid. 401.

In the alternative, even if the Pleich video is of some nominal relevance to Plaintiffs' claims against Corizon or Lane County, any arguable relevance is substantially outweighed by the danger of unfair prejudice.  In light of this Court's conclusion that no conduct on the part of Pleich's rose to the level of deliberate indifference, the sole purpose for showing the Pleich video

---

[14] With this motion, Corizon is only seeking to exclude the portion of the February 12, 2013 video depicting Pleich's interactions with Green, hereafter referred to as the "Pleich video"

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

to the jury (which includes Pleich and other individuals laughing at Green), would be to inflame the jury with what, in hindsight, appears to be callous conduct, even if not legally actionable. Given the fact that this Court already has concluded that Pleich engaged in no conduct actionable under § 1983, it is difficult to imagine a clearer example of evidence that would invite the jury to decide a case based on an improper purpose. That evidence should therefore be excluded under Fed. R. Evid. 403.

IX.    **Motion *in limine* No. 14:  To preclude Plaintiffs, their attorneys and experts from suggesting that jurors put themselves in the position of Green.**

Corizon anticipates that Plaintiffs, through their counsel and experts, will improperly suggest that jurors put themselves in Green's "place" or in his "shoes," or will otherwise invite the jurors to put themselves in Green's position. Any such references or suggestions are irrelevant, unduly prejudicial, and should not be permitted at trial under Fed. R. Evid. 403.

For example, in the report of Gayle Burrow, RN, Ms. Burrow states:

> You can only imagine the suffering KG was going through during this time when no one would believe he was paralyzed, no one was talking to him and no one showed any concern about his welfare.

(Burrow Rpt., p. 8) (Ex. 3 to the Declaration of Anne M. Talcott in support of Corizon's Motions *in Limine* regarding inadmissible expert opinions).

This urging of jurors to place themselves in the position of a party is improper and has been almost universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias, rather than on evidence. *Granfield v. CSX Transportation, Inc.*, 597 F.3d 474 (1st Cir. 2010); *United States v. Palma*, 473 F.3d 899 (8th Cir. 2007); *United States v. Roman*, 492 F.3d 803 (7th Cir. 2007); and *Blevens v. Cessna Aircraft Co.* 728 F.2d 1576 (10th Cir. 1984).

//

//

//

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Because jurors are to be impartial fact-finders, any comments suggesting that they place themselves in Green's "place" or "shoes" or that they "imagine" the way he felt is entirely inappropriate and completely irrelevant to the issues in this action. Therefore, Corizon seeks an order precluding Plaintiffs, their attorneys or experts from making any such references or suggestions at trial.

Dated this 18th day of May, 2015.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    /s/Richard K. Hansen
        Richard K. Hansen, OSB #832231
        Anne M. Talcott, OSB #965325
        Telephone: (503) 222-9981
        Facsimile: (503) 796-2900

        James M. Daigle, OSB #942843
        Adam S. Heder, OSB #151144
        Telephone: (503) 221-0699
        Facsimile:  (503) 223-5706

        Trial Attorney:  Richard K. Hansen

        Of Attorneys for Defendants, Corizon Health, Inc., Dr. Justin Montoya, Vicki Thomas, Kirstin White, Sharon Epperson (née Fagan)

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury, under the laws of the State of Oregon, that the following is true and correct:

That on the 18th day of May, 2015, I arranged for service of the foregoing CORIZON DEFENDANTS' SUPPLEMENTAL OMNIBUS MOTIONS IN LIMINE to the parties to this action as follows:

Elden M. Rosenthal
Michael Greene
Rosenthal, Greene & Devlin PC
121 SW Salmon St., Ste. 1090
Portland, OR 97204-2920
E-Mail: elden@rgdpdx.com

Sebastian Tapia
Attorney
Lane County Office of Legal Counsel
125 East Eighth Avenue
Eugene, OR 97401
E-Mail: sebastian.tapia@co.lane.or.us

James Daigle
Adam Heder
Stewart Sokol & Larkin LLC
2300 SW First Ave., Ste. 200
Portland, OR 97201
E-Mail: jmdaigle@lawssl.com
E-Mail: aheder@lawssl.com

Robert L. Goldstucker
Nall & Miller LLP
235 Peachtree St., NE
Ste. 1500 – North Tower
Atlanta, GA 30303
E-Mail: bgoldstucker@nallmiller.com

by:

| | |
|---|---|
| ☐ | U.S. Postal Service, ordinary first class mail |
| ☐ | U.S. Postal Service, certified or registered mail, return receipt requested |
| ☐ | hand delivery |
| ☐ | facsimile |
| ☒ | electronic service: CM/ECF |
| ☐ | other (specify) _____ |

   /s/Richard K. Hansen
Richard K. Hansen

Page 1 -    CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900